IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| DR. JASMINE YOUNGE, § | |
| § | |
| *Plaintiff*, § | CIVIL ACTION NO. |
| § | 1:20-cv-00684-WMR-CMS |
| v. § | |
| § | |
| FULTON JUDICIAL CIRCUIT § | |
| DISTRICT ATTORNEY'S OFFICE, § | |
| GEORGIA, § | |
| § | |
| *Defendants*. § | |
| § | |

## DEFENDANT'S STATEMENT OF MATERIAL FACTS

| | **STATEMENT OF FACT** | **EVIDENTIARY CITATION** |
|---|---|---|
| 1. | Plaintiff was hired by district attorney Paul Howard on his personal staff as Deputy Chief of Staff and Director of Policy and Programs at a salary of $120,282.00. | Younge Dep. 24:08-14 [Doc. 93]; Ex. A Howard Decl. ¶¶ 2-3; Ex. A-1 Job Des.; Ex. A-2 Interview Sched; Ex. A-3 Job Offer [Doc. 104-4 Ex. A to MSJ]. |
| 2. | Plaintiff's salary was top three in the DA's Office because she was on Howard's personal staff; Howard requested and took an Oath that Plaintiff's position was only for his personal staff and that she "would be directly supervised and personally accountable only to Howard." | Ex. A Howard Decl. ¶¶ 4, 9; Ex. A-4 Oath for Personal Staff [Doc. 104-4 Ex. A to MSJ]; See also, Fulton County Definition of Personal Staff. |
| 3. | Plaintiff was considered third in the chain of command for the entire DA's Office. | Howard Dep. 41:18 – 42:22 [Doc. 95]. |
| 4. | Plaintiff oversaw the administrative division of the DA's Office. | Ex. A-1 to MSJ [Doc. 104-4]; Younge Dep. 34:12 – 35:01 [Doc. 93]. |
| 5. | Plaintiff oversaw the "policy implementation and development, management and oversight of bureaus, strategic communications, and | *Id.* |

| | | |
|---|---|---|
| | responsive constituent services." | |
| 6. | Plaintiff was the principal writer of Criminal Justice and Crime Prevention policies and programs, and she developed, implemented, and administered the programs. | *Id.* |
| 7. | Plaintiff supervised more than thirty employees over more than seven departments at the DA's Office. | *Id.* |
| 8. | Plaintiff collected criminal justice data "at the direction of the DA," and was to "work closely with the DA on a daily basis." | *Id.* |
| 9. | Plaintiff met with dignitaries, community leaders, and members of the public that came into the office. | Younge Dep. 34:12 – 35:01, 39:21-23 [Doc. 93]; Ex. A Howard Decl. ¶ 5 [Doc. 104-4 Ex. A to MSJ] |
| 10. | Plaintiff represented the DA to the public more than any other member of the DA's personal staff. Howard was constantly involved with her work because the voters would judge him based on how well Plaintiff implemented the Office's policies and projects. | Ex. A Howard Decl. ¶¶ 5, 7 [Doc. 104-4 Ex. A to MSJ]; Younge Dep. 36:24 – 37:17, 39:21-23 [Doc. 93]. |
| 11. | At any given time, Plaintiff supervised 15-20 different policies and programs implemented by the DA's Office. | Ex. A Howard Decl. ¶ 6 [Doc. 104-4 Ex. A to MSJ]. |
| 12. | In her position as Deputy Chief of Staff and Director of Policy and Programs, DA Howard Plaintiff was accountable to him. | Younge Dep. 62:10-12 [Doc. 93]; Ex. A Howard Decl. ¶ 4 [Doc. 104-4 Ex. A to MSJ]. |
| 13. | Plaintiff met with DA Howard every day. | Younge Dep. 38:13-17 [Doc. 93]. |
| 14. | Younge's schedule was "pretty much the schedule that DA Paul Howard had" and she was involved in "anything" that had to do with the DA's Office. | Younge Dep. 34:12 – 35:01, 36:24 – 37:17 [Doc. 93]. |
| 15. | Howard set the agenda for the policies and programs that would be a focus of the DA's Office, which Plaintiff oversaw. | Exh. A Howard Decl. ¶ 8; Exh. A-5, partial list of programs Younge oversaw [Doc. 104-4 Ex. A to MSJ]. |
| 16. | If DA Howard "needed something done, [Plaintiff] would handle it." | Younge Dep. 38:01-07 [Doc. 93]. |

