IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

DR. JASMINE YOUNGE,

    Plaintiff,

v.

FULTON JUDICIAL CIRCUIT
DISTRICT ATTORNEY'S
OFFICE, GEORGIA

    Defendant.

Civil Action No.

1:20-cv-00684-WMR-CMS

JURY TRIAL DEMANDED

**PLAINTIFF'S RESPONSE TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

## I.    INTRODUCTION

Plaintiff Dr. Jasmine Younge ("Plaintiff" or "Younge") received no negative feedback in her job working for Defendant Fulton Judicial Circuit District Attorney's Office, Georgia ("Defendant" or the "DA's Office") – until she informed then-District Attorney Paul Howard ("Howard") that she was pregnant. Howard angrily called the pregnancy announcement a "threat" and proceeded to remove her duties and exclude her from meetings for the next two weeks. At the end of that two-week period, Howard demanded Younge's resignation. There was no record of performance deficiencies or unprofessional behavior in Younge's personnel file, even after her termination. Only after learning that Younge might file a lawsuit against him did Howard instruct his Chief of Staff Lynne Nelson ("Nelson") to gather derogatory employee statements about Younge.

At summary judgment, Defendant asserts a series of affirmative defenses to avoid having the Court or a jury even consider the above facts. The problem is that Defendant failed to properly plead these defenses and cannot raise them now.

For these reasons, and the reasons set forth below, Plaintiff respectfully asks the Court to DENY Defendant's Motion for Summary Judgment. Plaintiff further requests oral argument in this matter. There are numerous issues that require careful explication which would be assisted by oral argument. Attorney Grace Starling, who

has been practicing law for fewer than seven years, would participate in the oral argument on behalf of Plaintiff.

## II.  STATEMENT OF FACTS

Plaintiff addresses the relevant facts in their proper context within the arguments below – particularly as they set forth the convincing mosaic of circumstantial evidence. Plaintiff will not waste the Court's time repeating them here. For an overview of the relevant facts, see Plaintiff's Response to Defendant's Statement of Undisputed Material Facts and her own Statement of Additional Material Facts, both of which will be filed separately in accordance with this Court's Order Modifying Local Rule 56.1.

## III.  ARGUMENT AND CITATION OF AUTHORITY

### A.  Summary Judgment Standard

Summary judgment must be denied unless "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If a reasonable jury <u>could</u> find in the non-movant's favor, summary judgment must be denied. *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011). When a court rules on a motion for summary judgment, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby*, 477

U.S. 242, 255 (1986); *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1247 (11th Cir. 2013) (courts must "view the evidence and all factual inferences therefrom in the light most favorable to the non-moving party, and resolve all reasonable doubts about the facts in favor of the non-movant."). "If there is a conflict between the parties' allegations or evidence, the non-moving party's evidence is presumed to be true." *Allen v. Bd. Of Pub. Educ.*, 495 F.3d 1306, 1314 (11th Cir. 2007). This is true even if the non-moving party's testimony is "self-serving and uncorroborated." *United States v. Stein*, 881 F.3d 853, 854 (11th Cir. 2018).

### B. Defendant's Failures to Properly Plead its Defenses

#### 1. Defendant has failed to plead the affirmative defenses of the personal staff & policymaking appointee exemptions

##### a) Defendant's failure to plead and its legal effect

Defendant has made the centerpiece of its summary judgment motion the affirmative defense of the personal staff/policy-making exemption under 42 U.S.C. § 2000e(f). Unfortunately for Defendant, it failed to plead the defenses, as required by Rules 8(c) and 12(b). In other contexts, the Supreme Court noted that "the general rule [is] that the application of an exemption under the Fair Labor Standards Act is a matter of affirmative defense on which the employer has the burden of proof." *Corning Glass Works v. Brennan*, 417 U.S. 188, 196-97 (1974). Following

this authority, the Courts which have considered the matter have held that the personal staff exemption is likewise an affirmative defense.

> *Cf. U.S. v. First City Nat'l Bank of Houston*, 386 U.S. 361, 366, 87 S. Ct. 1088, 18 L. Ed. 2d 151 (1967) ("We think it plain that the [defendants] carry the burden. That is the general rule where one claims the benefits of an exception to the prohibition of a statute.") (citation omitted); *accord Meacham v. Knolls Atomic Power Lab.*, 554 U.S. 84, 91-92, 128 S. Ct. 2395, 171 L. Ed. 2d 283 ("That longstanding convention is part of the backdrop against which the Congress writes laws, and we respect it unless we have compelling reasons to think that Congress meant to put the burden of persuasion on the other side.") (citation omitted). The Court will treat the exemptions as affirmative defenses. ***See Oden v. Oktibbeha Cty.*, 246 F.3d 458, 467 (5th Cir. 2001) ("The personal staff exception is an affirmative defense that must be pleaded under Rule 8(c)."); *accord Estate of Hamilton v. City of New York*, 627 F.3d 50, 57-58 (2d Cir. 2010)** ("Courts have reached identical conclusions in cases involving similar 'exemptions' included in the FLSA.") (citations omitted), *superseded in part on other grounds by* N.Y.C. Local L. No. 85 (Oct. 3, 2005). (emphasis added).

