# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | | |
|---|---|---|
| DR. JASMINE YOUNGE, | § | |
| | § | |
| *Plaintiff,* | § | CIVIL ACTION NO. |
| | § | 1:20-cv-00684-WMR-CMS |
| v. | § | |
| | § | |
| FULTON JUDICIAL CIRCUIT | § | |
| DISTRICT ATTORNEY'S OFFICE, | § | |
| GEORGIA, | § | |
| | § | |
| *Defendants.* | § | |
| | § | |

## DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE IN OPPOSITION TO THE MOTION FOR SUMMARY JUDGMENT

COMES NOW, Defendant Fulton Judicial Circuit District Attorney's Office with this its Reply to Plaintiff's Response in Opposition to the Motion for Summary Judgment.

Plaintiff's Response misrepresents the facts and ignores applicable law, attempts to mislead the Court through its presentation of the record, and strains credibility. Plaintiff's testimony and the supporting evidence leave no doubt that Title VII's personal staff exception applies. Plaintiff's solution is her declaration offered to try to dispute her own deposition testimony. Plaintiff's deposition testimony left no doubt: these facts are the most persuasive of any reported

personal staff exception case in the nation. Defense counsel's survey of the caselaw nationwide did not reveal any cases with the extensive evidence present here. And Plaintiff has not pointed to or cited a single case to support the argument that she was not a member of the DA's personal staff. As discussed below, Plaintiff's attempt to defeat the elements of the personal staff exception is baseless and strained.

**Personal Staff Exception**

**1.   The Personal Staff Exception is properly before the Court and should be considered.**

First, courts are split on whether the personal staff exception is jurisdictional or an affirmative defense. *See e.g.*, *Kennedy v. New York*, 167 F.Supp. 3d 451, 455-459; *Crain v. Butler*, 419 F.Supp.2d 785, 789-790 (E.D.N.C. 2005). If jurisdictional, a plaintiff would bear the burden of proof and, if an affirmative defense, the defendant. Under either approach, Plaintiff has failed to make a meritorious argument that would preclude the Court from considering evidence properly before it.

Plaintiff argues that the personal staff exception— an exception that is expressly stated in Title VII— was raised too late. This argument lacks merit and has been rejected by the Eleventh Circuit where the party has notice that the issue is being litigated. *See e.g.*, *Hassan v. U.S. Postal Serv.*, 842 F.2d 260, 263 (11th Cir. 1988); *Aponte. v. Brown & Brown of Fla.*, 806 Fed.Appx. 824, 832 (11th Cir. 2020). The Eleventh Circuit has taken this position for over forty years,

adopting the precedent of the Fifth Circuit before it. *See Jones v. Miles*, 667 F.2d 33, 34 (5th Cir. 1982).

In *Hassan*, the court held that an affirmative defense raised in a motion for summary judgment should be considered because the issue was raised before trial. 842 F.2d at 263. The *Hassan* court held that the defendant's questions about the issue during a deposition were enough to place the plaintiff on notice that the defense would be raising the issue at trial. *Id.* at 263-264. The court wrote that

> the liberal pleading rules established by the Federal Rules of Civil Procedure apply to the pleading of affirmative defenses. We must avoid hypertechnicality in pleading requirements and focus, instead, on enforcing the actual purpose of the rule. The purpose of Rule 8(c) is simply to guarantee that the opposing party has notice of any additional issue that may be raised at trial so that he or she is prepared to properly litigate it.

*Id.* (citing *Jones* ("Failure to affirmative plead the defense is simply noncompliance with a technicality and does not constitute waiver where there is no surprise.")). Plaintiff has made only a passing effort to argue prejudice, as there is clearly none present here.

The applicability of the personal staff exception is based almost entirely on Plaintiff's testimony about her duties, her position at the DA's Office, and her close working relationship with Paul Howard. As Plaintiff's testimony is the key evidence of her status as a personal staff member, Plaintiff can only argue that she was prejudiced because she could not present fictitious testimony or omit truthful testimony. A plaintiff's belief that she was denied an opportunity to lie

in testimony is clearly not prejudicial. Further, Plaintiff has repeatedly been given notice that she was a member of Howard's personal staff, both prior to and after the start of litigation.[1] And Plaintiff's counsel was keenly aware that Plaintiff's duties, activities at the DA's Office, and working relationship with Mr. Howard were key issues in the case.

