IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| DR. JASMINE YOUNGE,<br><br>Plaintiff,<br><br>v.<br><br>FULTON JUDICIAL CIRCUIT DISTRICT ATTORNEY'S OFFICE, GEORGIA<br><br>Defendant. | Civil Action No.<br><br>1:20-cv-00684-WMR<br><br>JURY TRIAL DEMANDED |

**PLAINTIFF'S OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT & RECOMMENDATION**

# I. INTRODUCTION

Plaintiff Dr. Jasmine Younge ("Plaintiff" or "Younge") received no negative feedback in her job working for Defendant Fulton Judicial Circuit District Attorney's Office, Georgia ("Defendant" or the "DA's Office") – until she informed then-District Attorney Paul Howard ("Howard") that she was pregnant. Howard angrily called the pregnancy announcement a "threat" and proceeded to remove her duties and exclude her from meetings for the next two weeks. At the end of that two-week period, Howard demanded Younge's resignation. There was no record of performance deficiencies or unprofessional behavior in Younge's personnel file, even after her termination. Only after learning that Younge might file a lawsuit against him did Howard instruct his Chief of Staff Lynne Nelson ("Nelson") to gather derogatory employee statements about Younge.

Based on these and other facts, the Magistrate Judge's Report & Recommendation ("R&R") [Doc. 128] correctly concludes that – if the Court considers the substantive facts of this case – there is sufficient evidence to raise a jury issue that Defendant illegally terminated Younge because of her pregnancy. Unfortunately, the R&R recommends against considering the evidence showing pregnancy discrimination because it finds Defendant has proven an affirmative defense that Defendant never pled in its Answer: the Personal Staff Exemption.

As shown below, the R&R errs in considering an affirmative defense which Defendant never pled and, therefore, waived. In addition, when analyzing that defense, the R&R repeatedly misapplies the summary judgment standard.

For the reasons set forth below, Plaintiff respectfully requests that this Court REJECT the R&R's finding that Defendant has proven the Personal Staff defense, DENY Defendant's Summary Judgment Motion, and permit the jury to resolve the genuine disputes of material fact.

## II. STATEMENT OF OBJECTIONS

A party objecting to an R&R must specifically point out the findings to which it objects. *See United States v. Slay*, 714 F.2d 1093, 1095 (11th Cir. 1983). Here, Plaintiff asserts 12 objections[1] which she contends are errors in the R&R.

## III. FACTS

Plaintiff addresses the relevant facts in their proper context within the arguments below. For an overview of the relevant facts, see Plaintiff's Response to Defendant's Statement of Undisputed Material Facts and her own Statement of Additional Material Facts, both of which are incorporated herein. *See* [Doc. 112-2].

## IV. STANDARD OF REVIEW

### A. Review of R&Rs and Objections Thereto

[1] Identified below in in highlighted language like so: (Objection # XX).

This Court reviews objections to an R&R *de novo*. *See* Fed. R. Civ. P. 72(b)(3) *and* 28 U.S.C. § 636(b)(1)(C). The Court should "give fresh consideration to those issues to which specific objection has been made by a party." *Jeffrey S. v. State Bd. of Educ.*, 896 F.2d 507, 512 (11th Cir. 1990). Further, the Court has discretion whether to consider arguments that were not raised before the Magistrate Judge. *See Williams v. McNeil*, 557 F.3d 1287, 1292 (11th Cir. 2009).

### B. Summary Judgment Standard

Because many of the R&R's errors stem from a failure to analyze the evidence in light of the summary judgment standard, it is worth examining that standard in a little more detail than usual. To wit: Summary judgment must be denied unless "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If a reasonable jury could find in the non-movant's favor, summary judgment must be denied. *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011). When a court rules on a motion for summary judgment, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986); *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1247 (11th Cir. 2013) (courts must "view the evidence and all factual inferences therefrom in the light most favorable to the non-moving party, and resolve

all reasonable doubts about the facts in favor of the non-movant.”). “If there is a conflict between the parties’ allegations or evidence, the non-moving party’s evidence is presumed to be true.” *Allen v. Bd. Of Pub. Educ.*, 495 F.3d 1306, 1314 (11th Cir. 2007). This is true even if the non-moving party’s testimony is “self-serving and uncorroborated.” *United States v. Stein*, 881 F.3d 853, 854 (11th Cir. 2018).

## V. THE R&R ERRED BY CONSIDERING DEFENDANT’S UNPLED AFFIRMATIVE DEFENSE, WHICH SHOULD HAVE BEEN CONSIDERED WAIVED

The Personal Staff Exemption excludes the “personal staff” of an elected official from the anti-discrimination protections of Title VII. *Milliones v. Fulton Cty. Gov't*, No. 1:12-CV-3321-TWT-ECS, 2013 U.S. Dist. LEXIS 79798, at *6-8 (N.D. Ga. Apr. 30, 2013). As the R&R correctly concluded, the Exemption is an affirmative defense. [Doc. 128, pp. 5-7]. A party seeking to timely plead an affirmative defense must do so in the first responsive pleading. If affirmative defenses are not pled, they are waived. *Yellow Pages Photos, Inc. v. YP, LLC*, 856 F. App'x 846, 869 (11th Cir. 2021); Fed. R. Civ. P. 8(c)(1) (“In responding to a pleading, a party must affirmatively state any avoidance or affirmative defense…”); *see also* Rule 12(b).

