## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| DR. JASMINE YOUNGE<br><br>　　　　Plaintiff,<br><br>v.<br><br>FULTON JUDICIAL CIRCUIT<br>DISTRICT ATTORNEY'S OFFICE,<br>GEORGIA,<br><br>　　　　Defendant. | CIVIL ACTION FILE NO:<br><br>1:20-cv-00684-WMR |

## ORDER

Before the Court is the Magistrate Judge's Final Report and Recommendation ("R&R") [Doc. 128] on the Motion for Summary Judgment [Doc. 104] filed by Defendant Fulton Judicial Circuit District Attorney's Office ("Defendant"). The Magistrate Judge recommends the Court grant Defendant's Motion for Summary Judgment on Plaintiff Jasmine Younge's claims of gender discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. ("Title VII").[1] Plaintiff objects to the Magistrate Judge's recommendation that

---

[1] As the Magistrate Judge noted, Plaintiff's claims for race discrimination (Counts Three and Four) and gender-based discrimination in violation of Equal Protection Rights Under the Fourteenth Amendment Pursuant to 42 U.S.C. § 1983 (Count Five) were dismissed from the case on March 10, 2021. [*See* Doc. 52]. Because Counts Four and Five were dismissed, Paul Howard, who was

the Court grant Defendant's Motion [Doc. 132].  For the reasons discussed herein, the Court agrees with the Magistrate Judge's recommendations and thus grants Defendant's Motion for Summary Judgment.[2]

## I.    BACKGROUND

The underlying allegations of fact regarding this case are more specifically set forth in the R&R, which are incorporated herein.[3]  To summarize, in April 2019, Plaintiff was hired by then District Attorney Howard as Deputy Chief of Staff and Director of Policy and Programs at a salary of $120,282, which was one of the top three salaries in the District Attorney's Office.  [Doc. 105 ¶¶ 1, 2; Doc. 112-2 ¶¶ 1, 2; Doc. 104-4, Ex. A-2, Interview Schedule; Doc. 104-4, Ex. A-3, Job Offer; Doc. 111-2 ¶ 3].  Howard initially sought to hire Plaintiff in the Director position at a salary of $125,000, but he was not permitted by Fulton County to hire her at that

---

serving as district attorney at the time of Plaintiff's employment, was terminated as a defendant. [*See* Doc. 42 at 12].  In addition, to the extent Count One of the Amended Complaint purported to allege a non-pregnancy related sex discrimination claim, that portion of Count One was dismissed. [*See* Doc. 52 at 9].

[2] No party objects to the Magistrate Judge's findings that Plaintiff's retaliation claim (Count Two) should be deemed abandoned, that Defendant waived its right to assert a defense based on the "policymaking appointee" exemption, or that Defendant's arguments concerning the right-to-sue notice will not be considered.  [*See* Doc. 128 at 4, 16-18, 27].  Finding no clear error, the Court adopts those recommendations.  This order is therefore limited to the Magistrate Judge's recommendation that the Court grant Defendant's Motion for Summary Judgment on Plaintiff's pregnancy-related sex discrimination claim (Count One) because the "personal staff" exemption prevents Plaintiff from seeking a Title VII remedy.

[3] As the Magistrate Judge did, the Court views the evidence and all factual inferences in the light most favorable to Plaintiff, the nonmoving party.  *See Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970).

position or that salary, so she was instead hired as Deputy Chief of Staff at a lower salary of $120,282.  [Doc. 112-2 ¶ 6; Doc. 93 at 26–28].  To enable Plaintiff to get the $125,000 salary she requested and that had been offered in the Job Description for the Director position, Howard had to make Plaintiff's formal title in the Fulton County system "Deputy Chief of Staff."  [Doc. 93 at 27; Doc. 109-3 ¶ 5; Doc. 104-4, Ex. A-1].  As part of the process of hiring Plaintiff at the initial salary of $120,282, Howard signed an Official Oath in Support of Hiring Personal Staff, swearing that he had "reviewed the definition of 'personal staff' contained in the Fulton County Personnel Policies and Procedures" and that he intended to hire Plaintiff as Deputy Chief of Staff "to be a member of [his] personal staff."  [Doc. 104-4, Ex. A-4].

Plaintiff then began working for Defendant as Deputy Chief of Staff and Director of Policy & Programs beginning on or about on May 1, 2019.  [Doc. 111-2 ¶ 3].  According to the Job Descriptions for her position, Plaintiff oversaw "policy implementation and development, management and oversight of bureaus, strategic communications, and responsive constituent services."  [Doc. 104-4, Ex. A-1, Job Descriptions].  The Job Descriptions further provide that she was the principal writer of Criminal Justice and Crime Prevention policies and programs, and she developed, implemented, and administered the programs.  [*Id.*].  Plaintiff avers, however, that most of the programs she worked on, except for one or two, were created by Plaintiff's predecessor, and Plaintiff was tasked with merely running the programs

3

"efficiently and effectively." [Doc. 111-2 ¶ 6].  Plaintiff also does not recall writing any policies while she worked at the District Attorney's Office.  [*Id.*].  Plaintiff did collect criminal justice data at the direction of Howard, and she worked closely with Howard on a daily basis.  [Doc. 105 ¶ 8; Doc. 112-2 ¶ 8].

Plaintiff was third in the chain of command for the entire District Attorney's Office.  [Doc. 105 ¶ 3; Doc. 112-2 ¶ 3].  Plaintiff supervised more than thirty employees across more than seven departments at the District Attorney's Office. [Doc. 105 ¶ 7; Doc. 112-2 ¶ 7].  Moreover, at any given time up until the time that she notified Howard of her pregnancy, Plaintiff supervised fifteen to twenty different policies and programs implemented by the District Attorney's Office.  [Doc. 105 ¶ 11; Doc. 112-2 ¶ 11; Doc. 104-4 ¶ 6].  Howard set the agenda for the policies and programs that would be a focus of the District Attorney's Office, which Plaintiff oversaw.  [Doc. 105 ¶ 15; Doc. 112-2 ¶ 15].