| 17. | Plaintiff discussed the progress of initiatives she was overseeing with Howard, "All day every day." | Younge Dep. 43:04-11 [Doc. 93]. |
|---|---|---|
| 18. | As a member of Howard's personal staff, Plaintiff had meetings with Howard "all the time" and she "was in and out of his office because [the personal staff] were...the essential folks [in the Office]." | Younge Dep. 46:17 – 47:01 [Doc. 93]. |
| 19. | Plaintiff that DA Howard was "very involved [with the policies and programs she oversaw] ... He made it a point to be involved in every single thing..."; he would even send her work-related messages on weekends. | Younge Dep. 42:07-11, 43:04-13 [Doc. 93]. |
| 20. | Plaintiff did not need to make appointments to see Howard because she "was literally his go-to person for almost everything," and she was "one of the few on staff that was just able to walk into his office at any time." | Younge Dep. 68:10-16 [Doc. 93]. |
| 21. | Plaintiff was only accountable to Howard; Howard stated she was "a key member of [his] personal staff" and "a high-ranking part of [his] staff, because that is certainly what [he] considered her [to be]." | Ex. A Howard Decl. ¶ 4 [Doc. 104-4 Ex. A to MSJ]; Howard Dep. 15:10-13, 24:02-07, 110:18-25 [Doc. 95]; Nelson Dep. 30:17-19; 39:04-08; 39:13-14 [Doc. 94]. |
| 22. | Plaintiff drafted policy and ensured that the policies were carried out on behalf of the DA's Office. | Ex. A-1 to MSJ [Doc. 104-4]; Younge Dep 34:12 – 35:01, 36:24 – 37:17, 40:14 – 41:01 [Doc. 93]. |
| 23. | Several complaints from co-workers were made about Plaintiff's behavior in the less than two months she worked at the DA's Office. | Ex. A Howard Decl. ¶ 10-11; Ex. A-6 [Doc. 104-4 Ex. A to MSJ]; Ex. B Toomer Decl. ¶¶ 3-7; Ex. B-1 Memo [Doc. 104-5 Ex. B to MSJ]; Nelson Dep. 20:05-10, 22:03-19, 29:15- 20 [Doc. 93]. |
| 24. | It was particularly concerning to Howard that the staff making the complaints had worked at the DA's Office for many years. | Ex. A Howard Decl. ¶ 11 [Doc. 104-4 Ex. A to MSJ]. |
| 25. | The complaints about Plaintiff were told to Chief of Staff Lynne Nelson, who then brought the complaints to Howard. | Ex. B Toomer Decl. ¶ 3 [Doc. 104-5 Ex. B to MSJ]; Nelson Dep. 5:12-15, 29:25 – 30:08, 42:21 – 43:04 [Doc. 94]; Ex. A-6, emails [Doc. 104-4]. |