*Donatello v. Cty. of Niagara*, No. 15-CV-39V, 2016 U.S. Dist. LEXIS 71951, at *33-34 (W.D.N.Y. June 2, 2016) (emphasis added).

A party seeking to timely plead an affirmative defense must do so in the first responsive pleading. If affirmative defenses are not pled, they are waived. *Yellow Pages Photos, Inc. v. YP, LLC*, 856 F. App'x 846, 869 (11th Cir. 2021); Fed. R. Civ. P. 8(c)(1) ("In responding to a pleading, a party must affirmatively state any avoidance or affirmative defense…"); *see also* Rule 12(b).

In none of the 14 affirmative defenses raised by Defendant did it include the personal staff or policymaking appointee exemptions as defenses to Plaintiff's claims, even though those exemptions are affirmative defenses:

> Moreover, the Fifth Circuit has reasoned—persuasively—that the personal staff exemption (one of the four "employee" exemptions) "is an affirmative defense that must be pleaded under [Federal Rule of Civil Procedure] 8(c)" because it "allows the defendant to avoid liability even if the plaintiff meets his burden of proof under Title VII." *Oden v. Oktibbeha County, Mississippi*, 246 F.3d 458, 467 (5th Cir. 2001) (citing *Teneyuca v. Bexar County*, 767 F.2d 148, 152 (5th Cir. 1985)). Hence, the *Oden* court held that the employer bears the burden of demonstrating that the personal staff exemption applies. *See id.* **The Fifth Circuit's reasoning, which is persuasive, also applies to the policy-making—appointee exemption.** This court is not the first to follow the *Oden* court's lead. *See Donatello v. County of Niagara*, No. 15-CV-39V, 2016 U.S. Dist. LEXIS 71951, 2016 WL 3090552, at *9 (W.D.N.Y. June 2, 2016) ("The Court will treat the [Title VII "employee"] exemptions as affirmative defenses." (citing *Oden*, 246 F.3d at 467)); *accord Hindman v. Thompson*, 557 F. Supp. 2d 1293, 1301 (N.D. Okla. 2008). And the court concurs with the *Donatello* court that categorizing the exemptions as affirmative defenses "does not conflict with *Arbaugh*'s treatment of Section 2000e(b)" because "[t]he 15-employee threshold is part of the main definition in Section 2000e(b), not an exemption." 2016 U.S. Dist. LEXIS 71951, 2016 WL 3090552, at *9.

*Crenshaw v. City of Wetumpka*, No. 2:15-CV-413-WKW, 2017 U.S. Dist. LEXIS 163940, at *10-11 (M.D. Ala. Sep. 29, 2017) (emphasis added).

Courts have only allowed defendants to avoid waiver of unpled defenses and raise such defenses for the first time at summary judgment when "the subject matter of discovery suggests that the plaintiff will rely on the defense." *Edwards v. Fulton*

*Cty.*, 509 F. App'x 882, 887 (11th Cir. 2013). In *Edwards*, for instance, the employer sought to rely on the "factor other than sex" defense to an Equal Pay Act claim, despite having never raised the defense in a Pleading. *Id.* at 886-87. The Court only allowed the employer to use the defense because "discovery largely focused on the gender-neutral decision-band classification system, which constitutes the subject matter of the defense." *Id.* at 888. Here, in contrast, discovery addressed many issues with (at best) a passing reference to Plaintiff being on DA Howard's "personal staff" and no mention whatsoever to her being a "policymaking appointee." In Doc. 57, the Preliminary Planning Report and Discovery Order, Defendant entirely omits these (or any other) affirmatives defense as legal issues to be decided by the Court. *See, id.,* ¶ 1(c). Defendant's Initial Disclosures make no mention of either exemption or the statutory definition of "employee" at 42 U.S.C. § 2000e(f). (Defendant's Initial Disclosures). Defendant's discovery responses make zero reference to Plaintiff being a policymaking appointee exempt from Title VII's protections. (Def. Disc. Resp.) And they make only five references to Plaintiff being a member of Howard's "personal staff" – none of which are made in a way that would alert Plaintiff that Defendant intended to assert a secret, unpled defense that she was exempt from Title VII's protections. (Def. Disc. Resp. # 3, 5, 46, 48, 53).