If a plaintiff receives notice of an affirmative defense by any means during litigation, then the plaintiff has not been prejudiced. *Grant v. Preferred Rsch., Inc.,* 885 F.2d 795, 797-798 (11th Cir. 1989).

Plaintiff was told the day she was terminated that she could not file a complaint with Fulton County because she was a member of Howard's personal staff.[2] [Doc. 93, Pl.'s Dep. 131:02-08]. Even the Amended Complaint shows awareness that the personal staff exception was at issue: "she was part of Howard's executive staff…" [Doc. 31, Am. Compl. ¶ 33]. Her personnel file, which Plaintiff has had since the litigation began, contains documents that refer to Plaintiff as a member of Howard's personal staff. [See Doc. 104-4, Exhibit A-4]. And Plaintiff's counsel spent over three hours examining Mr. Howard directly about Plaintiff's duties at the DA's Office, her activities at the DA's Office, her

_____

[1] It is worth noting that, at a hearing in this case, Plaintiff was given notice of Defendant's intention to raise the personal staff exception more than two months before the instant Motion for Summary Judgment was filed. While there is no transcript of this hearing in evidence, the Court may have access to it. *See,* the recorded telephonic hearing of March 14, 2022.

[2] Plaintiff uses the term "Executive Staff" at times to refer to the small group that was part of Howard's personal staff. Younge Dep. 46:17 – 47:01.

working relationship with Mr. Howard, and the intimacy of her work with Mr. Howard. Many of Plaintiff's counsel's questions to Mr. Howard were geared directly to the personal staff exception. [*See e.g.*, Doc. 95, Howard Dep. 15:06-16:05]. Plaintiff's counsel questioned other witnesses about the exception as well. Consider counsel's colloquy with Lynne Nelson:

Q. Okay. And now, Ms. Younge was a member of Mr. Howard's personal staff; is that right?

A. Correct.

[Doc. 94, Nelson Dep. 30:17-19]. In this context, the term of art "personal staff" is relevant only to the issue of the personal staff exception. And seeing as Plaintiff used the term "executive staff" to describe her high-ranking position within the DA's Office, the use of the term "personal staff" betrays counsel's notice and awareness of the issue. [*See e.g.*, testimony cited in Doc. 105, SMF ¶ 18; Doc. 31, Am. Compl. ¶ 33].

Defendant's counsel also spent more than four hours of Plaintiff's deposition questioning her in detail about her job duties and facts related to her being on Howard's personal staff. [See testimony cited in Doc. 105, SMF ¶¶ 1, 4-10, 12-14, 16-22]; *Hassan* at 263-264 (finding that a defendant's extensive deposition questioning on topics related to an affirmative defense provided notice to the plaintiff that the issue would be litigated); *Clews v. Cty. of Schuylkill*, 12 F.4th 353, 358 (3rd Cir. 2021) (finding that the defendant questioning the plaintiff about her job responsibilities during her deposition put the plaintiff on

notice that the personal staff exception was at issue). The idea that Plaintiff was unaware that the personal staff exception was an issue in this litigation is flatly untrue.

The elements of the personal staff exception form a test where the Court decides if, on balance, the elements establish that Plaintiff was a member of the DA's personal staff. Plaintiff's strained attempt to find prejudice consists of three sentences in the Response brief that are easily disposed of. First, Plaintiff claims she could have learned in discovery how she "was held accountable to Nelson or other officials besides Howard." [Doc. 109 p. 10]. Plaintiff's reporting structure and who she was accountable to is information that is obviously best provided by Plaintiff herself, and she gave detailed testimony about how she was accountable only to Howard. [Doc. 105, SMF ¶ 21]. Plaintiff's counsel asked detailed questions to Mr. Howard about Plaintiff's reporting structure in his deposition. [*Id.*]. And Howard's testimony comported fully with Plaintiff's: she was accountable only to Howard. [*Id.*].

Plaintiff's counsel also questioned Nelson specifically about whether Plaintiff reported to her:

Q. [To Nelson] Was [Plaintiff] your immediate subordinate? Were you her supervisor?

A. No.

Q. Who was her supervisor?

A. Paul Howard.

[Doc. 94, Nelson Dep. 39:10-14].