It is undisputed that Defendant did not plead the Personal Staff affirmative

defense in its Answer. [Doc. 128, p. 7]. Therefore, if Defendant wished to assert the Personal Staff defense, it should have amended its Answer to add this defense.

### A. The R&R Erred in Allowing a *De Facto* Amendment of Defendant's Pleadings Without Good Cause. (Objection # 1)

Since Defendant did not plead the Personal Staff Exemption, the R&R's consideration of that defense is essentially granting Defendant a *de facto* "amendment" of its Answer to add that defense. However, the R&R erred in allowing this amendment because it never considered whether Defendant proved "good cause" for allowing an untimely amendment.

#### 1. The "Good Cause" Requirement for Allowing Amendment of Pleadings After the Deadline Set by the Scheduling Order.

When a party seeks to amend its pleadings in a timely manner, the court "should freely give leave" to amend "when justice so requires." *Tom Hussey Photography, LLC v. Reaves*, Civil Action No. 22-20416-Civ, 2022 U.S. Dist. LEXIS 170965, at *3 (S.D. Fla. Sep. 21, 2022) (citing Fed. R. Civ. P. 15(a)(2)). However, when the party seeks to amend a pleading after the deadline set by a Scheduling Order, it must first prove "good cause" for the untimely amendment. *Id.* (citing Fed. R. Civ. P. 16(b)(4)). *See also Sosa v. Airprint Sys.*, 133 F.3d 1417, 1419 (11th Cir. 1998) ("because Sosa's motion to amend was filed after the scheduling order's deadline, she must first demonstrate good cause under Rule 16(b) before we

will consider whether the amendment is proper under Rule 15(a).”). This additional “good cause” requirement is necessary because a “Scheduling Order is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril.” *Moyer v. Walt Disney World Co.*, 146 F. Supp. 2d 1249, 1252 (M.D. Fla. 2000) (internal quotations omitted).

The “good cause” standard precludes untimely amendments unless the schedule cannot “be met despite the diligence of the party seeking the extension.” *Sosa*, 133 F.3d at 1418. And the Eleventh Circuit has repeatedly found that, if a party knew or should have known of the information supporting the proposed amendment before the deadline for amendments in the Scheduling Order had passed, then that party was not “diligent” and does not have “good cause” for the untimely amendment. *Pugh v. Kobelco Constr. Mach. Am., LLC*, 413 F. App'x 134, 136 (11th Cir. 2011); *Saewitz v. Lexington Ins. Co.*, 133 F. App'x 695, 700 (11th Cir. 2005); *Sosa*, 133 F.3d at 1419.

Crucially for this case, the issue of whether the party opposing the untimely amendment would be prejudiced by said amendment is “immaterial” to the good cause inquiry. *Moyer*, 146 F. Supp. 2d at 1252. *See also Roberson v. BancorpSouth Bank, Inc.*, No. 12-0669-WS-N, 2013 U.S. Dist. LEXIS 130423, at *7 (S.D. Ala.

Sep. 12, 2013) ("Diligence, not lack of prejudice, is the touchstone of the Rule 16(b)(4) inquiry.").

**2. Defendant Did Not Seek to Amend Its Answer by the Deadline Set by the Scheduling Order.**

According to the Scheduling Order in this case, the "time limits for . . . amending the pleadings . . . are otherwise as stated in the Federal Rules of Civil Procedure and this Court's Local Rules." [Doc. 58, p. 1]. This Court's Local Rules do not address the deadline for amending pleadings, but the Federal Rules allow a party to amend its pleading once, as a matter of course, "21 days after serving it." Fed. R. Civ. P. 15(a)(1)(A). Here, Defendant's Answer to Plaintiff's First Amended Complaint was filed on March 24, 2021. [Doc. 53]. Thus, the deadline for amendments was 21 days later – **April 14, 2021**.[2]

Here, Defendant did not move to amend its Answer by the required deadline. In fact, Defendant did not move to amend its Answer at all! The first time Defendant even notified the Court and Plaintiff of its intent to use the Personal Staff defense in

[2] Confusingly, the Joint Preliminary Report and Discovery Plan ("JPR") appears to set forth a different deadline for amending pleadings: 30 days after the filing of the JPR. [Doc. 57, § 6(b), p. 7]. The JPR was filed on April 26, 2021. [Doc. 57]. Thus, under the JPR, the deadline for amendments was **May 26, 2021**.

this litigation was in an unrelated hearing on March 14, 2022. [Doc. 128, p. 7]. This was 11 months after the deadline for amendments set forth in the Scheduling Order.[3]

**3. Defendant Has Not Demonstrated Good Cause for an Untimely Amendment.**

Far from demonstrating "good cause" for an amendment, Defendant – as noted – has not even asked for the amendment. But, even if one were to liberally construe the announcement in a hearing as a backhanded motion to amend, Defendant has not demonstrated good cause for the amendment. Defendant does not argue that it did not or could not have known about the information underlying the Personal Staff Exemption before the deadline to amend. At most, Defendant's counsel told the Court during oral argument that the Exemption "came to his attention when he began drafting the summary judgment motion in February or March." [Doc. 128, p. 7]. But this is not to same as saying new information came to light that demonstrated the availability of the Exemption.