Throughout most of the time that Plaintiff was employed by Defendant, Plaintiff met with dignitaries, community leaders, and members of the public who came into the office.  [Doc. 93 at 34–35, 39; Doc. 104-4 ¶ 5].  Howard was always present for these meetings.  [Doc. 111-2 ¶ 19].  Plaintiff represented Howard to the public more than any other member of Howard's personal staff, and Plaintiff was constantly involved with his work because the voters would judge him based on how

well Plaintiff implemented the Office's policies and projects. [Doc. 93 at 36–37, 39; Doc. 104-4 ¶¶ 5, 7].

In her position as Deputy Chief of Staff and Director of Policy and Programs, Plaintiff reported to Howard. [Doc. 93 at 62; Doc. 104-4 ¶ 4; Doc. 95 at 24]. Howard's Chief of Staff, Lynne Nelson, sometimes directed Younge to execute tasks or conveyed Howard's instructions to Younge, but Nelson was not Younge's supervisor. [Doc. 112-2 ¶ 7; Doc. 95 at 24; Doc. 94 at 39; Doc. 93 at 62]. Up until the time that Plaintiff notified Howard of her pregnancy, Plaintiff met with Howard every day. [Doc. 105 ¶ 13; Doc. 112-2 ¶ 13; Doc. 93 at 38].

Plaintiff's schedule was "pretty much the schedule that DA Paul Howard had," and Plaintiff was involved in "pretty much [everything]" that had to do with the District Attorney's Office. [Doc. 93 at 34–38]. If Howard "needed something done, [Plaintiff] would handle it." [*Id.* at 38]. Plaintiff testified that she discussed the progress of initiatives she was overseeing with Howard "[a]ll day every day." [*Id.* at 43]. Plaintiff had meetings with Howard "all the time," and she "was in and out of his office because [the] executive staff were . . . the essential folks [in the Office]." [*Id.* at 46–47]. Plaintiff testified that Howard was "very involved [with the policies and programs she oversaw] . . . He made it a point to be very involved in every single thing . . . ." [Doc. 105 ¶ 19; Doc. 112 ¶ 19]. Howard would even send Plaintiff work related messages on weekends. [Doc. 105 ¶ 19; Doc. 112 ¶ 19].

Up until the time that Plaintiff notified Howard of her pregnancy, Plaintiff did not need to make appointments to see Howard because she "was literally his go-to person for almost everything," and she was "one of the few on staff that was just able to walk into his office at any time." [Doc. 93 at 68]. According to Howard, Plaintiff was "a key member of [his] personal staff" and "a high-ranking part of [his] staff, because that is certainly what [he] considered her [to be]." [Doc. 95 at 110]. Before Plaintiff's pregnancy announcement, Plaintiff and Howard met frequently, she had "open door" access to his office, and he required Plaintiff to be available around the clock. [Doc. 11-2 ¶ 24; Doc. 123 ¶ 24].

Approximately two months after Plaintiff began working for the District Attorney's Office in May 2019, Howard fired Plaintiff from her position on July 15, 2019, after she informed Howard of her pregnancy on July 1, 2019. [Doc. 105 ¶ 38; Doc. 112-2 ¶ 38; Doc. 31 at 5]. From the time Plaintiff informed Howard of her pregnancy to the time of her termination, "Howard stopped meeting with [Plaintiff], excluded her from meetings, dismissed her when she tried to talk to him, and reassigned some of her work duties." [Doc. 128 at 24]. According to Howard, complaints from coworkers and instances of unprofessional behavior—rather than the pregnancy—led him to terminate Plaintiff, though there were no such records of misconduct in Plaintiff's personnel file. [*Id.* at 25-26].

Following her termination, Plaintiff filed this Title VII action. [Doc. 1]. After significant discovery and a partially successful motion to dismiss, Defendant moved for summary judgment, relying heavily on the argument that Plaintiff was a member of Howard's "personal staff" rather than a qualifying "employee" under Title VII.[4] [Doc. 104]. In the R&R, the Magistrate Judge concludes that Plaintiff is not an "employee" within the meaning of Title VII and that a Title VII remedy is thus not available in this case. [Doc. 128].

Plaintiff filed timely objections to the R&R. [Doc. 132].

## II.   LEGAL STANDARD

In reviewing the R&R, the Court "make[s] a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). After review, the Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id.* Here, Plaintiff filed objections to certain portions of the R&R [Doc. 128], so the Court reviews those parts of the R&R de novo.

## III.   DISCUSSION

The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as

---

[4] As this Order will address later, a member of a public officer's personal staff is exempt from Title VII's definition of "employee" and is therefore not eligible for relief under the Act. 42 U.S.C. § 2000e(f).

a matter of law." Fed. R. Civ. P. 56(a).  In evaluating a summary judgment motion, "[a]ll evidence and factual inferences are viewed in the light most favorable to the non-moving party, and all reasonable doubts about the facts are resolved in favor of the non-moving party." *Hardigree v. Lofton*, 992 F.3d 1216, 1223 (11th Cir. 2021).

### A.    Title VII's "Personal Staff" Exemption and the R&R's Conclusion

Title VII prohibits employers from discriminating against their employees based on race, color, religion, sex, or national origin.  42 U.S.C. § 2000e-2(a).  As amended by the Pregnancy Discrimination Act, "for all Title VII purposes, discrimination based on a woman's pregnancy is, on its face, discrimination because of sex."  *Newport News Shipbuilding and Dry Cock Co. v. EEOC*, 462 U.S. 669, 684 (1983).  Nevertheless, to have a cognizable claim under Title VII, an employer-employee relationship must exist.  Title VII defines the term "employee" as:

> an individual employed by an employer, except that the term 'employee' shall not include any person elected to public office in any State or political subdivision of any State by the qualified voters thereof, or any person chosen by such officer to be on such officer's personal staff, or an appointee on the policy making level or an immediate adviser with respect to the exercise of the constitutional or legal powers of the office.

42 U.S.C. § 2000e(f).  The statute thus exempts four categories of workers from the definition of "employee": (1) elected officers; (2) the individuals chosen by such an officer to be members of his or her "personal staff"; (3) such officer's appointees "on a policy-making level"; and (4) an immediate advisor with respect to the exercise of

the "constitutional or legal powers of the office." 42 U.S.C. § 2000e(f). Here, Defendant contends that Plaintiff was chosen by Howard, an elected official,[5] to be on his "personal staff."[6] The issue thus centers on whether Plaintiff is exempt from Title VII's protection as a member of Howard's "personal staff."