| | | |
|---|---|---|
| 26. | Lydia Toomer-Popoola, the Director of Community Court, complained about an event in May or June 2019 where Plaintiff berated her in front of a group of local clergy. | Ex. B Toomer Decl. ¶ 4 [Doc. 104-5 Ex. B to MSJ]. |
| 27. | Toomer-Popoola complained about an incident during a meeting with community leaders where Plaintiff's behavior caused the guests to become "uncomfortable and embarrassed" and cost them the ability to work with the non-profit. | Ex. B Toomer Decl. ¶ 6 [Doc. 104-5 Ex. B to MSJ]; Howard Dep. 134:01 – 135:11 [Doc. 95] |
| 28. | Toomer-Popoola and Cynthia Nwokocha, lead investigator for the DA's Office, complained about Plaintiff's behavior towards Howard in staff meetings they described as "appalling"; Nwokocha wrote that she "had never in [her] 23 years at the DA's Office witnessed an employee be so disrespectful to Paul Howard." | Ex. B Toomer Decl. ¶ 5 [Doc. 104-5 Ex. B to MSJ]; Ex. A-6, Nwokocha email [Doc. 104-4 Ex. A to MSJ]; Howard Dep. 135:12 – 136:13 [Doc. 95]. |
| 29. | Nwokocha complained about an incident between Plaintiff and an investigator where Plaintiff behaved rudely and unprofessionally. | Ex. A-6, Nwokocha email [Doc. 104-4]. |
| 30. | After the complaint, Howard told Plaintiff "that he could not recall somebody this high in the chain of command getting involved in this kind of incident." | Howard Dep. 40:13 – 43:24 [Doc. 95]. |
| 31. | Toomer-Popoola told Lynne Nelson, who notified Howard, that she witnessed Plaintiff speaking to employees and "making derogatory and demeaning comments about Howard." | Ex. B Toomer Decl. ¶ 7 [Doc. 104-5 Ex. B to MSJ]. |
| 32. | Lynne Nelson recalled that other complaints were made about Plaintiff. | Nelson Dep. 43:07-21, 44:02-09 [Doc. 94]. |
| 33. | Howard described the final straw as an incident he witnessed in late June 2019, where an attorney from major crimes came to his office on the eve of an important trial; after the attorney asked to see Howard, he saw Plaintiff "in a very loud and rude voice, [tell the attorney] 'that ain't happenin.'" Howard was shocked and upset by what he saw. | Ex. A to MSJ Howard Decl. ¶ 12 [Doc. 104-4]; Howard Dep. 128:23 – 130:06, 143:05 -21 [Doc. 95]. |
| 34. | During June 2019, Lynne Nelson told Howard about the complaints; there was a discussion about Plaintiff's performance and behavior | Nelson Dep. 29:25 – 30:08, 39:19 – 40:06, 42:21 – 43:04 [Doc. 94]; |

| | | |
|---|---|---|
| | issues. Howard determined at that time that Plaintiff needed to be terminated. | Ex. A Howard Decl. ¶ 13; Ex. A-6 [Doc. 104-4 Ex. A to MSJ]; Howard Dep. 23:04-21, 136:14 – 137:07 [Doc. 95]. |
| 35. | The decision to terminate Plaintiff was made solely by Howard. | Howard Dep. 82:03-14, 85:12-18, 105:07-09, 107:12-15 [Doc. 95]. |
| 36. | The discussion about Plaintiff's behavior and performance issues, and the decision to terminate her, occurred before Howard was told anything about Plaintiff's pregnancy. | Nelson Dep. 29:25 – 30:08, 39:19 – 40:06, 42:21 – 43:04 [Doc. 94]; Howard Dep. 23:04- 21, 136:14 – 137:07 [Doc. 95]; Ex. A Howard Decl. ¶ 13; Ex. A-6 [Doc. 104-4 Ex. A to MSJ]. |
| 37. | Plaintiff provided Howard a letter stating that she was pregnant on July 1, 2019. | Ex. D, pregnancy notice [Doc. 104-7 Ex. D to MSJ]. |
| 38. | During the termination meeting on July 15, 2019, Howard told Plaintiff the reasons that she was being let go, including the number of complaints made by her co-workers in less than two months and behavior issues. | Ex. C, electronic recording at timestamps 3:15, 5:30 – 7:10 [Doc. 98 Ex. C to MSJ (filed manually with Court)]. |
| 39. | On the recording Plaintiff admits that Howard never asked her if the pregnancy letter "was a threat." | *Id*, at approx. 16:20. |
| 40. | Plaintiff stated during the termination meeting that she would provide a resignation letter and insinuates that she was going resign anyway "because of things that were not in the interest of [herself] and [her] intelligence level." | *Id.* at approx. 19:00. |
| 41. | Plaintiff was directed to turn in her badge and access card during the July 15th termination meeting. | Younge Dep. 134:06-18 [Doc. 93]. |
| 42. | Plaintiff testified that she was terminated after the July 15th meeting; she then sent final emails to tell people "she was no longer [with the DA's Office]," and called her husband because she was out of a job. | Younge Dep. 137:11 – 138:12 [Doc. 93]. |
| 43. | Plaintiff did not file any complaints or charges with the EEOC until after the July 15th termination meeting. | Younge Dep. 130:25 – 131:15 [Doc. 93]. |
| 44. | Howard had no knowledge of complaints until after Plaintiff's termination on July 15th. | Ex. A to MSJ Howard Decl. ¶ 15 [Doc. 104-4]. |

This 13th day of May, 2022.

/s/ Noah Green
Noah Green
Georgia Bar No. 468138
*Attorney for Defendant*