### b)   Defendant's sandbagging prejudiced Plaintiff by preventing her from mustering all of the evidence available

**to rebut the defense. But the limited evidence indicates a genuine dispute whether she was "personal staff."**

In analyzing the personal staff exemption, it must be remembered both that the Defendant bears the burden of proof and that the defense is construed narrowly against the employer. "Courts have construed the personal staff exemption narrowly, however, because 'Congress intended . . . the . . . exception to apply only to those individuals who are in highly intimate and sensitive positions of responsibility on the staff of the elected official.'" *Milliones v. Fulton Cty. Gov't*, No. 1:12-CV-3321-TWT-ECS, 2013 U.S. Dist. LEXIS 79798, at *8 (N.D. Ga. Apr. 30, 2013). "[C]ourts rarely decide the personal staff exemption issue even at the summary judgment stage, '[s]ince this determination demands extensive factual analysis . . .'" *Milliones*, 2013 U.S. Dist. LEXIS 79798 at *10; *see also Teneyuca v. Bexar Cty.*, 767 F.2d 148, 152 (5th Cir. 1985) (noting that the determination of the "personal staff" exception "does not lend itself well to disposition by summary judgment").

In order to prove the defense, the Defendant must show:

(1) Whether the elected official has plenary powers of appointment and removal, (2) whether the person in the position at issue is personally accountable to only that elected official, (3) whether the person in the position at issue represents the elected official in the eyes of the public, (4) whether the elected official exercises a considerable amount of control over the position, (5) the level of the position within the organization's chain of command, and (6) the actual intimacy of the

working relationship between the elected official and the person filling
the position.

*Milliones*, 2013 U.S. Dist. LEXIS 79798 at *9-10.

The first element is simply not present in this case. Paul Howard did not have "plenary powers of appointment and removal". In fact, Howard initially sought to hire Younge in a Director position at a salary of $125,000. (Younge Depo. 26:17-27:17). However, Fulton County would not permit her to be hired either in that position or at that salary. (Younge Depo. 27:10-28:11). As a result, she was hired in a different position at a lower salary. (Younge Depo 27:10-28:11; Grimes Decl. ¶ 5). This is in no way indicative of Howard having "plenary authority", as his initial decision was reversed by Fulton County. Moreover, this factor helps demonstrate the prejudice Plaintiff suffered as a result of Defendant's failure to plead the personal staff defense. Because Plaintiff was not aware that this was an issue, she was deprived of the opportunity to further explore in discovery any other limitations on Howard's hiring or firing authority over Plaintiff.

As to the second factor, while Howard supervised Younge, there is evidence to indicate she was <u>also</u> accountable to Lynne Nelson. As Deputy Chief of Staff, Younge ranked directly under Chief of Staff Nelson. (Grimes Decl. ¶ 5; Younge Decl. ¶ 3; Nelson Depo. 15:3-11; Howard 1st Depo. 42:11-18). Nelson sometimes directed Younge to execute tasks (like gathering data for the budget) or conveyed

Howard's instructions to Younge. (Grimes Decl. ¶ 5; Younge Decl. ¶ 33). At most, this factor is a wash, and it is not clear enough to overcome the Courts' reluctance to grant summary judgment on the personal staff defense. *See Milliones*, 2013 U.S. Dist. LEXIS 79798 at \*10. Moreover, if Plaintiff had been aware of Defendant's intention to assert this defense, she could have delved more deeply into other ways that Younge was held accountable to Nelson or other officials besides Howard.

As to the third factor, Younge was not permitted to serve in a capacity to represent Howard in the eyes of the public. Whenever Younge met with dignitaries/members of the public, Howard was also present. (Younge Depo. 34:12-35:3, 36:24-37:25; Younge Decl. ¶ 19). Younge did not run any of these meetings. (Younge Depo. 36:24-37:25). In essence, no one was going to be the face of Paul Howard other than Paul Howard. Moreover, Younge's responsibilities in this area changed drastically after she notified Howard of her pregnancy. He began excluding her from meetings with the public/dignitaries and not allowing her to speak in the meetings she did attend. (Younge Decl. ¶ 23; Younge Depo. 102:1-13). Thus, even if she <u>had</u> been personal staff, the evidence indicates she ceased to be so after Howard learned she was pregnant. Again, if Plaintiff had known about this defense, she could have conducted discovery specifically geared toward addressing the nature of her relations with the public compared with Howard's.

As to the sixth[1] factor, some Courts from "actual intimacy of the working relationship" as "whether the employee handles sensitive and confidential information for the elected official." *Clews v. Cty. of Schuylkill*, 12 F.4th 353, 361-62 (3d Cir. 2021). Younge did not handle such information for Howard. (Younge Decl. ¶ 32). In any case, any evidence of the "intimacy" of Younge's working relationship with Howard must be viewed in light of his testimony that he maintained an open door and allowed <u>all</u> employees to come to his office to talk to him about issues.[2] (Howard 1st Depo. 114:22-115:25; Younge Decl. ¶ 38). And, again, it must be noted that the "intimacy" of their relationship was drastically reduced after Younge told Howard she was pregnant. <u>Before</u> that notification, they met every day, he allowed her to pop into his office without notice, and he demanded her constant availability around the clock. (Younge Depo. 105:12-107:5; Howard 1st Depo. 28:5-20; Younge Decl. ¶¶ 30-31). <u>After</u> the pregnancy notification, Howard stopped meeting with her, excluded her from previously-scheduled meetings, and dismissed her when she tried to talk to him. (Younge Depo. 76:19-77:15, 80:1-81:13, 105:12-

---

[1] As Defendant notes, the Courts generally treat the fourth factor the same as the second. As to the fifth factor, it has already been shown that Plaintiff was the third-ranking official below Howard and Nelson. (Howard 1st Depo. 42:11-18).