In Plaintiff's second sentence arguing prejudice, Plaintiff claims she needed more information about "Howard's hiring and firing authority over Plaintiff." [Doc. 109 p. 9]. But as discussed in the MSJ, Howard's authority to hire and fire members of his personal staff is statutory. [Doc. 104-1, MSJ Br. pp. 6-7; *See also*, O.C.G.A. §§ 15-18-19(b) and 15-18-20.1]. Further, Mr. Howard testified in detail about his authority in response to Plaintiff's counsel's lengthy questioning on the subject. [Doc. 105, SMF ¶ 35].

In the third and final example of alleged prejudice, Plaintiff states that, regarding the third element of the exception, she would have learned about "the nature of [Plaintiff's] relations with the public compared with Howard's." [Doc. 109 p. 10]. This argument misconstrues element three. The question is whether "[Plaintiff] represents the elected official in the eyes of the public"[3] not how her representation to the public compared with Mr. Howard's. In practice, it is axiomatic that a member of Mr. Howard's inner circle— such as the Director of Policy & Programs and Deputy Chief of Staff— represents him in the eyes of the public. Everything Plaintiff did reflected directly on Mr. Howard. "As a matter of common knowledge and experience we know that a district attorney gets public

---

[3] *Teneyuca v. Bexar Cty.*, 767 F.2d 148, 151 (5th Cir. 1985).

credit for the good job done and impression made by his assistants and gets public criticism for the poor performance or impression made by his assistants. At election time he is judged by what he and his assistants have done." *Shahar v. Bowers*, 114 F.3d 1097, n. 15 (11th Cir. 1997).

Plaintiff's assertions of prejudice are misplaced. Plaintiff's claims about three of the six elements are not well thought out and are not evidence that she was deprived of meaningful discovery. Plaintiff has never asked for discovery to be re-opened as there is no basis to do so as; after all, the evidence about the personal staff exception has been gathered, mainly from her own testimony. The idea that Plaintiff was prejudiced or that she wasn't aware that the facts surrounding the personal staff exception were at issue is contradicted by the record.

## 2.    There is no dispute over the material facts supporting the personal staff exception.

Plaintiff addresses four of the six factors in her brief. Her arguments that attempt to cast doubt on the evidence supporting the elements of the personal staff exception is not supported by the record or common sense. The elements of the exception are:

(1)  Whether the elected official has plenary powers of appointment and removal,

(2)  Whether the person in the position at issue is personally accountable to only that elected official,

(3)  Whether the person in the position at issue represents the elected official in the eyes of the public,

(4)  Whether the elected official exercises a considerable amount of control over the position,

(5)  The level of the position within the organization's chain of command, and,

(6)  The actual intimacy of the working relationship between the elected official and the person filling the position.

*Teneyuca* 767 F.2d at 151.

As to the first factor, Plaintiff claims that Howard did not have authority over appointment and removal. [Doc. 109 p. 9]. In support, Plaintiff cites her own deposition testimony that does not even remotely support this claim. This attempt to mislead the Court is improper. As Plaintiff well knows, she was hired for the position that she applied for and interviewed for. She says as much in the deposition testimony cited in the Response brief. As pointed out in the MSJ, Howard had to secure additional funding for members of his personal staff who could make higher salaries and sign an oath that the funding would be used for his personal staff hire. [Doc. 105, SMF ¶¶ 1-8]. Involvement with funding personal staff positions was the full extent of the county's involvement. Upon her hire, Plaintiff was provided with two job descriptions, one for Deputy Chief of Staff, and the second for Director of Criminal Justice Policy & Programs. [Doc. 104-4, Howard Decl. Exhibit A-1, job descriptions for Plaintiff].  And Plaintiff testified that she applied to be Director of Policy and Programs, [Doc. 93, Pl.'s Dep. 17:23-18:05], and was hired to be Director of Policy and Programs and the Deputy Chief of Staff. [*Id.* 26:17-24; see also, Doc. 31, Am. Compl. ¶ 11, stating that she held the position she interviewed and was hired for]. The argument that

Plaintiff was not hired for the job she applied for or that the decision was reversed is false, even according to her own testimony. Again, attempting to mislead the Court in this way is improper.

Plaintiff's argument that, because her salary was changed, the first element does not support the exception, does not address the question posed by the first element. The question is whether Mr. Howard had the power of appointment and removal. It is undisputed that Georgia law gives Mr. Howard that discretion and there is no testimony or evidence that contradicts that fact. See, O.C.G.A. ¶¶ 15-18-19(b) and 15-18-20.1. Plaintiff does even attempt to dispute, which she could not, that Howard has plenary authority to appoint and terminate his personal staff under Georgia statute. This factor weighs heavily in favor of the exception. In sum, the argument about the first element is baseless and contains statements that are flatly contradicted by Plaintiff's own testimony and the undisputed evidence. When opposing summary judgment, a party's "burden is not satisfied with 'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The first element weighs firmly towards the exception.