Neither Defendant nor the R&R point to any new information – that Defendant could not have known with diligence – that Defendant learned at the time its counsel was drafting the summary judgment motion. Indeed, how could it? The Personal Staff Exemption exclusively involves facts regarding the nature of

[3] If one uses the deadline for amendment set forth in the JPR, this is still 9 months and 16 days after the deadline.

Plaintiff's working relationship with Howard and of his authority over her. *Milliones v. Fulton Cty. Gov't*, No. 1:12-CV-3321-TWT-ECS, 2013 U.S. Dist. LEXIS 79798, at *9-10 (N.D. Ga. Apr. 30, 2013). This is all information that would have been within Defendant's knowledge from the beginning.

The R&R erred in failing to consider Defendant's clear lack of "good cause."

### B. To the Extent There Is Conflicting Eleventh Circuit Precedent Regarding Untimely-Pled or Unpled Affirmative Defenses, the R&R Erred in Applying a Rule that Rewards a Dilatory Party for Exercising Even Less Diligence.

#### 1. Conflicting Lines of Precedent.

As at least one District Court in the Eleventh Circuit has noted, "the Eleventh Circuit has adopted two, seemingly incompatible approaches to untimely, affirmative defenses." *Shaneyfelt v. REC I/Blue Springs Ltd. P'ship*, Civil Action No. CV-11-S-4366-NE, 2013 U.S. Dist. LEXIS 31308, at *39-40 (N.D. Ala. Mar. 7, 2013). The first is the "good cause" line set forth above, which <u>requires</u> the defendant asserting an untimely defense to prove good cause and <u>precludes</u> such an amendment unless "the schedule <u>cannot</u> be met despite the diligence of the party seeking the extension." *Id.* at *40 (emphasis in original) (internal quotations omitted). The other line of cases allows a defendant to assert an unpled defense if the plaintiff receives notice of the defense by some means other than the pleadings

and is not prejudiced by it. *Id*. at *41. "Neither line of cases has expressly overruled the other." *Id*. at *43.

**2. The R&R Erred In Failing to Even Consider Which of the Conflicting Lines of Precedent Should Apply. (Objection # 2)**

The R&R, however, never even considered the "good cause" line of cases. Instead, it skipped straight to asserting that "the key question . . . is whether Plaintiff has suffered any prejudice." [Doc. 128, pp. 9-10]. This is error, because the "good cause" cases – i.e. *Sosa*, *Pugh*, *Saewitz* – are just as much binding Eleventh Circuit precedent as the cases cited by the R&R. The Court has no choice but to determine which precedent to apply, and Plaintiff objects to the R&R's sidestepping that determination.

**3. The R&R Erred In Adopting, Without Consideration, a Rule That Rewards Dilatory Behavior. (Objection # 3)**

As a matter of policy – and the orderly litigation of cases in this Court – it cannot be the rule that a defendant who never even attempts to amend its Answer is in a better position than a defendant who at least attempts to follow through with amending its Answer.

But that is exactly what happens under the rule/line of precedent that the R&R adopts! A defendant that appropriately, if untimely, attempts to amend its answer to add a previously-unpled defense must prove its diligence and good cause to allow

the amendment. *Shaneyfelt*, 2013 U.S. Dist. LEXIS 31308 at *40. In contrast, a defendant that simply blows off its responsibility and argues an affirmative defense that it never even attempted to add to its Answer is rewarded! The burden of proving "good cause" is taken off the defendant and the burden of proving "prejudice" is placed on the plaintiff. *Id*. at *41.

Such a rule encourages dilatory behavior, renders the Scheduling Order a "frivolous piece of paper", and renders pleading requirements meaningless. It is error to adopt it.

### C. The R&R Erred in Finding Plaintiff Was Not Prejudiced by Allowing Defendant to Assert an Unpled Defense Months After Discovery Had Closed. (Objection # 4)

As the R&R notes, neither party was thinking about or addressing the Personal Staff Exemption during discovery. Defendant's counsel told the Court that the Exemption did not occur to him until he was drafting the Summary Judgment Motion. [Doc. 128, p. 7 & pp. 7-8, n.4]. And Plaintiff was not put on notice that the Exemption was at issue until the March 14, 2022 hearing – approximately two months after the close of discovery. [Doc. 128, pp. 7-9]. Despite this lack of notice, the R&R finds that Plaintiff was not prejudiced because some of the information obtained in discovery happened to overlap with the Personal Staff factors. [Doc. 128, pp. 10-11]. But this accidental overlap is not enough to show there was no prejudice

because Plaintiff never had the opportunity to conduct discovery intentionally directed toward learning about this defense.