Though Title VII does not define the term "personal staff," the question of whether an individual should be considered an "employee" is "a question of federal, rather than of state, law; it is to be ascertained through consideration of the statutory language of the Act, its legislative history, existing federal case law, and the particular circumstances of the case at hand." *EEOC v. Reno*, 758 F.2d 581, 584 (11th Cir. 1985) (citing *Calderon v. Martin Cnty.*, 639 F.2d 271, 272–73 (5th Cir., Unit B, 1981)). However, "[s]tate law is relevant insofar as it describes the plaintiff's position, including [her] duties and the way [s]he is hired, supervised and fired." *Id.* (citing *Calderon*, 639 F.2d at 273). Courts are "properly guided by the [state] statute describing [the employment] relationship" in determining "to whom the Act's protections apply." *Id.* at 584–85. Such exemptions are to be "narrowly construed." *Id.* at 584; *see also Milliones v. Fulton Cnty. Gov't*, No. 1:12-CV-3321,

---

[5] The District Attorney for a judicial circuit is an elected position in Georgia. *See* O.C.G.A. § 15-18-3(1). There is thus no dispute that Howard was an elected official.

[6] Defendant also argued that the "policymaking appointee" exemption applied to Plaintiff [Doc. 104 at 15-17], but the Magistrate Judge determined that Defendant waived its right to assert a defense based on the "policymaking appointee" exemption [Doc. 128 at 16], and no party objected to that finding. As mentioned previously, the Court finds no clear error with this finding and thus adopts the R&R's conclusion on this point. Because the "policymaking appointee" defense was waived, the Court considers only the "personal staff" exemption.

2013 WL 2445206, at *4 (N.D. Ga. June 5, 2013) (noting Congress's intent that "the exception apply only to those individuals who are in highly intimate and sensitive positions of responsibility on the staff of the elected official") (quoting *Teneyuca v. Bexar Cnty.*, 767 F.2d 148, 152 (5th Cir. 1985)).

The term "personal staff" "embodies the general and traditional proposition that positions of confidentiality, policy-making, or acting and speaking on behalf of the chief are truly different from other kinds of employment." *Shahar v. Bowers,* 114 F.3d 1097, 1104 n.15 (11th Cir. 1997). In determining whether an individual qualifies as "personal staff," courts engage in a "highly factual" inquiry that emphasizes "the nature and circumstances of the employment relationship between the complaining individual and the elected official." *Milliones*, 2013 WL 2445206 at *4. "Although the exemptions are highly fact dependent, summary judgment may be appropriate when there is no genuine issue of material fact as to the applicability of the relevant factors." *Watts v. Bibb Cnty., Ga.*, No. 5:08-CV-413 (CAR), 2010 WL 3937397, at *8 (M.D. Ga. Sept. 30, 2010). In particular, courts focus on the following non-exhaustive list of factors when assessing the applicability of the personal staff exemption:

> (1) Whether the elected official has plenary powers of appointment and removal, (2) whether the person in the position at issue is personally accountable to only that elected official, (3) whether the person in the position at issue represents the elected official in the eyes of the public, (4) whether the elected official exercises a considerable amount of control over the position, (5) the level of the position within

the organization's chain of command, and (6) the actual intimacy of the working relationship between the elected official and the person filling the position.

*Laurie v. Ala. Ct. of Crim. App.*, 88 F. Supp. 2d. 1334, 1338 (M.D. Ala. 2000), *aff'd*, 256 F.3d 1266 (11th Cir. 2001) (citations and internal alterations omitted).

Noting that "the Eleventh Circuit has not addressed whether the exemptions to employee status under Title VII are affirmative defenses," the Magistrate Judge first determined the "personal staff" and "policymaking appointee" exemptions are affirmative defenses that defendants must plead under Rule 8(c).[7] [Doc. 128 at 5-7]. As the Magistrate Judge noted, Defendant makes no argument that it pled the exemptions as affirmative defenses. [*Id.* at 7]. During the hearing that the Magistrate Judge held on Defendant's Motion for Summary Judgment, the Magistrate Judge determined that Defendant did not put Plaintiff on notice of its intent to rely on the "personal staff" exemption until a hearing that this Court held on an unrelated issue on March 14, 2022. [*Id.* at 7-9]. This was approximately two months after discovery had closed, except for ongoing litigation regarding a second deposition that was to be taken of Howard. [*Id.*]. The Magistrate Judge concluded, however, that Defendant did not waive the "personal staff" defense because

---

[7] No party disputes that the exemptions are affirmative defenses. [*See* Doc. 122 at 2–15; Doc. 109 at 5-8].

discovery had focused on matters highly relevant to the "personal staff" exemption and thus Defendant's delay did not prejudice Plaintiff.[8]  [*Id.* at 9-16].

Concluding that the discovery the parties took was highly relevant to the factors that courts consider in determining whether the "personal staff" exemption applies, the Magistrate Judge noted that Plaintiff, Howard, and Howard's Chief of Staff, Lynne Nelson, "were questioned extensively [in their depositions] about (1) the circumstances of [Plaintiff]'s hiring and firing, including who made those employment decisions; (2) the reporting structure to which [Plaintiff] adhered; (3) the work that [Plaintiff] did for the District Attorney's Office, including out in the community and in meetings with dignitaries, community leaders, and members of the public; (4) the amount and nature of Howard's control over [Plaintiff]'s position and the work she performed; (5) the organizational hierarchy within the District Attorney's Office, including [Plaintiff]'s placement in that hierarchy; and (6) the nature of Howard's working relationship with [Plaintiff] and other members of his personal or executive staff."  [*Id.* at 11].  In addition to relying on the discovery's general focus as a basis for finding no prejudice suffered by Plaintiff, the Magistrate Judge found that Plaintiff's inability to point to additional discovery she would have

---

[8] In contrast, the Magistrate Judge found that Defendant waived its argument as to the "policymaking appointee" exemption because "there was not extensive discovery on the policymaking aspects of [Plaintiff]'s job functions and there is no indication that Defendant mentioned the "policymaking appointee" exemption during the telephone hearing with the district judge." [Doc. 128 at 16].

taken if the "personal staff" exemption had been raised earlier also demonstrated a lack of prejudice. [*Id.* at 12-15]. Because the Magistrate Judge did not find any prejudice caused by the belated notice of Defendant's intent to rely on the "personal staff" exemption, the Magistrate Judge concluded that the "personal staff" exemption is "properly before the Court and should be considered on the merits." [*Id.* at 16].