[2] Because Plaintiff did not know Defendant intended to assert the personal staff defense, she did not have the opportunity to conduct further discovery to compare how closely others worked with Howard compared to her.

107:5; Younge Decl. ¶¶ 23, 30-31). Again, to the extent he treated her like personal staff, he stopped doing so after learning she was pregnant.

### c) Defendant's sandbagging prevented Plaintiff from exploring the policymaking appointee defense.

Defendant's failure to plead the policymaking appointee defense similarly prejudiced Plaintiff in her ability to conduct discovery to counteract this defense, and the defense should therefore be considered waived. To wit: nearly all of the programs Younge was responsible for were created by her predecessor, not by her, and she was primarily responsible for running them efficiently and effectively. (Grimes Decl. ¶ 6; Younge Decl. ¶ 6; Younge Depo. 41:9-21). She only helped to modify or create one or two programs and does not recall writing new policies. (Younge Decl. ¶ 6). Unfortunately, because Plaintiff's counsel had no way of knowing Defendant would assert this defense, they could not conduct discovery into how policies and programs were created (and by whom) at the DA's Office.

### 2. Defendant failed to plead "failure to obtain right-to-sue notice from the Attorney General" with particularity.

Rule 9(c) of the Federal Rules of Civil Procedure states that, "In pleading conditions precedent, it suffices to allege generally that all conditions precedent have occurred or been performed. But when <u>denying</u> that a condition precedent has occurred or been performed, <u>a party must do so with particularity</u>" (emphasis added).

11

The Eleventh Circuit treats Title VII's procedural requirements as conditions precedent, rather than jurisdictional requirements. *Jackson v. Seaboard C. L. R. Co.*, 678 F.2d 992, 1007-10 (11th Cir. 1982). If the plaintiff generally alleges all conditions precedent are met, and the defendant does not deny the satisfaction of such precondition "specifically and with particularity, then the plaintiff's allegations are assumed admitted, and the defendant cannot later assert that a condition precedent has not been met." *Id*. at 1010. Thus, when an employer responded to the plaintiff's allegation that all conditions precedent to a Title VII action had been satisfied with a statement that it was "without knowledge or information sufficient to form a belief as to the truth of the allegations", the Eleventh Circuit held that the employer had waived its right to deny the plaintiff satisfied all conditions precedent under Rule 9(c) and could not now claim otherwise at trial.[3] *Id*. at 1010-11.

    *Wilshin v. Allstate Ins. Co.*, 212 F. Supp. 2d 1360 (M.D. Ga. 2002) is directly on point. In that case, the plaintiff filed his complaint 91 days after receiving the Right to Sue Notice, one day too late. *Id*. at 1368. In it Answer, the defendant asserted an affirmative defense that "Plaintiff's claims are barred by his failure to

---

[3] As another District Court has noted, a <u>later</u> Eleventh Circuit panel decision allowed an employer to raise such a defense late in the case even though it failed to plead it with specificity. *Miller v. State*, No. 4:13-cv-288-MW/CAS, 2014 U.S. Dist. LEXIS 200961, at *2-3 (N.D. Fla. Mar. 27, 2014). However, "when faced with an intracircuit split, we look to the <u>earliest</u> case not abrogated by the Supreme Court or by th[e Eleventh Circuit] sitting en banc." *Id*. at *3. Thus, *Jackson* controls. *Id*. at *3-4.

exhaust administrative remedies and satisfy conditions precedent prior to instituting this action" and denied "that Plaintiff has timely filed his Complaint." *Id*. at 1368-69. The defendant's discovery responses were similarly broad and "did not mention the ninety-one days, the date the right-to-sue was received, the date the Complaint was filed" or any other specific fact indicating it intended to assert the plaintiff had failed to meet the condition precedent of filing within 90 days of receiving the right-to-sue notice. *Id*. at 1370. Finally, the defendant explained with specificity for the first time at summary judgment that the plaintiff did not file suit with in the requisite 90-day time period and argued his suit should be dismissed as untimely. *Id*. at 1369. After setting forth the law and citing *Jackson*, the Court issued its biting conclusion:

> This Court has been significantly involved with this case since it was filed in 1999. The fact that Defendant waited almost two years after the case was filed to state with specificity that Plaintiff's claim was untimely will not be overlooked. While the Court would have welcomed Defendant's argument earlier in the litigation, the Court is unwilling to let Defendant come forth with a valid reason for dismissing the case after the Plaintiff's case has been pending for over two years. Defendant had a chance to argue the exact argument that Plaintiff had filed one day late in its first Answer, its Amended Answer, its Responses to Mandatory Interrogatories, and in its three Motions to Dismiss; however, Defendant waited until filing a Motion for Summary Judgment on July 21, 2001 to argue this issue. Though Defendant did not wait until after trial as the defendant in *Jackson* did, the Court still finds its delay to be too long. This Court is hesitant to permit Plaintiff to escape from meeting the ninety day filing deadline; however, the Court finds that Defendant waived its right to raise this claim. Therefore, the Court finds that Plaintiff's allegations are not susceptible to attack on these grounds.