Plaintiff's argument about the second factor is also fashioned out of whole cloth. Plaintiff has attempted to change her deposition testimony in her declaration, which is a sham. Plaintiff also cites Howard's deposition testimony

that does not even remotely state what is asserted. Here again, Plaintiff is trying desperately to mislead the Court. Plaintiff testified in detail how she was accountable only to Mr. Howard. It would be difficult to imagine more compelling testimony from a witness detailing their accountability to Mr. Howard. [Doc. 105, SMF ¶¶ 3, 13, 15-21]. "[W]hen a job includes this high level of accountability to one elected official, it is precisely the sort of job Congress envisioned to be within the 'personal staff' of that official and thus exempt from Title VII." *Owens v. Rush*, 654 F.2d 1370, 1376 (10th Cir. 1981).

Plaintiff never testified that she had any accountability to Nelson. She was extremely clear— it would have been difficult for her to be any clearer— that Howard was the only person in the DA's Office that she had any accountability to. [*Id.*]. Nelson backed up Plaintiff's deposition testimony as well. When Plaintiff's counsel asked whether Nelson had any supervisory role over Plaintiff, she stated she did not. [Doc. 94, Nelson Dep. 39:10-14].

And even if Plaintiff were honest in attempting to change her detailed deposition testimony, the fact that she sometimes reported to Nelson on some issues would not change the conclusion. This is especially true given her testimony about how she reported to Howard extensively and worked in a highly intimate capacity with him. [Doc. 105, SMF ¶¶ 3, 13, 15-21]. In *Crain v. Butler*, the court held that the plaintiff was a member of the elected official's personal staff even though she denied reporting directly to him. 419 F.Supp. 2d 785, 791 (E.D.N.C. 2005). The court found that, "at a minimum, she reported directly to

the chief deputy sheriff, the highest ranking officer in the office aside from [the elected official]," and that this close connection satisfied the second element. *Id.* In *Hemminhaus v. Miss.*, the court held the plaintiff, a court reporter, to be on the personal staff of the elected judge even though the plaintiff would sometimes report to attorneys or work for other judges. 756 F.3d 1100, 1108 (8th Cir. 2014). In *Gunaca v. State of Tex.*, the court held the second element was satisfied because the statutory authority to appoint and terminate a staff member necessarily made the plaintiff accountable to the elected official. 65 F.3d 467, 471 (5th Cir. 1995). In *Dubisar-Dewberry v. Dis. Att. Off. of Twelfth Judicial Circuit of Ala.*, the court held the personal staff exception applied when the plaintiff "answered to not only the District Attorney, but also to the Chief Deputy District Attorney, the Chief Investigator, and the Chief Administrative Assistant." 927 F.Supp. 1479, 1485 (M.D. Ala. 1996).

In sum, Plaintiff's naked attempt to change her deposition testimony does not affect the analysis. Even if it were true that Plaintiff reported to Nelson at times, the second factor would still weigh firmly on the side of the exception.

In arguing the third factor, Plaintiff makes a leap in logic that defies common sense. Plaintiff states that because she had meetings that Mr. Howard was present at, she somehow did not represent the DA in the eyes of the public. Besides being nonsensical— representing the DA as his closest advisor while in a public setting would seem to be the height of representation in the eyes of the

public— the deposition testimony cited does not even stray close to stating the proposition asserted.

It is undisputed that Plaintiff represented the DA's Office in public meetings and in her role in drafting the DA's policies. [Doc. 105, SMF ¶¶ 9-10, 22]. As Plaintiff explained, she met with Howard every day, if Howard "needed something done [she] would handle it," that she worked on the DA's initiatives "[a]ll day every day," and that she "was literally [Howard's] go-to person for almost everything." [*Id.* ¶¶ 13, 16-20]. How can it reasonably be asserted that such a close advisor who worked in tandem with Mr. Howard every day would not represent him in the eyes of the public or that Mr. Howard would not be judged on her performance? The argument is meritless.

Plaintiff appears to concede the fourth and fifth factors and does not address either directly.