### 1. Plaintiff Was Prejudiced Because She Was Denied the Opportunity to Conduct Discovery Purposefully Directed at the Personal Staff Exemption While Discovery Was Open.

"The overall purpose of discovery under the Federal Rules is to require the disclosure of all relevant information so that the ultimate resolution of disputed issues in any civil action may be based on a full and accurate understanding of the true facts, and therefore embody a fair and just result." *Oliver v. City of Orlando*, No. 6:06-cv-1671-Orl-31DAB, 2007 U.S. Dist. LEXIS 80552, at *4 (M.D. Fla. Oct. 31, 2007) (citing *United States v. Proctor & Gamble Co.,* 356 U.S. 677, 682 (1958)) (emphasis added). Without knowing what the claims or defenses even are, a party cannot obtain a "full and accurate understanding of the true facts" because it cannot even know which "true facts" to obtain.

This is why courts in the Eleventh Circuit have repeatedly found prejudice where a party seeks to argue new claims or defenses after the close of discovery.[4] *E.g.*, *Reese v. Herbert*, 527 F.3d 1253, 1263 (11th Cir. 2008) ("because the period

[4] Indeed, some courts have even found prejudice when discovery was not over, but there was still insufficient time to explore the new defense. *Yellow Pages Photos, Inc. v. Yellow Book USA, Inc.*, No. 8:08-cv-930-T-23EAJ, 2009 U.S. Dist. LEXIS 141402, at *3 (M.D. Fla. Aug. 14, 2009) ("Only a month remains before the close of discovery, and an amendment would allow the plaintiff only a limited opportunity to seek discovery concerning the defense. An amendment at this stage of the case prejudices the plaintiff and rewards the defendants' undue delay.").

for discovery had expired, granting the motion would have caused the defendants undue prejudice, as they would not have been able to conduct further discovery with respect to the claim the proposed amendment asserted"); *Regions Bank v. Kaplan*, No. 8:16-cv-2867-T-23AAS, 2017 U.S. Dist. LEXIS 234113, at *8 (M.D. Fla. Sep. 25, 2017) ("The eleventh hour addition of this affirmative defense would certainly prejudice Regions as discovery is now closed.").

Here, Defendant didn't even identify the Personal Staff Exemption as an issue until the March 14, 2022 hearing – approximately 2 months after the close of discovery. [Doc. 128, pp. 7-9]. Moreover, Defendant didn't explain the basis for the Exemption until its first Summary Judgment Motion nearly a month later, on April 8, 2022. [Doc. 96; Doc. 128, p. 17]. Because Plaintiff never had the chance to conduct discovery specifically geared toward the Exemption, she suffered prejudice under *Reese* and *Regions Bank*.

**2. The Need to Address a Defense Other Than That Which Was Noticed to Plaintiff and/or to Reopen Discovery Is Also Prejudice to Plaintiff.**

The R&R appears to find that Plaintiff suffered no prejudice because – although Defendant first asserted the Personal Staff defense approximately two months after the close of discovery – "there was an opportunity for [Plaintiff] to seek leave to take additional discovery on the 'personal staff' exemption before

Defendant filed a dispositive motion." [Doc. 128, p. 9]. Here, the R&R has it backwards. The need to take additional discovery after it is closed isn't the solution to avoid prejudice; it is prejudice. In *Whiteside v. Infinity Cas. Ins. Co.*, No. 4:07-CV-87 (CDL), 2008 U.S. Dist. LEXIS 60512, at *15-16 (M.D. Ga. Aug. 8, 2008), the defendant argued that the plaintiff had actual notice of the affirmative defenses that the defendant first raised in its Summary Judgment Response and, thus, suffered no prejudice. The Court disagreed, finding that the plaintiff was prejudiced and the defendant had waived the defenses in question – in part because the plaintiff would have been required to reopen discovery. *Id*. at *17-18 ("Moreover, ICIC does not rebut Plaintiff's contention that it will be prejudiced by ICIC's assertion of these defenses, as Plaintiff will be required to reopen discovery and redepose witnesses to adequately explore the defenses."). Similarly, in this case, Younge would be prejudiced by having to reopen discovery at this late stage, after the summary judgment briefing.[5]

Similarly, in another case, the Court found prejudice when the plaintiff spent time and resources to conduct discovery and make arguments to defeat one defense,

[5] Also, as noted above, in the absence of discovery, Defendant's Summary Judgment Motion was the first time it explained the basis for its Personal Staff Exemption defense. [Doc. 96]. This is similar to the *Whiteside* defendant raising its defenses for the first time at summary judgment. *Whiteside*, 2008 U.S. Dist. LEXIS 60512 at *16.