The Magistrate Judge went on to "easily find, largely based on [Plaintiff]'s own testimony, that she was a member of Howard's personal staff." [*Id.* at 31]. The Magistrate Judge thoroughly analyzed each of the six "personal staff" factors and determined that "five of the six factors weigh heavily in favor of the applicability of the exemption." [*Id.* at 31-44]. To reach that conclusion, the R&R relied on a number of facts, including deposition testimony suggesting that Mr. Howard was Plaintiff's only supervisor, evidence that Plaintiff represented Mr. Howard to the public and accompanied him in meetings, and indications that Mr. Howard constantly interacted with Plaintiff and oversaw all aspects of her work. [*Id.* at 34, 38, 41]. The Magistrate Judge also considered relevant the fact that Plaintiff was third in command at the office, was a key member of Howard's "executive staff," and had a close working relationship with and easy access to Howard. [*Id.* at 41-42]. Taken together, the Magistrate Judge found that these facts showed that Plaintiff was solely accountable to Mr. Howard, represented Mr. Howard in the eyes

of the public, occupied a position in which Mr. Howard exercised considerable control over, held a position high within the office's chain of command, and had an intimate working relationship with Mr. Howard.  [*Id.* at 43-44].

Thus, the Magistrate Judge concluded that Plaintiff was not an "employee" of Defendant within the meaning of Title VII based on the "personal staff" exemption, "and no reasonable jury could reach a different conclusion."  [*Id*. at 43-44].  The Magistrate Judge therefore recommended that "summary judgment be granted on [Plaintiff]'s pregnancy discrimination claim."  [*Id*. at 44].

### B. Plaintiff's Objections

Plaintiff raises twelve objections to the R&R, which Plaintiff organizes under two overarching objections: (1) "[t]he R&R erred by considering Defendant's unpled affirmative defense, which should have been considered waived," and (2) "[t]he R&R erred in its analysis of defendant's personal staff defense by repeatedly ignoring the summary judgment standard." [Doc. 132 at 5, 19].  The Court will now address those objections in turn.

### 1.   Objections Regarding the Unpled Affirmative Defense

The question of whether the R&R improperly allowed Defendant to raise the affirmative defense of the "personal staff" exemption at this stage of the litigation is at the heart of Plaintiff's first four objections.  Plaintiff's first objection contends that the R&R erred in granting Defendant a *de facto* "amendment" without a showing

of good cause. [Doc. 132 at 5]. As Plaintiff correctly points out, Defendant did not plead the "personal staff" affirmative defense in its Answer, nor did Defendant seek to amend its Answer to include this defense. [*Id.* at 5-7]. According to Plaintiff, because "Defendant did not plead the Personal Staff Exemption, the R&R's consideration of that defense is essentially granting Defendant a *de facto* "amendment" of its Answer to add that defense," which was improper because the R&R "never considered whether Defendant proved 'good cause' for allowing an untimely amendment." [*Id.* at 6]. Instead of timely amending its Answer, Defendant first expressed its intent to rely on the defense at a hearing eleven months after the Scheduling Order's deadline for amendments.[9] [*Id.* at 7-8]. "[E]ven if one were to liberally construe the announcement in a hearing as a backhanded motion to amend," Plaintiff argues that "Defendant has not demonstrated good cause for the amendment." [*Id.* at 8]. Plaintiff points out that "Defendant does not argue that it did not or could not have known about the information underlying the Personal Staff Exemption before the deadline to amend" and emphasizes that the "Personal Staff Exemption exclusively involves facts regarding the nature of Plaintiff's working relationship with Howard and of his authority over her," which is "all information that would have been within Defendant's knowledge from the beginning." [*Id.* at 9-

_____

[9] As mentioned previously, this telephone hearing occurred on March 14, 2022. [Doc. 128 at 7-9].

10].  Thus, Plaintiff contends, "[t]he R&R erred in failing to consider Defendant's clear lack of 'good cause.'"  [*Id.* at 10].  In conjunction with this "good cause" objection, Plaintiff lodges her second, third, and fourth objections: (2) "[t]he R&R erred in failing to even consider which of the conflicting lines of precedent should apply," (3) "[t]he R&R erred in adopting, without consideration, a rule that rewards dilatory behavior," and (4) "[t]he R&R erred in finding Plaintiff was not prejudiced by allowing defendant to assert an unpled defense months after discovery had closed."  [*Id.* at 10-19].

The Court disagrees with these objections.  To determine whether Defendant had waived the "personal staff" defense, the Magistrate Judge appropriately considered "whether Plaintiff ha[d] suffered any prejudice."  [Doc. 128 at 9-10].  The Magistrate Judge properly stated that "[w]hen the failure to raise an affirmative defense does not prejudice the plaintiff, it is not error for the trial court to hear evidence on the issue."  [*Id.* at 10 (quoting *Hassan v. U.S. Postal Serv.*, 842 F.2d 260, 263 (11th Cir. 1988) (internal quotation marks omitted))].  Plaintiff objects to the Magistrate Judge "asserting that 'the key question . . . is whether Plaintiff has suffered any prejudice'" because the cases applying the "good cause" standard "are just as much binding Eleventh Circuit precedent as the cases cited by the R&R," which applied the "prejudice" standard.  [Doc. 132 at 10].  Plaintiff points to three Eleventh Circuit cases that apply the "good cause" standard, though only one of them

(*Saewitz*) involves an affirmative defense.  *See Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1418–19 (11th Cir. 1998) (applying good cause standard to reject plaintiff's effort to amend complaint to add another defendant); *Pugh v. Kobelco Constr. Mach. Am., LLC*, 413 F. App'x 134, 135 (11th Cir. 2011) (applying good cause standard to reject plaintiff's effort to amend complaint to substitute party); *Saewitz v. Lexington Ins. Co.*, 133 F. App'x 695, 699–700 (11th Cir. 2005) (applying good cause standard to reject defendant's effort to amend answer and add affirmative defense).