*Id*. at 1370.

In a belated addition to the latest version of its summary judgment motion, Defendant argues for the first time in this case that Plaintiff's case should be dismissed because she obtained a Right to Sue Notice from the EEOC rather than the Attorney General. But, like the defendant in *Wilshin*, Defendant has waited too long to assert this defense with particularity.

The requirement to obtain a Right to Sue Notice from the Attorney General in certain circumstances[4] is non-jurisdictional. *Langston v. Lookout Mt. Cmty. Servs.*, 775 F. App'x 991, 996-97 (11th Cir. 2019). Therefore, it is a condition precedent, subject to Rule 9(c).

Like the defendant in *Wilshin*, Defendant only plead broad, non-particular defenses in its Answer. [Doc. 53, 15th Defense (3rd enumeration)] ("Plaintiff has not satisfied all conditions precedent to suit under Title VII and the case must therefore be dismissed."). Like the defendant in *Jackson*, Defendant responded to Plaintiff's allegation that she met all conditions precedent with a claim that "Defendant lacks sufficient information to admit or deny" that allegation. [Doc. 53, ¶ 5]. Defendant

---

[4] At least one court has concluded – in an opinion by then-Judge Ruth Bader Ginsburg – that this requirement only applies "when the EEOC finds probable cause, conciliation efforts fail, and the EEOC refers the case to the Justice Department, but the Attorney General decides not to pursue the action." *Dougherty v. Barry*, 869 F.2d 605, 611-12 (D.C. Cir. 1989).

does not identify failure to meet conditions precedent among the "legal issues to be tried" in the Preliminary Planning Report. [Doc. 57]. Defendant's Initial Disclosures generally cite to the statutory provision and EEOC regulation for issuing Right to Sue Notices, but without specifying the provisions specific to when such Notice should be issued by the Attorney General. (Defendant's Initial Disclosures, p. 2). Finally, when asked in discovery for the factual basis of its affirmative defenses, Defendant merely said that it had not seen the Right to Sue Notice and, thus, "Defendant is not aware if Plaintiff has met the conditions precedent by receiving a proper notice of right to sue, issued from the proper entity, pursuant to statute and federal regulation." (Def. Disc. Resp. # 39). Defendant never amended its discovery responses to assert that Plaintiff failed to obtain the Right to Sue Notice from the Attorney General. The *Wilshin* defendant's passing reference in discovery to the plaintiff's failure to meet the statute of limitations was insufficient to rehabilitate its failure to plead with particularity when it made no mention of the plaintiff not filing suit within 90 days of receipt of the notice. *Wilshin*, 212 F. Supp. 2d at 1370. Similarly, Defendant in this case never mentioned – until its 3rd summary judgment motion – that Plaintiff should have obtained a Right to Sue Notice from the Attorney General rather than the EEOC. Its passing reference to its intention to look into whether plaintiff received "a proper notice of right to sue,

issued from the proper entity" after seeing Plaintiff's Right to Sue Notice is insufficient, especially when it apparently received that notice but failed to amend its discovery response or its Answer.[5]

### C.    Title VII/Pregnancy Discrimination Act

Title VII makes it "an unlawful employment practice" for an employer to "discharge . . . any individual . . . because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). The Pregnancy Discrimination Act ("PDA") amends the definition of "because of sex" to include "because of or on the basis of pregnancy, childbirth, or related medical conditions." 42 U.S.C. § 2000e(k). Here, Plaintiff alleges that she was terminated because of her pregnancy in violation of the PDA.

The Eleventh Circuit has long held that "the plaintiff will <u>always</u> survive summary judgment if [she] presents circumstantial evidence that creates a triable issue concerning the discriminatory intent." *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011) (emphasis added). The circumstantial evidence creates a triable issue if, "viewed in the light most favorable to the plaintiff, [the

---

[5] A brief substantive response is also in order. Title VII requires the EEOC to refer charges against government agencies to the Attorney General unless the EEOC is able to obtain a conciliation agreement from the respondent agency. 42 U.S.C. § 2000e-5(f)(1). The EEOC did not do so here. When Plaintiff requested her right-to-sue, the EEOC simply issued its own Notice rather than referring the matter to the Attorney General for issuance. (RTS Notice). Courts have generally been reluctant to hold individual plaintiffs responsible for the EEOC's errors. *Fed. Express Corp. v. Holowecki*, 552 U.S. 389, 403-04 (2008); *Edelman v. Lynchburg Coll.*, 300 F.3d 400, 404-05 (4th Cir. 2002).

record] presents a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker." *Id*. (internal quotations omitted). A convincing mosaic "may be shown by evidence that demonstrates, among other things, (1) suspicious timing, ambiguous statements . . ., and other bits and pieces from which an inference of discriminatory intent might be drawn, (2) systematically better treatment of similarly situated employees, and (3) that the employer's justification is pretextual." *Lewis v. City of Union City*, 934 F.3d 1169, 1185 (11th Cir. 2019). Here, Plaintiff's "mosaic" has **<u>eight</u>** tiles that create a picture of blatant pregnancy discrimination.