Plaintiff makes only a passing effort to dispute the sixth factor. And again, as has been the case in the discussion of each element before, Plaintiff attempts to mislead the Court and ignore her own testimony. Plaintiff makes no attempt to argue that Plaintiff did not work in an intimate role with Howard, arguing only that Howard allowed those who worked at the DA's Office to make an appointment to speak with him under his open door policy. Plaintiff fails to explain how that has any bearing on Plaintiff's position on the personal staff. The

argument is especially perplexing given Plaintiff's testimony that she was one of the only people that did not need an appointment to see Mr. Howard and that she was "one of the few on staff that was just able to walk into his office at any time." [Doc. 105, SMF ¶ 20].

Plaintiff's deposition testimony— which she now asks the Court to ignore— describes a prototypical member of an elected official's personal staff. Plaintiff's attempt to rewrite her testimony at the summary judgment stage is a powerful example of why truthful testimony is so important to obtain during discovery. After all, the purpose of this Court and of the justice system is to seek the truth. The entire Response brief's argument on the personal staff issue is a master class in misrepresentation. The Court need only review Defendant's Statement of Material Facts and the record citations to the evidence; compare that with Plaintiff's citations to the deposition testimony and other evidence in the Response brief that is nearly uniform in its failure to support the propositions asserted.

Plaintiff could not cite a single case that would support the contention that she was not a member of Howard's personal staff. Nor has she produced any evidence or any reasonable arguments that she was prejudiced by the personal staff exception being raised in a motion for summary judgment. The case should be dismissed as a matter of law.

**Policymaking Exception**

Plaintiff makes only a passing reference to the policymaking exception in her brief. The evidence in the Motion for Summary Judgment speaks for itself and Plaintiff has failed to defeat that argument, save producing a sham declaration to rewrite her deposition testimony. Defendant stands on the argument in its Motion as it sets forth the undisputed facts that support the exception.

**Notice of Right to Sue**

Plaintiff appears to concede that she lacks a right to sue letter from the proper entity and that she has not satisfied a condition precedent to suit. It is undisputed that at the time of the Answer discovery had not been conducted and Defendant was unaware as to whether Plaintiff had requested a notice of right to sue from the correct entity. Considering the undersigned had just litigated this issue with Plaintiff's attorney in another case, Defendant had cause to believe that a notice of right to sue had been sought from the entity prescribed by Congress in Title VII. Defendant asserted that Plaintiff had failed to satisfy all conditions precedent in the Answer—the only statement that Defendant could have reasonably made at that time based on information available.

In the Initial Disclosures, the issue was raised several times, including citations to the operative statute and the precise Department of Labor regulation. It is undisputed that Plaintiff was provided notice and knowledge that Defendant

expected to litigate whether the right to sue letter was issued by the proper entity under the statute.

Plaintiff cites to *Wilshin* and argues that it is "directly on point." *Wilshin* is a district court case that involves facts far afield from those here. At most, *Wilshin* has a superficial relation to Plaintiff's argument.

Unlike *Wilshin*, Defendant made Plaintiff expressly aware of the issue in Initial Disclosures, citing both the statute and regulations at issue. Plaintiff cannot now argue that she was unaware of the issue or that she could not have attempted to comply with the statutory language that Congress made a necessary condition of suit. The cases that Plaintiff cites do not address facts like those before the court. As Plaintiff was given notice that her right-to-sue letter was inoperative from the outset of the case in Initial Disclosures, and because Plaintiff failed to even attempt to comply with Title VII's language after being provided with notice, the Court could dismiss the case on these grounds as well.

## Title VII

Plaintiff's Response first alleges that there was an incident in which Howard reacted to Plaintiff's pregnancy letter by asking, "Is this a threat?" There is a recording of the termination meeting. [Ex. 104-6]. In that recording, Plaintiff accuses Howard of making a statement related to a "threat." Howard reacts like anyone would who confronts a lie. A lie that Plaintiff is desperately trying to have included on a secret recording. After the accusation, Howard challenges her

immediately about her claim. After being challenged on her statement about a "threat," Plaintiff admits that "no," Howard never made such a statement. [Doc. 105, SMF ¶ 39].

Howard also testified that Plaintiff left the letter on his desk and never spoke with him that day. [Doc. 95, Howard Dep. 24:12-22]. Lynne Nelson supports Howard's testimony and recalls being in Mr. Howard's office when he found Plaintiff's letter on his desk. [Doc. 94, Nelson Dep. 27:16-28:11].