only to be confronted with an entirely new, previously-unpled defense. *Shaneyfelt v. REC I/Blue Springs Ltd. P'ship,* Civil Action No. CV-11-S-4366-NE, 2013 U.S. Dist. LEXIS 31308, at *43-44 (N.D. Ala. Mar. 7, 2013) ("Now that plaintiff has expended her resources to defeat those defendants' original defense, she alleges that she would be prejudiced by their belated attempt to try a new tactic. For all of those reasons, this court will grant plaintiff's motion to strike the... affirmative defense."). Here, Plaintiff conducted discovery geared toward proving she was discriminated against based on her pregnancy and not terminated for the reasons Defendant claims. And, as the R&R's analysis makes clear, Plaintiff succeeded in uncovering enough evidence to raise a genuine jury issue of pregnancy discrimination. [Doc. 128, pp. 44-47]. Now – after the close of discovery – Plaintiff was forced to rebut a defense for which she had not prepared and which she had not had a chance to explore. This is prejudice.

**3. The R&R Erred in Finding Plaintiff Had Not Shown What Additional Discovery She Would Have Performed (if the Personal Staff Exemption Were Timely Pled) and, Therefore, Could Not Show Prejudice.**

In addition to pointing to some accidentally-overlapping discovery, the R&R also concluded that Plaintiff was not prejudiced because (according to the R&R), Plaintiff's counsel could not identify specific discovery he would have performed if the Exemption was timely pled. [Doc. 128, pp. 12-15]. This isn't true; Plaintiff can

and will identify such lost discovery opportunities in this section. But the larger point is that the "prejudice" inquiry does not require proof to that level of specificity. None of the cases cited above in which the Court found prejudice – *Reese*, *Regions Bank*, *Yellow Pages Photos, Inc.*, *Whiteside*, and *Shaneyfelt* – required the plaintiff to identify the precise discovery strategy he or she would have taken in the counterfactual scenario where the defendant properly pled its defenses. The point isn't whether Plaintiff's counsel could identify a hypothetical discovery strategy at oral argument. The point is that Plaintiff never had the opportunity to purposefully develop such a strategy to uncover evidence about the Exemption during the normal course of discovery.

Nevertheless, Plaintiff can identify certain areas of discovery that her counsel could have explored if the Personal Staff Exemption had been timely pled. For instance, regarding the first "Personal Staff" factor – "plenary power of appointment and removal" – there appear to be regulations that limited Paul Howard's powers to appoint (and, possibly, to remove) Younge. [Doc. 128, pp. 14-15]. But, because the Exemption was unpled and never even identified during discovery, Plaintiff had no opportunity to conduct discovery about those regulations and how they limited Howard's powers of appointment and removal. Even the R&R acknowledges it would have been "worthwhile for Younge to take discovery pertaining to the

application of the rules that apply to Howard's appointment and removal of staff members[6]." [Doc. 128, p. 15].

Regarding the third "Personal Staff" factor – whether Younge represented Howard in the eyes of the public – the R&R concludes there is no prejudice because Plaintiff's counsel could not identify (at oral argument) the specific members of the public he might depose on this factor. [Doc. 128, p. 14]. But, again, this is just more information that Plaintiff and her counsel were unable to uncover because the defense was never pled. If Plaintiff's counsel had known the Personal Staff Exemption was at issue during discovery, he could have gathered discovery on specific members of the public who had meetings with both Howard and Younge, subpoenaed those members, and questioned them whether – with Howard in the room – they still perceived Younge as speaking for Howard. That Plaintiff's counsel could not identify such members on the spot at oral argument is not, as the R&R asserts, proof that such discovery would be "a mere fishing expedition." It is further evidence that Plaintiff was deprived of the opportunity to conduct the complex, multi-step discovery that the Exemption requires.

---

[6] The R&R nevertheless finds not prejudice because, it concludes, the other Personal Staff factors "overwhelmingly" favor finding that Younge was a member of Howard's personal staff. As shall be shown below, this is not the case.

Finally, regarding the second "Personal Staff" factor – whether Younge was personally accountable only to Howard – the R&R again finds now prejudice because Plaintiff's counsel could not identify the specific additional discovery he would have taken if the defense had been properly pled and because Younge would have known how she was held accountable to Chief of Staff Nelson or other officials besides Howard. [Doc. 128, p. 13]. Here, the R&R is making some strong assumptions about what other facts might have been discovered. For instance, Nelson may have had additional critical information that would review her authority to direct – or her actual direction of – Younge. Similarly, Howard would have had more knowledge about how much he allowed Nelson or others to direct Younge's workday. Nelson and Howard testified that they considered Howard to be Younge's manager, but Plaintiff never had the opportunity to explore the reality of whether – beyond those formal titles and reporting structures – Nelson or others <u>also</u> possessed authority to direct Younge and her work.

In sum, it was error for the R&R to have even considered Defendant's unpled Personal Staff defense.