However, *Sosa* is the only published decision cited by Plaintiff, and unpublished decisions are not binding authority.  *See McNamara v. Gov't Emps. Ins. Co.*, 30 F.4th 1055, 1060 (11th Cir. 2022) ("While our unpublished opinions may be cited as persuasive authority, they are not considered binding precedent.") (internal quotation marks and citation omitted).  Moreover, *Hassan* provides the earliest line of precedent and should be followed under the Eleventh Circuit's "earliest case" rule.  *See Walker v. Mortham,* 158 F.3d 1177, 1188–89 (11th Cir.1998) (ruling that "when circuit authority is in conflict, a panel should look to the line of authority containing the earliest case, because a decision of a prior panel cannot be overturned by a later panel").  Thus, the Magistrate Judge properly relied on *Hassan*, which makes no mention of "good cause" and held that a party who fails to raise an affirmative defense in its pleadings does not waive its right to later assert that defense when such delay "does not prejudice the plaintiff."  842 F.2d at 263 (11th Cir. 1988)

("[T]he liberal pleading rules established by the Federal Rules of Civil Procedure apply to the pleading of affirmative defenses," and "[w]e must avoid hypertechnicality in pleading requirements and focus, instead, on enforcing the actual purpose of the rule," which is "simply to guarantee that the opposing party has notice of any additional issue that may be raised at trial so that he or she is prepared to properly litigate it."). Even though the R&R did not discuss the "good cause" cases, no error occurred because the "prejudice" standard is the correct one to apply.[10] The Magistrate Judge expressed concern about "Defendant's failure to raise the employee exemptions earlier in the litigation" and noted that "by the time Defendant explicitly mentioned its intent to rely on the 'personal staff' exemption, discovery had closed approximately two months prior, except for ongoing litigation regarding a second deposition that was to be taken of Howard." [Doc. 128 at 7, 9]. After noting these concerns, the Magistrate Judge properly cited the 11th Circuit's rule that if a plaintiff receives notice of an affirmative defense by some means other than the pleadings, "the defendant's failure to comply with Rule 8(c) does not cause the plaintiff any prejudice." *Hassan*, 842 F.2d at 263.

Applying this rule, the Magistrate Judge concluded that "Defendant's failure to raise the 'personal staff' exemption earlier has not prejudiced [Plaintiff]" and

---

[10] The Court also notes that no party mentioned "good cause" in any of the summary judgment briefing. [*See* Docs. 104, 109, 122].

"should [thus] be considered on the merits." [Doc. 128 at 10, 16]. Plaintiff faults the Magistrate Judge for "even consider[ing] Defendant's unpled Personal Staff defense." [Doc. 132 at 19]. Plaintiff contends that the "accidental overlap" in "some of the information obtained in discovery" with information relevant to the "personal staff" factors "is not enough to show there was no prejudice because Plaintiff never had the opportunity to conduct discovery intentionally directed toward learning about this defense." [*Id.* at 12-13]. The Court disagrees. As the Magistrate Judge found, two points show that Plaintiff has not suffered any prejudice from Defendant's belated assertion of the "personal staff" exemption: (1) "[t]he breadth of relevant discovery concerning the 'personal staff' exemption" and (2) Plaintiff's counsel's inability to identify any specific discovery or evidence regarding the second and third factors that he does not already have and that he would have sought but did not.[11] [Doc. 128 at 11, 12-15]. The Court has reviewed the depositions of Plaintiff, Howard, and Howard's chief of staff, Lynne Nelson, and the deponents' testimony, particularly Plaintiff's, largely focused on Plaintiff's job duties and facts related to Plaintiff's work relationship with Howard. [*See* Docs. 93, 94, 95]. The Court agrees with the Magistrate Judge that these deponents "were questioned

---

[11] The second and third factors are as follows: "(2) whether the person in the position at issue is personally accountable to only that elected official, (3) whether the person in the position at issue represents the elected official in the eyes of the public." *Laurie*, 88 F. Supp. 2d. at 1338 (M.D. Ala. 2000), *aff'd*, 256 F.3d 1266 (11th Cir. 2001) (citations and internal alterations omitted).

extensively about (1) the circumstances of [Plaintiff]'s hiring and firing, including who made those employment decisions; (2) the reporting structure to which [Plaintiff] adhered; (3) the work that [Plaintiff] did for the District Attorney's Office, including out in the community and in meetings with dignitaries, community leaders, and members of the public; (4) the amount and nature of Howard's control over [Plaintiff]'s position and the work she performed; (5) the organizational hierarchy within the District Attorney's Office, including [Plaintiff]'s placement in that hierarchy; and (6) the nature of Howard's working relationship with [Plaintiff] and other members of his personal or executive staff." [Doc. 128 at 11]. Thus, the Court cannot say that Defendant's argument "unfairly surprised or prejudiced" Plaintiff.[12] *See Grant v. Preferred Rsch., Inc.*, 885 F.2d 795, 797-98 (11th Cir. 1989) (holding that the district court did not err by addressing the merits of the defendant's statute of limitations defense, even though defendant failed to plead it as required by Rule

---

[12] The Court also notes that Plaintiff never requested an opportunity to seek additional discovery. As the Magistrate Judge pointed out, Defendant put Plaintiff on notice of its intent to rely on the "personal staff" exemption in a telephone hearing held by this Court on March 14, 2022. The Court agrees with the Magistrate Judge that, "while the discovery period had technically closed" by March 14, 2022, "summary judgment motions had not yet been filed, given the outstanding second deposition of Howard," and "there was [thus] an opportunity for [Plaintiff] to seek leave to take additional discovery on the 'personal staff' exemption before Defendant filed a dispositive motion." [Doc. 128 at 9]. Plaintiff's failure to seek additional discovery after March 14, 2022, further convinces the Court that Plaintiff was not prejudiced by Defendant's belated assertion of the "personal staff" defense. Additionally, Plaintiff testified that she was told the day of her termination that she could not bring a discrimination claim due to her being a member of Howard's executive staff. [*See* Doc. 93 at 131 ("[The representative from Fulton County] let me know that I could not file a grievance with them because I was executive staff.")]. This, too, should have alerted Plaintiff to take discovery on this matter if she so wished.