### 1. Howard's disturbing reaction to Younge's pregnancy – "Is this a threat?"

On July 1, 2019, Younge handed Howard a letter notifying him that she was pregnant and that her pregnancy was considered "high risk", and also verbally told him the same information. (Younge Depo. 60:17-61:15, 61:21-62:12, 64:3-65:10, 76:19-77:15, 105:12-16; Younge Decl. ¶ 20; Howard 1st Depo. 24:16-25, 111:9-21). Howard's response was telling – and disturbing. Instead of congratulating her on the pregnancy or expressing concern for her health, Howard became extremely upset and agitated, yelling "What is this supposed to mean?" and "Is this a threat?" (Younge Depo. 64:3-65:10; Younge Decl. ¶ 21).

A reasonable jury could conclude that Howard saw Younge's pregnancy news as a "threat" that must be countered, which is textbook discriminatory animus. Indeed, Howard admits he suspected Younge was trying to create a record upon which to base a discrimination lawsuit – a self-fulfilling prophecy he precipitated with his own actions. (Howard 1st Depo. 111:9-114:16).

As she was leaving Howard's office, Younge observed Howard call HR Assistant Iyana Young into a meeting. (Younge Depo. 75:5-76:13; Grimes Decl. ¶ 13). Iyana Young met with HR Director Tisa Grimes and told her[6] that Howard had also asked her whether Jasmine Younge's letter was a "threat." (Grimes Decl. ¶ 13). Grimes reported this to Jasmine Younge – although Plaintiff remembers being informed that Howard told Iyana Young that the letter was a threat.[7] (Younge Depo. 75:5-76:13; Younge Decl. ¶ 22).

---

[6] Iyana Young was extremely upset and flustered about Howard's question while relaying it to Grimes. (Grimes Decl. ¶ 13). Thus, her statement to Grimes falls within the hearsay exception for Excited Utterances. Fed. R. Evid. 803(2) ("A statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused.").

[7] This memory helps rebut Defendant's absurd argument that Younge admitted in the recorded July 15 meeting that she fabricated the claim that Howard asked if her pregnancy announcement was a "threat." Younge did no such thing. The Court may listen to the recording [Doc. 98 Ex. C (manually filed by Defendant)] for itself. The relevant portions are at approximately 16:20-16:55. Younge accuses Howard of saying her pregnancy was a "threat" and repeats 4 times "those were your words." *Id*. At the time, Plaintiff was thinking of Howard's affirmative statement to Iyana Young that the pregnancy notification was a threat, not of the time when he merely asked Plaintiff whether it was a threat. (Younge Decl. ¶¶ 34-35). This is why, when Howard asked "those were my words to you?", Younge responded "nope, no"; she was thinking of his words to Iyana Young. (Younge Decl. ¶ 36).

### 2.   Howard's dramatic change in treatment of Younge after learning of her pregnancy

A reasonable jury could also find evidence of anti-pregnancy animus from the abrupt and extreme change in Howard's treatment of Younge after she told him she was pregnant. For instance, before the pregnancy announcement, Younge regularly participated in meetings regarding the programs she was responsible for. (Younge Decl. ¶ 24; Younge Depo. 93:7-10). After the notification, however, Howard excluded Younge from numerous meetings regarding programs under her purview, opting instead to meet with her team members without her. (Younge Decl. ¶¶ 23-24; Younge Depo. 76:19-79:25, 80:1-81:13, 83:4-84:20, 88:9-90:7, 96:10-25, 97:3-98:18; Grimes Decl. ¶ 14).

Similarly, as noted above, before the pregnancy announcement Younge and Howard met frequently, she had "open door" access to his office, and he required the same access of her around the clock. (Younge Depo. 105:12-107:5; Howard 1st Depo. 28:5-20; Younge Decl. ¶¶ 30-31). After the pregnancy announcement, Howard stopped meeting with her, excluded her from meetings, and dismissed her when she tried to talk to him. (Younge Depo. 76:19-77:15, 80:1-81:13, 105:12-107:5; Younge Decl. ¶¶ 23, 30-31).

Finally, after the pregnancy notification, Howard began to reassign Younge's duties to others, including people (like Chris Hopper) who had no operations

experience. (Younge Decl. ¶¶ 23, 28-29; Younge Depo. 83:4-84:20, 87:19-88:8, 98:19-99:7, 102:1-13).