In any case, Plaintiff's own words in the recording show that this allegation about a "threat" are false.


Plaintiff also discusses an alleged change in how Plaintiff was treated after telling Howard she was pregnant. But the undisputed facts show that Howard had received concerning complaints about Plaintiff and witnessed an incident with an attorney from major crimes in the days before Plaintiff gave Howard the letter. [Doc. 105, SMF ¶¶ 23-35]. The issues caused Howard to have a discussion with Plaintiff concerning the incident, her performance, and the complaints received against her. Thus, Plaintiff knew that she was very likely going to be terminated and gave the letter to Mr. Howard the business day following Howard's discussion with her.

It is undisputed that several employees who worked at the DA's Office for many years, one for decades, made complaints about Plaintiff before Plaintiff provided Howard with notice of her pregnancy. [*Id.*]. Plaintiff has not disputed

this fact. And while Lynne Nelson only requested that the complaints be provided in written form after Plaintiff's termination, each of the complaints described issues with Plaintiff that occurred before she gave Howard notice of her pregnancy. [*Id.*]. It is also undisputed that Howard, in a discussion with Lynne Nelson, made the determination to fire Plaintiff after Nelson told him about the complaints and after the incident with the attorney from major crimes. [*Id.*]. Plaintiff has failed to dispute the timeline short of raising 'unsubstantiated assertions,' and by offering only a 'scintilla' of evidence. *Matsushita Elec.*, 475 U.S. at 586.

Plaintiff also contends that there is a widespread conspiracy by her former co-workers to cover up discrimination. Plaintiff asserts that the complaints that Nelson relayed to Mr. Howard, and which were later reduced to writing, were concocted in a vicious scheme against her. No evidence supports this. While Plaintiff can sling allegations and make groundless assertions about conspiracy theories, no evidence supports these claims. In short, it is undisputed that Nelson received several complaints about Plaintiff from people who had been employed at the DA's Office for years. Howard made the choice to believe these long-tenured employees rather than Plaintiff, who had worked at the DA's Office for only a few months. She relayed these complaints to Howard and based on the complaints, Howard made the determination to terminate Plaintiff.

The undisputed evidence shows that Howard had a legitimate reason to terminate Plaintiff based on the complaints he received. While Plaintiff may deny

that the incidents employees complained about took place, the fact that Howard chose to believe those employees is not evidence of discrimination. There is no evidence that when Nelson told Howard about these complaints from long-standing members of the DA's Office, Howard had any reason but to accept them at face value. Nor is there any evidence, short of Plaintiff's conjecture, that Howard did not make the decision to terminate Plaintiff after hearing about these complaints. Plaintiff has not set forth any evidence of pretext, save for supposition and unsupported allegations. The claims against Howard should be dismissed as a matter of law.

This 5th day of August, 2022.

HENEFELD & GREEN, P.C.

/s/ Noah Green
Noah Green
Georgia Bar No. 468138
*Attorney for Defendant*

3017 Bolling Way NE, Suite 129
Atlanta, Georgia 30305
(404) 841-1275
ngreen@henefeldgreen.com

**CERTIFICATE OF COMPLIANCE**

Under Local Rule 7.1(D), I certify that the foregoing has been prepared in compliance with Local Rule 5.1(B) in 13-point Century Schoolbook typeface.

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF GEORGIA**

**ATLANTA DIVISION**

| | | |
|---|---|---|
| DR. JASMINE YOUNGE, | § | |
| | § | |
| *Plaintiff,* | § | CIVIL ACTION NO. |
| | § | 1:20-cv-00684-WMR-CMS |
| v. | § | |
| | § | |
| FULTON JUDICIAL CIRCUIT | § | |
| DISTRICT ATTORNEY'S OFFICE, | § | |
| GEORGIA, | § | |
| | § | |
| *Defendants.* | § | |
| | § | |

---

**CERTIFICATE OF SERVICE**

This is to certify that I have this day served counsel for the opposing parties with a copy of **DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE IN OPPOSITION TO THE MOTION FOR SUMMARY JUDGMENT**, by filing same with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record.

This 5th day of August, 2022.

HENEFELD & GREEN, P.C.

/s/ Noah Green
Noah Green
Georgia Bar No. 468138
*Attorney for Defendant*

3017 Bolling Way NE, Suite 129
Atlanta, Georgia 30305
(404) 841-1275
ngreen@henefeldgreen.com