## VI. THE R&R ERRED IN ITS ANALYSIS OF DEFENDANT'S PERSONAL STAFF DEFENSE BY REPEATEDLY IGNORING THE SUMMARY JUDGMENT STANDARD.

### A. The Personal Staff Exemption Must Be Narrowly Construed, Especially at Summary Judgment.

As noted above, the Personal Staff Exemption excludes the "personal staff" of an elected official from the anti-discrimination protections of Title VII. *Milliones v. Fulton Cty. Gov't*, No. 1:12-CV-3321-TWT-ECS, 2013 U.S. Dist. LEXIS 79798, at *6-8 (N.D. Ga. Apr. 30, 2013). Although the term "personal staff" is not defined in Title VII, Courts generally analyze the following factors to determine whether the Exemption applies:

> (1) Whether the elected official has plenary powers of appointment and removal, (2) whether the person in the position at issue is personally accountable to only that elected official, (3) whether the person in the position at issue represents the elected official in the eyes of the public, (4) whether the elected official exercises a considerable amount of control over the position, (5) the level of the position within the organization's chain of command, and (6) the actual intimacy of the working relationship between the elected official and the person filling the position.

*Id*. *9-10.

In analyzing the Personal Staff Exemption, it must be remembered both that the Defendant bears the burden of proof and that the defense is construed narrowly against the employer. "Courts have construed the personal staff exemption narrowly . . . because 'Congress intended . . . the . . . exception to apply only to those individuals who are in highly intimate and sensitive positions of responsibility on the staff of the elected official.'" *Id*. at *8. "[C]ourts rarely decide the personal staff exemption issue even at the summary judgment stage, '[s]ince this determination

demands extensive factual analysis . . . '" *Id.* at *10; *see also Teneyuca v. Bexar Cty.*, 767 F.2d 148, 152 (5th Cir. 1985) (noting that the determination of the "personal staff" exception "does not lend itself well to disposition by summary judgment").

This reluctance to grant summary judgment on the Personal Staff Exemption makes sense, given both the narrow construction of the Exemption and the rule that, at summary judgment, if a reasonable jury could find for the non-movant, summary judgment must be denied. *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011) ("The [plaintiff's] burden at summary judgment . . . [is] to present sufficient evidence that would permit (not require) a jury to find that he was the victim of unlawful discrimination and retaliation.").

**B. Analysis of the Personal Staff Exemption – Overview.**

As noted above, the R&R finds summary judgment should be denied if one considers the substantive facts regarding summary judgment. However, the R&R recommends granting summary judgment based on the Personal Staff Exemption. More specifically, the R&R concludes that 5 out of the 6 factors strongly favors classifying Younge as Howard's personal staff. In fact, as shown below, 2 of the factors weigh against applying the Personal Staff Exemption, 2 others weigh in favor applying the Exemption, and 2 others are neutral. Given this mixed record and the reluctance of the Courts to grant summary judgment on the Personal Staff

Exemption, summary judgment should be denied and this contentious matter referred to the jury. In addition, the R&R errs by repeatedly failing to analyze the evidence in the way required by the Summary Judgment standard.

### C. Analysis of the Personal Staff Exemption – Factor-by-Factor.

As noted above, the R&R finds summary judgment should be <u>denied</u> if one considers the substantive facts regarding summary judgment. However, the R&R recommends granting summary judgment based on the Personal Staff Exemption. More specifically, the R&R concludes that 5 out of the 6 factors strongly favors classifying Younge as Howard's personal staff. In fact, as shown below, 2 of the factors weigh against applying the Personal Staff Exemption, 2 others weigh in favor applying the Exemption, and 2 others are neutral. Given this mixed record and the reluctance of the Courts to grant summary judgment on the Personal Staff Exemption, summary judgment should be denied and this contentious matter referred to the jury. In addition, the R&R errs by repeatedly failing to analyze the evidence in the way required by the Summary Judgment standard.

#### 1. Actual Intimacy of the Working Relationship.

Case law indicates that the 6th factor – the "actual intimacy of the working relationship" is "the most important factor." *Laurie v. Ala. Court of Criminal Appeals*, 88 F. Supp. 2d 1334, 1338 (M.D. Ala. 2000). The evidence indicates that

this factor is **at most, neutral, if not weighing against application of the Exemption**.

The R&R – focusing on the testimony showing that Younge and Howard initially worked closely together and that, during that time, she had "open door" access to him – concludes that this factor "makes it abundantly clear that the 'personal staff' exemption applies in this case." [Doc. 128, pp. 42-43]. Not so. And the R&R's failure to properly analyze this factor evinces a larger failure to properly apply the summary judgment standard. Specifically, the R&R errs in two ways regarding this factor.

First, the R&R wrongly dismisses the fact that the intimacy of Younge's working relationship with Howard radically changed after she told him she was pregnant. (**Objection # 5**). Instead, the R&R dismisses this fact by saying Younge and Howard still worked closely together for the "majority" of Younge's employment with Defendant. [Doc. 128, p. 43]. But this misses the point, as shown by reference to persuasive Fourth Circuit precedent.