8(c), where the defendant raised the defense in a motion for summary judgment approximately one month before trial and thus the "plaintiff was fully aware that [the defendant] intended to rely on a statute of limitations defense").

After conducting a de novo review, the Court agrees with the Magistrate Judge that Defendant did not waive the "personal staff" defense because discovery focused on matters highly relevant to the "personal staff" exemption, and therefore Defendant's delay in raising the defense did not prejudice Plaintiff. The Court therefore overrules Plaintiff's objections to the contrary.

### 2.    Objections Regarding the Summary Judgment Standard

Plaintiff's next eight objections fall under Plaintiff's assertion that the evidence regarding the "personal staff" exemption is "mixed, and not so one-sided as to justify granting summary judgment and taking this ["personal staff" exemption] issue away from the jury." [Doc. 132 at 19-30]. Despite these objections, the Court, albeit reluctantly, agrees with the Magistrate Judge: "[c]onstruing the facts in the light most favorable to [Plaintiff], I easily find, largely based on [Plaintiff]'s own testimony, that she was a member of Howard's personal staff."[13] [Doc. 128 at 31].

---

[13] The Court agrees with another conclusion of the Magistrate Judge's: "But for my opinion that the 'personal staff' exemption precludes [Plaintiff] from obtaining Title VII relief, I agree that she has presented a convincing mosaic of circumstantial evidence creating triable issues of fact as to Howard's discriminatory intent [regarding Plaintiff's pregnancy discrimination claim]." [Doc. 128 at 46]. Notwithstanding the Court's misgivings about the unfairness of Title VII's "personal staff" exemption, particularly in a case where the plaintiff's pregnancy discrimination claim would otherwise survive summary judgment, the Court is constrained by the law to find that Plaintiff, as

The Magistrate Judge analyzed the applicability of the "personal staff" exemption factor-by-factor and concluded that "[f]ive out of the six factors decisively weigh in favor of applying the exemption, including the most important factor (i.e., intimacy of the working relationship)."[14]  [*Id.* at 43].  Plaintiff objects to this determination, arguing that "2 of the factors weigh against applying the Personal Staff Exemption, 2 others weigh in favor applying the Exemption, and 2 others are neutral."  [Doc. 132 at 22].  "Given this mixed record," Plaintiff contends that summary judgment is inappropriate.  [*Id.*].  The Court now addresses Plaintiff's specific objections.

Plaintiff first objects to the Magistrate Judge's analysis of the sixth factor— the actual intimacy of the working relationship between the elected official and the person filling the position at issue.  Alleging that "this factor is at most, neutral, if not weighing against application of the Exemption," Plaintiff objects to "the R&R wrongly dismiss[ing] the fact that the intimacy of [Plaintiff]'s working relationship

---

a member of Howard's personal staff, is excluded from the anti-discrimination protections of Title VII.

[14] For ease of reference, the Court again lists the "personal staff" exemption factors:

> (1) Whether the elected official has plenary powers of appointment and removal, (2) whether the person in the position at issue is personally accountable to only that elected official, (3) whether the person in the position at issue represents the elected official in the eyes of the public, (4) whether the elected official exercises a considerable amount of control over the position, (5) the level of the position within the organization's chain of command, and (6) the actual intimacy of the working relationship between the elected official and the person filling the position.

*Laurie*, 88 F. Supp. 2d. at 1338 (M.D. Ala. 2000), *aff'd*, 256 F.3d 1266 (11th Cir. 2001) (citations and internal alterations omitted).

with Howard radically changed after she told him she was pregnant."[15]  [*Id.* at 23].

Plaintiff points to a Fourth Circuit case to argue that the Magistrate Judge's

acknowledgement that Plaintiff "had 'easy access' to Howard and a 'close day-to-

day working relationship' with Howard for the majority of the time that she was

employed by Defendant and working on Howard's staff" was misplaced.  [*Id.* at 23;

Doc. 128 at 43].  Relying on *Cromer v. Brown*, 88 F.3d 1315 (4th Cir. 1996), Plaintiff

contends that the "radical change in the working relationship [between Plaintiff and

Howard] constitutes a *de facto* demotion."  [Doc. 132 at 24].  Plaintiff emphasizes

that she "no longer worked closely with the elected official (Howard) by the time

she was terminated," so "[e]ven if she had been 'personal staff' before, now she

wasn't."  [*Id.*].  Plaintiff thus contends that the R&R's "dismissal" of this fact "is

evidence of its failure to view the evidence in the light most favorable to the

nonmovant."  [*Id.*].

This argument fails.  Even as persuasive authority, *Cromer* is inapplicable

here.  In *Cromer*, the court held that an individual who served as both captain and

lieutenant in a sheriff's office was part of the sheriff's personal staff when serving as

captain, but not when serving as lieutenant.  The individual in *Cromer* changed job

titles and roles.  Here, Plaintiff served as Deputy Chief of Staff and Director of Policy

and Programs for the entirety of her employment with Howard.  [*See* Doc. 112-2 ¶

---

[15] Plaintiff labels this as "Objection #5."  [Doc. 132 at 23].

31].  Neither Plaintiff's job title nor role changed to a lower rank, like that of captain to a lieutenant.  Though there is evidence that Howard began treating Plaintiff differently after she announced that she was pregnant, such as excluding her from meetings, reassigning some of her duties, and limiting the usual access that she had to Howard, this does not change the fact that Plaintiff remained a member of Howard's personal staff.  [*See* Doc. 112-2 ¶¶ 23, 24, 28, 29, 30; Doc. 93 at 83–84, 87–88, 98–99, 102].  Plaintiff's argument that she seemingly lost the trust of Howard prior to her termination would, if accepted, "eliminate the exclusion to any member of any elected official's personal staff inasmuch as a loss of trust and intimacy would be the forerunner of most terminations." *Townsend v. Shook*, 323 F. App'x 245, 250 (4th Cir. 2009) (internal quotation marks and citations omitted).  Plaintiff's interpretation would give the exclusion developed by Congress no meaning, and this Court cannot adopt such an interpretation.