### 3.    Replaced by a non-pregnant person

One traditional method of proving discrimination is showing "replacement by someone outside the protected class." *E.g. Maynard v. Bd. of Regents*, 342 F.3d 1281, 1289 (11th Cir. 2003). Here, Howard hired a Ms. Becker-Brown – who was not pregnant – to replace Younge. (Howard 1st Depo. 16:6-17:15, 100:12-101:24).

### 4.    Temporal Proximity

"Close temporal proximity between a pregnant employee's announcement of her pregnancy and the termination of the employee may be used to demonstrate pretext." *Wolchok v. Law Offices of Gary Martin Hays & Assocs., P.C.*, No. 1:07-CV-0765-CC, 2008 U.S. Dist. LEXIS 126115, at *11-12 (N.D. Ga. Aug. 27, 2008) (clarifying that temporal proximity alone may not show pretext, but it may be considered along with other evidence "in examining whether the employer's asserted reason for its employment action is unworthy of belief"). Thus, when an employee announced her pregnancy and was fired the <u>next month</u>, the Court found evidence to support a genuine issue of pretext. *Id*. Here, there were only <u>two weeks</u> between Younge's July 1 pregnancy announcement and the July 15 meeting where Howard demanded her resignation. (Younge Depo. 76:19-77:15, 105:12-16; Younge Decl. ¶

20; Howard 1ˢᵗ Depo. 24:16-25, 51:9-12). Moreover, there was no intervening misconduct to break the inference from temporal proximity. Howard admits that nothing happened between the July 1 announcement and the July 15 resignation meeting that caused him to believe Younge should be terminated. (Howard 1ˢᵗ Depo. 26:23-27:19, 128:16-22).

### 5.    No Discussion of Terminating Younge Before the Pregnancy Announcement

Chief of Staff Nelson was Howard's top advisor on staffing issues. (Nelson Depo. 41:2-25). Thus, a reasonable jury could conclude that Howard would tell Nelson if he was considering firing someone. Indeed, Howard testified that he told Nelson about his intent to terminate Younge before he ever carried it out. (Howard 1ˢᵗ Depo. 82:15-83:4, 85:19-23).

And yet Chief of Staff Nelson admits she was not aware of <u>any </u>discussion of terminating Younge before Younge announced her pregnancy! (Nelson Depo. 38:23-39:8). This is remarkable, since Nelson and Howard both claim that Younge exhibited serious performance deficiencies and unprofessional behavior long before the July 1 pregnancy announcement – as early as May. (Nelson Depo. 29:25-30:16, 39:39-41:1, 45:15-46:14; Howard 1ˢᵗ Depo. 20:18-21:9, 23:4-21, 40:13-41:8, 59:5-61:21, 128:16-22, 132:3-133:24, 134:2-137:7).

A reasonable jury could conclude that – <u>even if</u> problems existed in Younge's performance or behavior – they must not have been termination-worthy in Howard's eyes, since he never raised the possibility of terminating Younge to Nelson before the pregnancy notification. Therefore, they did not motivate the termination. <u>In addition</u>, a reasonable jury could conclude that – since nothing <u>before</u> the pregnancy notification motivated the termination and Howard admits nothing <u>after</u> the pregnancy notification motivated the termination (Howard 1ˢᵗ Depo. 26:23-27:19, 128:16-22) – the only logical remaining option is that <u>the pregnancy notification motivated the termination</u>.

### 6.    Evidence the Alleged Coworker Complaints Against Younge Are Fabrications

Defendant claims Howard decided to terminate Younge in part based on numerous complaints from coworkers. But there is sufficient evidence from which a reasonable jury could conclude that these complaints are post-termination fabrications created for Howard to cover the discrimination:

- <u>First</u>, Younge denies having conflict or altercations with anybody at the DA's Office; she got along with everybody and was never told that she had been rude, disrespectful, or unprofessional. (Younge Depo. 53:14-54:20; Younge Decl. ¶¶ 7, 27). Grimes describes Younge as "a knowledgeable leader" with "great interpersonal skills" and a "professional demeanor." (Grimes Decl. ¶ 7).

- <u>Second</u>, Younge never received any negative feedback regarding her performance or behavior during her employment with Defendant. (Younge Decl. ¶¶ 25-27; Younge Depo. 60:6-16, 111:16-113:6, 115:18-116:25).

- <u>Third</u>, if there were problems with Younge's performance or behavior, they should have been documented contemporaneously in her personnel file. (Grimes Decl. ¶¶ 8, 19-20). But there were no disciplinary actions, warnings, reprimands, complaints, or documentations of conflicts in her personnel file – even after her termination. (Grimes Decl. ¶¶ 9, 16-18; Younge Depo. 53:14-54:20, 115:18-116:25; Nelson Depo. 42:1-4; Howard 1st Depo. 23:22-24:1, 24:8-11).