In *Cromer v. Brown*, 88 F.3d 1315 (4th Cir. 1996), the plaintiff was demoted by the (elected) sheriff from captain to lieutenant, after which he went from a close working relationship with the sheriff to rarely seeing him. *Id*. at 1319-20, 1328-29. The Fourth Circuit found that, when the plaintiff was a captain, his close working

relationship with the sheriff (among other things) rendered him a member of the sheriff's personal staff. *Id*. at 1324. However, when the plaintiff was demoted to lieutenant, he rarely saw the sheriff (at most, once a month in group meetings), and thus the Fourth Circuit found he was no longer a member of the sheriff's personal staff. *Id*. at 1323-24, 1328-29.

In the same way, after Younge told Howard of her pregnancy, he stopped meeting with her, excluded her from previously-scheduled meetings, and dismissed her when she tried to talk to him. (Younge Depo.[7] 76:19-77:15, 80:1-81:13, 105:12-107:5; Younge Decl.[8] ¶¶ 23, 30-31). This radical change in the working relationship constitutes a *de facto* demotion. Like the plaintiff in *Cromer*, Younge no longer worked closely with the elected official (Howard) by the time she was terminated. Even if she had been "personal staff" before, now she wasn't. That the R&R dismissed this fact is evidence of its failure to view the evidence in the light most favorable to the nonmovant. *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1247 (11th Cir. 2013).

Second, the R&R entirely fails to address Howard's admission that he maintained an open door and allowed <u>all</u> employees – not just Younge – to come to

[7] Deposition of Jasmine Younge ("Younge Depo.") [Doc. 93].
[8] Declaration of Jasmine Younge ("Younge Decl.") [Doc. 111-2].

his office to talk to him about issues. (**Objection # 6**). (Howard 1st Depo.[9] 114:22-115:25; Younge Decl. ¶ 38). A reasonable jury could find, based on Howard's own admission, that Younge's "open door" access to Howard didn't really distinguish her from most employees in the DA's Office. The R&R's complete failure to address this evidence constitutes a failure to view the evidence in the light most favorable to the nonmovant. *Feliciano*, 707 F.3d at 1247.

In sum, the radical change in Younge's working relationship with Howard, compared with evidence that her privileges of access to Howard were similar to the access enjoyed by others. This factor is, at most, a wash.

### 2. Whether Howard Had Plenary Powers of Appointment and Removal.

As the R&R acknowledges, Howard did not have "plenary" powers of appointment. Once he selected a candidate, "the actual hiring of the candidate . . . was subject to local laws or the authorization of the governing authority of Fulton County." [Doc. 128, p. 33].

The R&R says this limitation means this factor doesn't weigh for or against applying the Personal Staff Exemption, but this is an error. (**Objection # 7**). If Howard was limited in his authority to hire by regulations and the County's

[9] First Deposition of Paul Howard ("Howard 1st Depo.") [Doc. 95].

approval, then he did not have "plenary" powers of appointment. This factor, therefore, **weighs against applying the Exemption**.

**3. Whether Younge Was Personally Accountable Only to Howard.**

The R&R claims this factor "weighs heavily" in favor of applying the Personal Staff Exemption. [Doc. 128, p. 38]. Wrong. In fact, this factor is, **at most, neutral**.

First, the affirmative evidence that the R&R cites to show Younge was personally accountable only to Howard is weak. (**Objection # 8**). For instance, at [Doc. 128, pp. 34-35], the R&R cites a bunch of evidence regarding how closely Younge and Howard (initially) worked together. But, logically, whether or not they worked closely, this doesn't show that Younge was accountable only to Howard. It just shows they worked together. Similarly, the Court relies upon an oath Howard signed to Fulton County that Younge was a member of his "personal staff." However, given the evidence of Howard's personal dishonesty – he used donations from the City of Atlanta to "charities" he owned to pad his salary[10] (Howard 2nd Depo.[11] 6:19-8:14, 12:4-13:15, 15:24-16:20) – a reasonable jury could choose to

[10] This information is gleaned from Howard's decision to assert his Fifth Amendment rights against self-incrimination in his second deposition. The Court may draw adverse inferences from this assertion in a civil case. *State Farm Mut. Auto. Ins. Co. v. Filenger*, 362 F. Supp. 3d 1246, 1255 (S.D. Fla. 2018).

[11] Second Deposition of Paul Howard ("Howard 2nd Depo.") [Doc. 108].

disbelieve anything he says. Thus, evidence of what he represented to Fulton County is weak, at best, evidence that what he said was true.

Second, the R&R wrongly dismisses evidence that other officials – specifically, Chief of Staff Nelson – also directed Younge's work at times. (Grimes Decl.[12] ¶ 5; Younge Decl. ¶ 33). (**Objection # 9**). The R&R rejects this evidence because Howard and Nelson testify that Howard alone was Younge's manager. But the question isn't formal reporting structure, but whether Younge was accountable to more than one official. The evidence is that she took direction from Nelson, not just Howard. And the R&R's distinction between Younge "taking direction from" Nelson and being "accountable to her" is incomprehensible.