Plaintiff next objects to the R&R's "fail[ure] to address Howard's admission that he maintained an open door and allowed <u>all</u> employees—not just [Plaintiff]—to come to his office to talk to him about issues" because it "constitutes a failure to view the evidence in the light most favorable to the nonmovant.[16]"  [Doc. 132 at 24-25].  Though Plaintiff contends that Plaintiff's "open door access" to Howard did not "really distinguish her from most employees in the DA's office," the Magistrate

---

[16] Plaintiff labels this as "Objection #6."  [Doc. 132 at 25].

Judge considered the "open door access" as just one factor in her analysis of the intimacy of the working relationship between Howard and Plaintiff. [*Id.* at 25; Doc. 128 at 42]. Among other points from Plaintiff's deposition and declaration testimony, the Magistrate Judge also took into account Plaintiff's testimony that she and Howard "worked closely together," communicated about work on the weekends, and discussed work issues "whenever his door was open, without an appointment." [Doc. 128 at 42-43 (quoting Plaintiff's testimony)]. Plaintiff's cherry-picking of one sentence from Howard's testimony that "all of the [236 employees in the DA's office]" were "free to come and talk to [him] in [his office]" does not negate the fact that Plaintiff and Howard had a particularly close working relationship in which Plaintiff's work schedule was "pretty much the [same as the] schedule DA Paul Howard had." [*Id.*]. The Magistrate Judge carefully viewed the evidence in the light most favorable to Plaintiff, as the non-movant, by focusing on Plaintiff's own testimony when analyzing this "intimacy-of-working-relationship" factor. [*See id.*]. Moreover, the Magistrate Judge did not ignore Howard's testimony regarding his open-door policy. Rather, the Magistrate Judge specifically noted that Howard testified that, although all employees had access to his office, "somebody like [Plaintiff] wouldn't even have to knock" before coming in his office. [*Id.* at 43 (quoting Doc. 95 at 116)]. The Court thus finds that the sixth factor weighs in favor of finding that the "personal staff" exemption applies.

Plaintiff's next objection involves the Magistrate Judge's analysis of the first factor—whether the elected official has plenary powers of appointment and removal.[17]  [Doc. 132 at 25-27].  Plaintiff objects to the Magistrate Judge's finding that this factor weighs neither in favor nor against applying the "personal staff" exemption in this case.  [*Id.*].  Plaintiff specifically argues that because "Howard was limited in his authority to hire by regulations and the County's approval, then he did not have 'plenary' powers of appointment," and thus this factor weighs against applying the exemption.  [*Id.*].  However, the Magistrate Judge took note of the Georgia statutory law providing that the District Attorney's employment of workers is "as may be provided for by local law or as may be authorized by the governing authority of the county or counties comprising the judicial circuit."  [Doc. 128 at 32 (quoting O.C.G.A. § 15-18-20(a))].  The Magistrate Judge also acknowledged that Plaintiff's job offer stated that it was "contingent upon the approval of the Fulton County Personnel Department and Finance Department."  [*Id.* (quoting Doc. 104-4, Ex. A-3)].  In contrast, the Magistrate Judge also pointed out that district attorneys have "wide latitude to appoint and remove District Attorney's Office employees." [*Id.* (citing *Peppers v. Cobb Cnty., Ga.*, 835 F. 3d 1289, 199 (11th Cir. 2016) ("Georgia statutory code expressly empowers the District Attorney to hire and discharge personnel and to 'define the duties and fix the title of any attorney or other

---

[17] Plaintiff labels this as "Objection #7."  [Doc. 132 at 25].

employee of the district attorney's office.'").  These conflicting facts persuaded the Magistrate Judge to conclude that Howard had complete and absolute power to remove employees but not plenary power to appoint individuals for employment. The Court agrees with this conclusion and finds that this factor plays a neutral role in the "personal staff" exemption analysis.

Plaintiff's eighth and ninth objections take issue with the Magistrate Judge's analysis of the second factor—whether the person in the position at issue is personally accountable to only that elected official.  [Doc. 132 at 26-27].  Plaintiff contends that this factor does not "weigh heavily" in favor of applying the "personal staff exemption," as the Magistrate Judge found, and is instead "neutral, at most." [*Id.* at 26].  In particular, Plaintiff asserts that "the affirmative evidence that the R&R cites to show [Plaintiff] was personally accountable only to Howard is weak."[18] [*Id.*].  Plaintiff critiques the R&R for "cit[ing] a bunch of evidence regarding how closely [Plaintiff] and Howard (initially) worked together" because this "just shows they worked together" rather than showing Plaintiff "was accountable only to Howard."  [*Id.*].  Plaintiff also challenges the R&R's reliance on the Official Oath in Support of Hiring Personal Staff signed by Howard because "given the evidence of Howard's personal dishonesty," a jury could "disbelieve anything he says."  [*Id.* at 26-27].  Relatedly, Plaintiff argues that the R&R "wrongly dismisse[d] evidence

---

[18] Plaintiff labels this as "Objection #8."  [Doc. 132 at 26].

that other officials—specifically Chief of Staff Nelson—also directed [Plaintiff]'s work at times."[19]  [*Id.* at 27].

The Court disagrees with these objections as well.  To be sure, the Magistrate Judge heavily cited Plaintiff's testimony regarding her close working relationship with Howard.  [*See* Doc. 128 at 34].  But the Magistrate Judge also relied on Plaintiff's consistent testimony that Howard was her only supervisor, as well as Nelson's testimony that Howard was Plaintiff's "immediate supervisor."  [*See id.* (citing Doc. 93. at 62, 124, 133; Doc. 94 at 39)].  The Court also notes that the nature of Plaintiff's position, as Deputy Chief of Staff and Director of Policy and Programs for the District Attorney, makes her accountable to Howard, as the District Attorney. *See* O.C.G.A. § 15-18-20(a) ("The district attorney shall define the duties and fix the title of any attorney or *other employee* of the district attorney's office.") (emphasis added).  Even wholly discounting Howard's testimony on this point, Plaintiff herself testified that Howard directed Plaintiff to come into the office before her official start date to "observ[e] off the books," assigned Plaintiff work, and set the expectations for Plaintiff to have "constant availability around the clock."  [Doc. 112-2 ¶ 30; Doc. 93 at 30].  Even though Plaintiff occasionally took direction from Chief of Staff Nelson regarding discrete tasks, as the Magistrate Judge noted, the Court finds that Plaintiff's work with Nelson does not amount to Plaintiff being

---

[19] Plaintiff labels this as "Objection #9."  [Doc. 132 at 27].