- <u>Fourth</u>, it is undisputed that the only complaints in existence regarding Younge were created in mid-August 2019, well <u>after</u> her termination. (Grimes Decl. ¶ 18; Post-Termination Statements; Nelson Depo. 44:17-45:14).

- <u>Fifth</u>, these complaints were solicited by Nelson (after the termination) at Howard's request after he said he believed Younge would file a lawsuit and he wanted to "be prepared." (Post-Termination Statements, p. 292; Nelson Depo. 13:23-16:4; Grimes Decl. ¶¶ 16-17, 19, 21).

In sum, no record existed of any problems with Younge until Howard believed she was about to file a lawsuit. A reasonable jury could find this to be sufficient to conclude the complaints are fabrications.

### 7.    There is a Genuine Dispute About the Trevis Incident

Howard claims that the incident that made him decide to terminate Younge occurred near the end of June, when he says he observed Younge being rude to

attorney Lauren Trevis – who was trying to meet with Howard – by blocking her and telling her in a raised voice, "that ain't happening." (Howard 1st Depo. 128:23-131:7). But Younge has a very different telling of this event: (i) that she never said "that ain't happening" and was never disrespectful, (ii) that Trevis was the one who was rude and disrespectful, and (iii) that Trevis never explained that Howard had instructed her to be placed on the calendar for that day. (Younge Decl. ¶ 18).

At summary judgment, the Court must accept Younge's account of this event because she is the non-movant. *Allen v. Bd. Of Pub. Educ.*, 495 F.3d 1306, 1314 (11th Cir. 2007). And, since Howard claims to have directly observed the event, he cannot claim to have a mistaken, good faith belief that Younge was rude to Trevis:

> Second, Vessels disputes whether the incidents of unprofessionalism upon which Brinson claimed to rely actually occurred. Admittedly, this would fail to demonstrate pretext if Vessels only disputed that the incidents occurred, without calling into question Brinson's sincere belief that they occurred. *See Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1471 (11th Cir. 1991) (employee failed to show pretext where he presented evidence suggesting that allegations were untrue, but failed to present evidence suggesting that employer's belief in those allegations was unworthy of credence). However, Brinson claims that she had multiple conferences about the incidents with Vessels. Vessels directly denies that any such conferences, or the incidents which precipitated them, even occurred. Brinson does not claim to have relied on information which may or may not be true. **Instead, because the conferences, and the discussions which would have occurred therein would be within Brinson's personal knowledge, Vessels raises issues of fact as to whether this asserted reason was pretextual**.

*Vessels v. Atlanta Indep. Sch. Sys.*, 408 F.3d 763, 771 (11th Cir. 2005) (emphasis added).

### 8. Howard's Dishonesty Creates Genuine Disputes of Material Fact

When a litigant asserts the Fifth Amendment privilege against self-incrimination, the Court <u>in a civil suit</u> may draw an adverse inference from this. *State Farm Mut. Auto. Ins. Co. v. Filenger*, 362 F. Supp. 3d 1246, 1255 (S.D. Fla. 2018). Based on that principle, the following facts may be inferred: Paul Howard asked the City of Atlanta for a pay increase, was denied, and then used his position as Fulton County DA to convince the City to pay grants to certain charities. (Howard 2nd Depo. 12:4-13:15, 15:24-16:20). Howard used the money from those charities to supplement his salary. (Howard 2nd Depo. 6:19-8:14, 12:4-13:15, 15:24-16:20). The charities didn't actually do anything other than pay Howard. (Howard 2nd Depo. 15:24-16:20). Finally, Howard failed to disclose his relationship with these charities so that he could hide from the public the fact that he was getting additional money from the charities. (Howard 2nd Depo. 18:2-12). Based on these facts, a reasonable jury could choose to disbelieve anything Paul Howard says.

## IV. CONCLUSION

For these reasons, Plaintiff respectfully asks the Court to DENY summary judgment and proceed to trial by jury.

Respectfully submitted the 10th day of June, 2022.

**BARRETT & FARAHANY**

s/ *Matthew C. Billips*
Matthew C. Billips
Georgia Bar No. 057110
Grace A. Starling
Georgia Bar No. 464958

*Attorneys for Jasmine Younge*

P.O. Box 530092
Atlanta, GA 30353
matt@justiceatwork.com
grace@justiceatwork.com

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

DR. JASMINE YOUNGE,

    Plaintiff,

v.

FULTON JUDICIAL CIRCUIT
DISTRICT ATTORNEY'S
OFFICE, GEORGIA

    Defendant.

Civil Action No.

1:20-cv-00684-WMR-CMS

JURY TRIAL DEMANDED

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I electronically filed *Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment* with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to all attorneys of record.

Respectfully submitted the 10th day of June, 2022.

**BARRETT & FARAHANY**

s/ *Matthew C. Billips*
Matthew C. Billips
Georgia Bar No. 057110
Grace A. Starling
Georgia Bar No. 464958