**4. Whether Younge Represented Howard in the Eyes of the Public.**

This factor **weighs against application of the Exemption**.

The R&R bases its conclusion that Younge represented Howard to the public in part on Howard's testimony that she did so. But, as shown above, a reasonable jury could disbelieve anything Paul Howard says based on his admitted dishonesty. (**Objection # 10**).

[12] Declaration of Tisa Grimes ("Grimes Decl.") [Doc. 109-3].

More to the point, whenever Younge met with dignitaries/members of the public, Howard was also present. (Younge Depo. 34:12-35:3, 36:24-37:25; Younge Decl. ¶ 19). Younge did not run any of these meetings. (Younge Depo. 36:24-37:25). In essence, no one was going to be the face of Paul Howard other than Paul Howard. However, the R&R dismisses this evidence because Younge "participated" in the meetings and holds that it's "conceivable" that Howard would have been present at the meetings and the public still viewed Younge as representative of Howard at that meeting, too.

This is a clear failure to follow the summary judgment standard. (**Objection # 11**). The point isn't what's "conceivable." The point, at summary judgment, is what the evidence shows when viewed in the light most favorable to the non-moving party. *Feliciano*, 707 F.3d at 1247. At summary judgment, the Court must make the inference that most favors the non-moving party. *See Sconiers v. Lockhart*, 946 F.3d 1256, 1263 (11th Cir. 2020) ("if a reasonable jury could make more than one inference from the facts, and one of those permissible inferences creates a genuine issue of material fact, a court cannot grant summary judgment."). In this case, that inference is that – when Howard himself was present in meetings with the public – those members of the public perceived Howard himself (not Younge) as representing him.

Finally, the R&R entirely fails to address the fact that, after Younge told Howard she was pregnant, he began excluding her from meetings with the public/dignitaries and not allowing her to speak in the meetings she did attend. (Younge Decl. ¶ 23; Younge Depo. 102:1-13). (**Objection # 12**). Thus, even if Younge was personal staff earlier in her employment, the *de facto* demotion by the time of her termination rendered her no longer "personal staff." *Cf. Cromer v. Brown*, 88 F.3d 1315, 1323-24, 1328-29 (4th Cir. 1996). The R&R's failure to even consider this evidence is yet another failure to view the evidence in the light most favorable to the nonmovant.

**5. Summary: The Evidence Is Not So One-Sided As to Overcome the Courts' Reluctance to Grant Summary Judgment on the Personal Staff Exemption.**

Even if the 4th (Howard's control over the position) and 5th (Younge's level in the chain of command) weigh in favor of applying the Exemption, that simply means the factors are evenly split: 2 in favor applying the Exemption, 2 against its application, and 2 that are neutral.

Remember that the Courts narrowly construe the Personal Staff Exemption and are generally reluctant to grant summary judgment on that fact-intensive defense. *Milliones v. Fulton Cty. Gov't*, No. 1:12-CV-3321-TWT-ECS, 2013 U.S. Dist. LEXIS 79798, at *8, *10 (N.D. Ga. Apr. 30, 2013). Here, the even split among

the factors – and the fact that the "most important" factor (actual intimacy) is neutral – does not dictate overcoming that reluctance. The Personal Staff Exemption issue should be sent to the jury to decide.

## VII. CONCLUSION

The unpled Personal Staff Exemption should not be considered at all at summary judgment. But, to the extent that it is considered, the evidence is mixed, and not so one-sided as to justify granting summary judgment and taking this issue away from the jury. Finally, as the R&R correctly noted, the evidence creates a genuine issue re: pregnancy discrimination. For these reasons, Plaintiff respectfully asks the Court to REJECT the R&R's recommendation, DENY summary judgment, and proceed to trial by jury.

Respectfully submitted the 9th day of January, 2023.

**BARRETT & FARAHANY**

s/ *Matthew C. Billips*
Matthew C. Billips
Georgia Bar No. 057110

*Attorney for Jasmine Younge*

P.O. Box 530092
Atlanta, GA 30353
matt@justiceatwork.com

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| DR. JASMINE YOUNGE,<br><br>Plaintiff,<br><br>v.<br><br>FULTON JUDICIAL CIRCUIT DISTRICT ATTORNEY'S OFFICE, GEORGIA<br><br>Defendant. | Civil Action No.<br><br>1:20-cv-00684-WMR<br><br>JURY TRIAL DEMANDED |

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed *Plaintiff's Objections to the Magistrate Judge's Report & Recommendation* with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to all attorneys of record.

Respectfully submitted the 9th day of January, 2023.

**BARRETT & FARAHANY**

s/ *Matthew C. Billips*
Matthew C. Billips
Georgia Bar No. 057110