"accountable" to Nelson. [Doc. 128 at 37]. Rather, Plaintiff's and Nelson's interactions appear more akin to everyday workplace collaboration, where one colleague will direct another for the sake of facilitating an efficient and productive workflow, even though that colleague does not actually have the power to control the other colleague's work. The Court also agrees that Plaintiff's "failure to come forward with any [] specific examples [in which Plaintiff found herself directly accountable to Nelson] further demonstrates that she was accountable only to Howard." [Doc. 128 at 37]. In sum, the Court finds that Plaintiff was clearly "personally accountable" only to Howard.

Plaintiff's last three objections concern the Magistrate Judge's analysis of the third factor—whether the person in the position at issue represents the elected official in the eyes of the public. [Doc. 132 at 26-27]. Arguing that this factor weighs against the application of the "personal staff" exemption, Plaintiff again takes issue with the R&R's reliance on Howard's testimony because a "reasonable jury could disbelieve anything Paul Howard says based on his admitted dishonesty."[20] [Doc. 132 at 27]. Plaintiff next contends that the Magistrate Judge failed to follow the summary judgment standard by finding that "[i]t was certainly conceivable that Howard could have been present at a meeting and the public could

---

[20] Plaintiff labels this as "Objection #10." [Doc. 132 at 27]. Plaintiff points to Mr. Howard's invocation of his Fifth Amendment rights in a deposition as evidence that he dishonestly "used donations from the City of Atlanta to 'charities' he owned to pad his salary." [*Id.* at 25].

have viewed [Plaintiff] as a representative of Howard at that meeting, too."[21] Plaintiff emphasizes that "the point isn't what's conceivable;" rather, "[t]he point, at summary judgment is what the evidence shows when viewed in the light most favorable to the non-moving party." [Doc. 132 at 28]. Last, Plaintiff again objects to the R&R's "failure to view the evidence in the [proper] light" by not considering the "*de facto* demotion" Plaintiff experienced after communicating her pregnancy to Howard.[22]

Reviewing the evidence in the light most favorable to Plaintiff, no genuine issue of material fact precludes a finding that this factor weighs in favor of applying the "personal staff" exemption. As to Plaintiff's objection that a "jury could disbelieve anything Howard says" and that his testimony should thus be disregarded, "[a]t summary judgment it is improper for the court to consider the credibility of any witness." *Lane v. Celotex Corp.,* 782 F.2d 1526, 1528 (11th Cir.1986). The Court can neither credit nor discredit Howard at this stage. But, even if the Court were to discount Howard's testimony on this point, the nature of Plaintiff's position, along with her own testimony, persuades the Court that Plaintiff unquestionably represented Howard in the eyes of the public.

---

[21] Plaintiff labels this as "Objection #11." [Doc. 132 at 28].
[22] Plaintiff labels this as "Objection #12." [Doc. 132 at 29].

Plaintiff testified that "[a]ny dignitaries or anybody—any visitors that came to the office and had meetings with the DA, [Plaintiff] was in. Sometimes that was in addition to the chief of staff and sometimes that was without her." [Doc. 93 at 34]. Plaintiff also stated that, as part of her work supervising various projects in her role as Deputy Chief of Staff and Director of Policy and Programs, she was "in contact with a lot of persons in the community on behalf of the DA's Office." [*Id.*]. As the Magistrate Judge noted, Plaintiff's role as Deputy Chief of Staff and Director of Policy and Programs is one that "embodies the general and traditional proposition that positions of confidentiality, policy-making or acting and speaking before others on behalf of [the DA] are truly different from other kinds of employment." *Shahar v. Bowers*, 114 F.3d 1097, 1104 (11th Cir. 1997) (quoting *Wall v. Coleman,* 393 F.Supp. 826, 831 (S.D.Ga.1975)) (internal quotation marks omitted). Plaintiff contends that she never ran any of the meetings and that whenever she met with members of the public, Howard was also present. [*See* Doc. 93 at 34, 35, 36-37]. However, this does not change the fact that Plaintiff, due to her position, represented Howard at all times, regardless of whether Howard was present or not. *See Shahar*, 114 F.3d at 1104 (quoting *Wall,* 393 F.Supp. at 831) ("As a matter of common knowledge and experience we know that a district attorney gets public credit for the good job done and impression made by his assistants and gets public criticism for the poor performance or impression made by his assistants.") (internal brackets

omitted).  Finally, the Court overrules Plaintiff's twelfth objection for the same reason explained above: Plaintiff's argument that she experienced a "*de facto* demotion*" after communicating her pregnancy to Howard would give the exclusion developed by Congress no meaning, and the Court reiterates that it cannot adopt such an interpretation.

After conducting a de novo review of the above factors, the Court agrees with the Magistrate Judge that no genuine dispute of material fact exists as to whether Plaintiff was a part of Howard's "personal staff."  As explained above, five of the six factors decisively weigh in favor of applying the "personal staff" exemption in this case.[23]  Plaintiff's Title VII claim is thus precluded as a matter of law by the "personal staff" exclusion contained in the statute, and the Court therefore overrules Plaintiff's objections to the contrary.  Accordingly, the Court will grant Defendant's Motion for Summary Judgment.

## IV.  CONCLUSION

Accordingly, Defendant's Motion for Summary Judgment [Doc. 104] is **GRANTED**.

---

[23] The Court notes that Plaintiff concedes the fourth and fifth factors and does not address either directly.  [*See* Doc. 132 at 21-32].

**IT IS SO ORDERED**, this 29th day of March, 2023.


WILLIAM M. RAY, II
UNITED STATES DISTRICT JUDGE