The following is the PDF of an official transcript. Official transcripts may be filed in CM/ECF only by the official Court Reporter and will be restricted in CM/ECF for a period of 90 days.  You may cite to a portion of the attached transcript by the docket entry number, referencing page and line number, only after the Court Reporter has filed the official transcript; however, you are prohibited from attaching a full or partial transcript to any document filed with the Court.

United States District Court

1

1    UNITED STATES DISTRICT COURT
     NORTHERN DISTRICT OF GEORGIA
2              ATLANTA DIVISION

3
     DR. JASMINE YOUNGE,                )
4                                       )
             Plaintiff,                 )
5                                       ) Docket Number
                                        )   1:20-CV-00684-WMR-CMS
6                  V.                   )
                                        )
7    FULTON JUDICIAL CIRCUIT DISTRICT   )
     ATTORNEY'S OFFICE, GEORGIA,        ) **Proceedings via Zoom**
8                                       )
             Defendant.                 )
9

10

11            Transcript of Motion Hearing
       before the Honorable Catherine M. Salinas
12           United States Magistrate Judge
               December 9, 2022, 2:28 p.m.
13

14   A P P E A R A N C E S:

15   On Behalf of the Plaintiff:     Matthew C. Billips

16   On Behalf of the Defendant:     Noah Green

17

18

19

20        Proceedings recorded by Zoom, transcribed by Geraldine
     S. Glover, and produced by computer.
21   _____

22

23
                    Geraldine S. Glover, RPR
24              Federal Official Court Reporter
              75 Ted Turner Drive, SW, Suite 1714
25              Atlanta, Georgia   30303-3309

                  United States District Court

PROCEEDINGS

1

2          THE COURT:  This is case Number 1:20-CV-684.  It's

3    Dr. Jasmine Younge v Fulton Judicial Circuit District

4    Attorney's Office Georgia.  And we're here to discuss the

5    motion for summary judgment that the defendant filed and the

6    plaintiff's response.

7          And so I appreciate you guys coming.

8          And so I have some questions pretty much as about one

9    issue.  I'd like to talk about that.  When we're done with

10   that, if you guys want to make any other argument, you're

11   welcome to tell me what you want.  And maybe our conversation

12   might take us into other places.  But at the end I'll

13   definitely give you guys a chance to say anything else that

14   you want to say, talk about.

15         So it appears to me that this is a clear case where

16   the exemption for -- hang on one second.

17                        **(brief pause)**

18         THE COURT:  -- where the exemption for the personal

19   staff would apply.  I agree with the defendant that it just

20   seems like it was almost written for this plaintiff.  But, of

21   course, I'm concerned because the personal staff exemption

22   defense wasn't raised.  And so I want to talk a little bit

23   about what everybody knew and when you knew.

24         So I'd like to start with plaintiff's counsel and

25   just, you know, ask you -- I mean, you knew during discovery

1  that the defendant was going to raise -- raise this issue.  I

2  mean, it was in his discovery responses multiple times.  I

3  mean, the statement that Paul Howard signed said it.  I mean,

4  the facts screamed it.

5          I mean, so were you actually surprised when you got

6  the motion for summary judgment?

7          MR. BILLIPS:  Not when we got the motion for summary

8  judgment.  But when we had the hearing in front of Judge Ray

9  about the deposition of Mr. Howard, that was the first time

10  that the question of raising this affirmative defense was --

11          THE COURT:  And how did that come up?  I haven't seen

12  the transcript.

13          MR. BILLIPS:  Judge Ray questioned whether summary

14  judgment was available given the underlying facts.  And

15  that -- it was at that point that defendant -- that Mr. Green

16  said that the -- the defendant intended to raise the personal

17  staff exemption.

18          Your Honor, the fact that there are references to the

19  plaintiff as being a member of his personal staff, "personal

20  staff" isn't defined in Title VII.  And individuals can be

21  a -- considered a member of someone's personal staff without

22  qualifying for a personal staff exemption.

23          The defense was not raised in the answer.  It was not

24  preserved in the preliminary planning report and discovery

25  order, which the Eleventh Circuit has said is sufficient to

United States District Court

1   waive -- as a matter of fact, it was a waiver of a jury trial

2   because of a reference that the issues presented to the Court

3   included -- the Eleventh Circuit held that to the Court was

4   sufficient to constitute a waiver of the right to jury trial.

5          That's in **Haynes V W.C. Caye & Co.**, 52 F.3d 928.  It

6   was also -- as I said before, it was not raised in the answer.

7   There is no issue as to it that is preserved in the -- either

8   in the initial disclosures or in the preliminary planning

9   report.  And we considered it to be waived.  We did not -- we

10  were not aware that this was going to be raised by the

11  defendant until that conference, when the only thing left was

12  to redepose Mr. Howard on the question of that personal staff

13  exemption.

14         THE COURT:  Right.  I mean --

15         MR. BILLIPS:  On the point of -- not on that, on --

16         THE COURT:  Right, on his credibility.

17         MR. BILLIPS:  Right.

18         THE COURT:  So at that point discovery was

19  essentially closed; is that right?

20         MR. BILLIPS:  Yes, Your Honor.

21         THE COURT:  The only thing left to do was just fix

22  that -- finish that deposition?

23         MR. BILLIPS:  Yes.

24         Your Honor, there are a couple of additional factual

25  questions that were not developed during discovery, such as --

1          THE COURT:  Tell me what that is.  I mean, you

2     mentioned them briefly in your response, but I'd like to know

3     what you would have done if you had known.  And honestly, I

4     just wonder how anyone couldn't have known.  But apparently,

5     the defendant didn't know because I know the defendant would

6     have raised it in their motion to dismiss along with all the

7     other stuff that they raised.  The defendant would have spoken

8     differently, I think, during questioning of the witness if

9     this was something they had thought about.  So obviously some

10    people didn't think about it right away.

11         But it seems pretty -- it seems pretty clear that

12    this woman falls into this exception to -- or the -- you know,

13    I don't know if it's an exception to the rule or however you

14    put it, but it's designed for her.

15         MR. BILLIPS:  It is actually no longer a complete

16    exemption.  Under 42 U.S.C. 2000e-16, Congress amended Title

17    VII to provide protection for individuals who were previously

18    entirely exempt.  And so this really is not only an issue

19    relating to whether this affirmative defense was pled, but

20    also an exhaustion of administrative remedies issue; because

21    the EEOC is supposed to treat those types of cases differently

22    and didn't do so in this case.

23         And so it's -- and the defendant -- on the other

24    issue they raised, the defendant didn't specifically

25    articulate the basis for any failure to meet a condition

                    United States District Court

1  precedent or to exhaust administrative remedies.  And in the

2  context of the EEOC's handling the charge and filing the

3  charge and notice of right to sue, all of those things are

4  conditions precedent.

5          Rule 9C of the Federal Rules of Civil Procedure

6  requires that a denial of the completion of a condition

7  precedent has to be alleged with specificity.

8          THE COURT:  Are we talking about the EEOC issue now?

9          MR. BILLIPS:  Yes, Your Honor.

10          THE COURT:  I want to focus on -- honestly, the

11  defendant didn't raise that issue in the initial brief when

12  the summary judgment was filed.  It wasn't until after we

13  struck the motion and had them refile it to comply with the

14  rules that they added it in.  I'm not inclined to consider

15  that issue.  Mr. Green can speak to that if he wants to.

16          I'm much more interested in -- to me the fundamental

17  problem here is that we have a person who the law is designed

18  to exclude from coverage and that I agree it's a -- to me it's

19  a slam dunk that it applies to her or doesn't apply to her,

20  however you want to say it.  But we have this waiver issue.

21          And so the question is:  You know, were you on notice

22  that this was a problem?

23          I mean, y'all took this case -- you know, honestly it

24  seems to me like shouldn't have made it through intake.  It's

25  that obvious.  But at the same time, I looked through the

                    United States District Court

discovery responses, and I don't see the word, you know, "personal staff exemption, personal staff exclusion".  I don't see it anywhere.  It wasn't in any of the previous -- in the motion.  Nobody talked to me about it.  So, you know, it looks to me like the defendant didn't think about it either.

So anyway, I'm just trying to figure out if you were on notice of it, and I guess if you say you weren't on notice, what is your prejudice.  So I would like for you to detail to me what evidence you would have explored.  And, frankly, I'm going to consider reopening discovery and letting you do it, rather than let the case go through.  I'm just trying to figure out what the right thing to do here is.

MR. BILLIPS:  Yes, Your Honor.

THE COURT:  You know, if you actually have a real defense to her not being -- she actually isn't personal staff, so the exclusion doesn't apply to her, you know, I'd be interested in that.

MR. BILLIPS:  There are a couple issues on that, Your Honor.

THE COURT:  Okay.

MR. BILLIPS:  The personal staff exemption requires that the individual -- one of the aspects of the test, that the individual be subject to the sole supervision of the elected official.

Ms. Younge was hired as deputy chief of staff.  And

1  as she testified, she reported to the chief of staff.  She

2  also reported to Mr. Howard.  But the fact that she reports to

3  the deputy chief of staff [sic] takes her out of the sole

4  reporting relationship with --

5          THE COURT:  So where would you get -- I mean, that's

6  information that your client has.

7          MR. BILLIPS:  Which she's testified to.

8          THE COURT:  Right.  So what did you not get?  Because

9  you asked the chief of staff, and she said she doesn't report

10 to me.  And you asked Mr. Howard and he said she reports to

11 me.  So you ask your client and she can say, well, I actually

12 talked to both of them.  And I'm going to rule that that does

13 not -- you don't win on that.  So what else would you try to

14 do?

15         MR. BILLIPS:  The other issue is, Your Honor, there

16 are a couple of statutes that defendant has cited.  And one is

17 15-18-19 and the other is 15-18-20.1.  However, 50-18-20 is

18 the statute that addresses this more specifically.  Because

19 she was not a state paid employee.  She was funded through the

20 county.  And the District Attorney does not have plenary

21 appointment authority for individuals in that code section,

22 for employees in that code section.  And for that reason, she

23 would not fall within the personal staff exemption.  As a

24 matter of fact --

25         THE COURT:  So what -- that sounds like a legal
                    United States District Court

1   argument.  So what discovery would you have taken if you -- I
2   mean, how are you prejudiced by not knowing -- I mean, you
3   knew when you got the motion for summary judgment that they
4   were making this argument.  So you can make whatever legal
5   arguments you want.  You're not prejudiced in that way.
6           What discovery would you have taken if you had known
7   that this was an issue on this point?
8           MR. BILLIPS:  We would have deposed Fulton County and
9   inquired of Fulton County as an entity.
10          THE COURT:  And what would you have asked them?
11          MR. BILLIPS:  We would have asked them why she was --
12  what is their authority for rejecting his initial appointment
13  of her as a director?  What was Fulton County's authority to
14  reject his appointment of individuals under Section 15-18-20?
15  You know, what are the rules that apply here?  Is she covered
16  under Fulton County's civil service system?  I realize she's
17  not under state, but she's also not a state paid employee.
18  There are a number of issues we would have gone into with
19  Fulton County about that.
20          The other question, Your Honor -- and this is an
21  exhaustion condition precedent issue.  But it's limited to the
22  personal staff exemption question.  Under 2000e-16, there are
23  different provisions for how to -- the EEOC should handle an
24  individual who was previously entirely exempt.  They are no
25  longer entirely exempt.  But the EEOC is supposed to issue an
                    United States District Court

1  order about, you know, making findings on the underlying

2  discrimination claims, which can then be enforced through the

3  courts.  So again, this would be an issue of exhaustion and

4  whether it was properly exhausted through EEOC.

5       THE COURT:  I've never had a plaintiff try to tell me

6  that they want to argue about their claim not being properly

7  exhausted, but there's a first for everything.

8       I mean, would you like to stay the case so that you

9  can get the EEOC to do their job and send it to the AG?  I

10  mean, that doesn't sound like a discovery -- something that

11  you would have done in discovery.  This sounds like a legal

12  argument that you could make today.

13       MR. BILLIPS:  Yes, Your Honor.  We could make that

14  argument today.  However, because it's an issue of exhaustion

15  and of compliance with conditions precedent, it's an issue

16  that had to be pled by the defendant with specificity in the

17  answer.  And they didn't plead any of their exhaustion issues

18  with specificity.

19       THE COURT:  And we're not talking about an

20  exhaustion.  I mean, I'm talking about whether she -- I don't

21  know what you're saying.  I'm just not following your --

22       MR. BILLIPS:  What I'm saying is that the EEOC's

23  handling of the case that falls within the personal staff

24  should have been different.

25       THE COURT:  And so because the EEOC messed up, then

1   you win that issue; is that what you're saying?

2           MR. BILLIPS:  No, Your Honor.  If the EEOC had messed

3   up and defendant had properly raised that in response -- in

4   the answer pursuant to Rule 9C, then, no, I don't -- I'm not

5   saying that.  What I'm saying is that that is their remedy

6   when the EEOC messes something up, is to specifically plead.

7   At that point we could have gone back to the EEOC to try to

8   fix it, but -- or ask the Court to remand it to the EEOC for

9   that purpose.

10          THE COURT:  Why would that help you now?

11          MR. BILLIPS:  Because the EEOC could award relief,

12  which we could then enforce through the courts.  EEOC has the

13  authority under --

14          THE COURT:  So you wish that the EEOC had done a

15  better job handling the administrative piece?  I mean, isn't

16  that what every plaintiff says when they get their denial

17  letter?  They're not saying exactly what you're saying.  But I

18  mean, doesn't every plaintiff like kind of by definition say I

19  wish the EEOC had handled this better?

20          MR. BILLIPS:  Your Honor --

21          THE COURT:  I'm just not sure how that plays with

22  this motion for summary judgment.  I'm sorry if I'm being

23  dense.  I'm really not following what you're saying.

24          MR. BILLIPS:  Because the exemption is no longer a

25  complete defense, the issue here is one of whether the EEOC

                    United States District Court

1   handled this case correctly as a personal staff exemption
2   complaint or a complaint -- excuse me, a charge by someone who
3   is otherwise exempt under personal staff exemption.  And the
4   remedy there -- or excuse me.  The issue there is one of
5   exhaustion of administrative remedies.  Did the EEOC handle
6   this?  Did they do the things they're supposed to?  If so,
7   great.  If not, defendant has to raise it with specificity.
8   And they didn't raise it.

9           THE COURT:  So they didn't raise it with specificity.
10  So what's next?

11          MR. BILLIPS:  It's waived, under 9C, failure to raise
12  the exhaustion or condition precedent with specificity.

13          THE COURT:  Oh, you're saying because they didn't
14  talk about the EEOC issue now they can't talk about the --
15  they can't raise this as an affirmative defense because they
16  didn't flag that the EEOC had done their job wrong, so because
17  of that the defendant can't raise the affirmative defense of
18  personal staff exemption?

19          MR. BILLIPS:  Correct, Your Honor.

20          THE COURT:  That's what you're saying?

21          MR. BILLIPS:  Because it's no longer a complete
22  defense under 2000e-16.

23          THE COURT:  Did you include that argument in your
24  response brief?  I feel like I haven't heard that.

25          MR. BILLIPS:  I did not, Your Honor.  It's something
                    United States District Court

1  that I have found during the research on this issue.

2         THE COURT:  I feel like this is a -- it's a theme

3  with this case.

4         Okay.  So getting back to the discovery that you

5  would have taken if you had known that personal staff was an

6  issue, so you've told me that -- you've talked about the sole

7  supervision, but I haven't heard of any particular questions

8  you would have asked or people that you would have deposed on

9  that.  Because I feel like you kind of asked everybody the

10 questions.  And we have their answers.  And you've argued that

11 because of the answers that some people gave, that factor

12 should go in your favor.  So I mean, I -- you know, I think I

13 probably disagree with that.  I mean, I haven't finished my

14 order, my R and R.  I don't know what I will say.  But I feel

15 like you've got everything you need on that issue.

16        I understand that you want to talk to Fulton County a

17 little bit about their authority for rejecting his appointment

18 of her, which I don't really know what that means.  But that's

19 what I wrote down.  And then also who has authority over her,

20 you wanted to ask Fulton County some questions about that;

21 right?

22        MR. BILLIPS:  Yes, Your Honor.  Because Fulton County

23 rejected -- Mr. Howard initially attempted to hire Ms. Younge

24 as a director.  Fulton County rejected that effort.  He then,

25 with Fulton County's approval, hired her as a deputy chief of

1  staff.  And because he did not have unilateral appointment

2  authority -- plenary powers of appointment and removal is the

3  way it's been described in the case law -- because he did not

4  have plenary powers of appointment, we think that --

5          THE COURT:  Who else could have appointed her?  I

6  mean --

7          MR. BILLIPS:  Well, the County had to join in it.

8          THE COURT:  Well, they had to -- you know, they were

9  the ones that were paying the bills, but he's the only one

10 that got to pick her.  I mean, it wasn't like the county

11 commissioners got to weigh in on the decision; right?

12         MR. BILLIPS:  Well, the County itself actually did

13 weigh in on the decision when he initially attempted to

14 appoint her to a different job.

15         THE COURT:  As a director.

16         MR. BILLIPS:  As a director.  And then they allowed

17 him to appoint her as a deputy chief of staff.

18         The second aspect of the test is whether the person

19 is personally accountable only to the elected official.

20 Ms. Younge has testified she wasn't, that she was also

21 accountable to the chief of staff --

22         THE COURT:  Okay.  We already had that covered.

23         In terms of -- so you have some questions for Fulton

24 County.

25         Is there anything else that you would want to know to

                    United States District Court

1   defend against the claim that she is exempt from the

2   application of Title VII due to her position as -- being on

3   his personal staff?

4           MR. BILLIPS:  Your Honor, it's -- I guess it would

5   depend in part on what we learned as we went along asking

6   those questions.  That's part of the problem with a defense

7   being raised on summary judgment for the first time.

8           THE COURT:  Did you already make the argument that

9   Fulton County rejected his appointment of her as a director

10  and therefore it doesn't have plenary appointment?

11          MR. BILLIPS:  Yes, Your Honor.

12          THE COURT:  So you already made that argument.

13          What would anything add -- you know, that's a legal

14  argument it looks like, that we know the facts there, we

15  know -- it sounds like you-all know what happened.  I'm not

16  sure what --

17          MR. BILLIPS:  I'm sorry, Your Honor.

18          THE COURT:  No.  Go ahead.

19          MR. BILLIPS:  Defendant has argued that -- in

20  opposition to that a major point of their arguments has been

21  that -- that she was -- that she had sole authority.  That's

22  the reason they cited those two statutes and did not cite the

23  statute which actually applies.  So, yes, she has testified to

24  that.  But we believe that additional discovery would serve to

25  support her testimony and demonstrate that her testimony is

1   accurate.  We do not believe that Mr. Howard's affidavit is --
2   would --

3           THE COURT:  And what does Mr. Howard say on this
4   point?

5           MR. BILLIPS:  Mr. Howard -- let me pull up his
6   affidavit.  Mr. Howard made some rather conclusory statements
7   about -- he said that Georgia law gave me sole and absolute
8   authority to appoint individuals to my personal staff.  Well,
9   if that is true, then she's not on his personal staff because
10  she is -- he didn't have sole and absolute authority to
11  appoint her.  That's Paragraph 2 of his affidavit at 104-4.

12          THE COURT:  Okay.  Is there any other discovery that
13  you would want to take to -- you know, to be able to combat
14  the -- I mean, you've seen their evidence now as to the
15  factors on the test.

16          MR. BILLIPS:  Yes, Your Honor.  And the vast majority
17  of that comes in the form of Mr. Howard's affidavit.
18  Mr. Howard -- and this is a little bit off the subject of what
19  additional discovery.  But we believe Mr. Howard has been
20  thoroughly impeached and that the Court should not give weight
21  to his testimony, as the jury could reject it entirely.
22  But -- you know, I don't know if we could do it now given the
23  passage of time.  But we could have at least done discovery
24  at -- if it had been raised promptly on whether she was
25  actually representing Mr. Howard in the eyes of -- examined

1  and interviewed individuals on that subject during discovery.

2  We didn't have that.

3       THE COURT:  Who would you have interviewed?

4       MR. BILLIPS:  Your Honor, I'd have to talk to my

5  client about that, but I imagine that the people she actually

6  interacted with.  But frankly, I think that her testimony

7  about the -- refuting his claim that she represented him in

8  the eyes of the community, because she went to meetings with

9  him and he's the one who represented himself, not her.  And

10 that was in her affidavit testimony.

11      THE COURT:  We do have that.  And I mean, that's

12 something that I'll consider, you know, when I'm applying the

13 factors of the test.

14      MR. BILLIPS:  And that's something that I think is a

15 very important point.  There are several aspects of the test

16 that simply are not undisputed on the record in this case.

17 And, you know, thinking about it at this point, what would I

18 do now in discovery, I would follow up on those aspects of the

19 test.

20      THE COURT:  And did you consider when you heard in

21 March of 2022, when you heard definitely that there was, you

22 know, this defense that you had to recognize was a dangerous

23 defense, you know, for your case, did you consider asking for

24 relief from the Court and, you know -- or did you just think,

25 well, they haven't raised it, so I'm just going to wait until

1  summary judgment and say that they've waived it?

2          MR. BILLIPS:  Well, at the time that that had

3  happened -- and I don't remember if defendant had -- if they

4  went ahead and filed their summary judgment motion while that

5  was pending.  And I apologize, I just don't remember.  But

6  the -- yes, that hearing was on March 14th.  Defendant filed a

7  motion for summary judgment on April 8th.  The only thing left

8  for us to do in discovery at that point was to complete

9  Mr. Howard's deposition.

10          THE COURT:  But you knew now the centerpiece of their

11  motion.  I mean, 20 of the 25 pages was dedicated to a defense

12  that, you know, had some heft to it.  You know, it's not like

13  this was some obscure thing.  I mean, it's a good defense

14  that -- you might disagree with me, but it looks like it hits

15  on all cylinders.

16          I mean, did you just decide that you would wait and

17  argue that it was waived or did you think that you should

18  contact the Court and say, you know, I'm being waylaid here?

19  What was your thought process about that?

20          MR. BILLIPS:  Frankly, that we would address it in

21  our response to the motion; because we had to look into

22  whether it had been properly pled.  And by the time we were --

23  you know, we were doing other things too in this case.  And by

24  the time we were there, the motion had already been filed.

25  So, you know, could we have asked for additional discovery at

1  that juncture?  Yes.  On the other hand, the defense had not

2  been pled.  And personally I think it would have been

3  incumbent on the defendant to move to amend the answer at that

4  juncture.

5              THE COURT:  Fair enough.

6              Let me ask you a question on a different -- well, let

7  me see.  Let me make sure I've got all of those for you.

8              And I've got questions for you too, Mr. Green.  Don't

9  worry.

10             So in your response brief, I mean, we OCR'd it and

11 searched and the word "retaliation" doesn't appear.  Does that

12 mean you've abandoned the claim?  Well, I'll tell you, it does

13 mean you've abandoned the claim.  I just want to let you know,

14 that's how I view it when someone doesn't even use the name of

15 the claim in their response brief.  Unless I missed it.  I

16 mean, that's possible.

17             MR. BILLIPS:  Well, Your Honor, I think it would

18 depend on what was set out in the --

19             THE COURT:  This is an easy question.

20             MR. BILLIPS:  I don't believe that the retaliation

21 claim is significantly different.  And frankly, I think that

22 the pregnancy discrimination claim is the claim that the

23 evidence supports here.  So, no, I'm not relying on the

24 retaliation claim.

25             THE COURT:  So I just ask in the future, if you raise

1  a claim and then you're going to abandon it that you just say

2  that, first sentence of your -- or drop a footnote and just

3  say we're not -- you raised a lot of claims that I've had to

4  personally, you know, slog through and toss because I -- you

5  know, here's another one.

6        So I agree, your pregnancy -- you've got a good

7  pregnancy claim I think.  Just so you know, Mr. Green.   I

8  think you've got some good timing.  The facts look good.  I

9  mean, it looks like a decent claim that could go to a jury,

10 but for the fact that Title VII was designed to exclude people

11 like this plaintiff.  So that's the problem I have.  And I'm

12 trying to figure out what to do with this.

13        MR. BILLIPS:  And, Your Honor, I think if defendant

14 actually did intend in its references to personal staff in

15 discovery to be asserting the personal staff exemption, then I

16 think that it would be appropriate to refuse to permit it to

17 be asserted at this time, because sandbagging on an

18 affirmative defense is not justified.  And there's -- there

19 would be no good cause to raise a defense that was abandoned

20 at the time if they actually knew that it was one they were

21 going to pursue.  And if they didn't and realized it during

22 discovery, they should have amended the answer at that point,

23 not -- I mean, pleadings simply cannot be amended through

24 discovery responses.

25        THE COURT:  No, but notice can be given.  I mean,

1  that's what the case law says.  If you're on notice, you know

2  that this is an issue -- it happens all the time with

3  plaintiffs.  You know, defendants ask questions, is there

4  anything else, and they start saying it and then it's in the

5  case.  It's been discovered.  It's in the case.  And if you

6  try to keep it out of the case, then you've got to file a

7  motion or do something.

8       It seems only fair that when we treat plaintiff's

9  testimony that way and issues that way that it should work the

10 same way for the defendant.  Although, I definitely don't

11 disagree that if you have an affirmative defense you should

12 raise it, you should be clear about it, you should write a

13 letter to opposing counsel and say, I realize it wasn't in the

14 answer and just so you know we're going for it.  It appears to

15 be, you know, a fit for this case and it's important to us.

16 And if you want an extension of discovery because I'm just

17 telling you this now, I won't contest it.  That's what should

18 have happened.  That's not what happened.

19       But the question I think now that it hasn't happened

20 that way and that you are claiming surprise and prejudice is

21 that I have to figure out if -- you know, what to do about it.

22       So let me -- I'll turn to Mr. Green.  You have been

23 sitting there.  I know this is a painful process for you.  But

24 what do you have to say about all of this?

25            MR. GREEN:  Let me see where to start.  I mean, he
                    United States District Court

1 said a number of things that I think the record does not

2 support.  He claims that --

3      THE COURT:  Well, tell me about your defense and when

4 you decided you were going to raise it.  Because it looks to

5 me like it might have been really late, possibly after the

6 close of discovery, based on just my looking at -- I mean, I

7 know the words are in the discovery.  Not all the words.  I

8 mean, the words "personal staff" are in there, but the

9 "personal staff exception" isn't in there, "personal staff

10 exemption" isn't in there.

11      So when did you decide?  I know it was before march.

12 And when you did, did you think that was a problem and how did

13 you decide how you're going to handle it?

14      MR. GREEN:  Sure.  So Your Honor is correct, I

15 started working on the motion for summary judgment and I

16 realized this was an issue.  And that was, I don't know,

17 February or March.

18      The facts clearly supported the defense.  I went

19 through everything.  And I did -- I came across some cases

20 where plaintiffs had tried to raise in response to the

21 personal staff exemption that it wasn't -- that it was waived

22 because it wasn't raised in the answer.  And each one of those

23 cases that I found, the Court did not accept that argument

24 because there was so much discovery on the issue.

25      And especially in this case, I mean, the plaintiff

                    United States District Court

1   was terminated.  She walked over to Fulton County to make a

2   complaint.  And Fulton County said, you can't make a complaint

3   with us because you're on Mr. Howard's personal staff.  So I

4   mean, notice was given almost immediately in this case to the

5   plaintiff.

6          THE COURT:  Okay.  But I have to ask you this.  I

7   mean, yeah, it's -- looking back on it, it's everywhere.  I

8   mean, it's literally everywhere.  It's in documents he signed.

9   It's everywhere.  But you didn't pick up on it.  And that's no

10  slight to you.

11         Is it fair to say now that the plaintiff's counsel

12  should have picked up on it -- which I think has to be the

13  argument.  He's on notice.  We used the words -- when you

14  didn't know it?  So I mean, in terms of just fairness, you

15  know, I just have -- you know, yes, we could all look back now

16  and see it.  And I think that your motion to dismiss would

17  have read differently and probably the way you questioned the

18  witness.  I thought you didn't know about it when you

19  questioned the witness because if I was questioning that

20  witness I would be like, how long were you on his personal

21  staff, did you enjoy being on his personal staff.  I would

22  have said the words "personal staff" a thousand times.  And

23  you didn't say it one time when you questioned her.

24         I'm not coming down on you, but I just think how is

25  it fair to say he was on notice when you didn't even pick up

                    United States District Court

1  on it.

2         MR. GREEN:  Well, for a few reasons.  I mean, she was

3  given notice virtually immediately that the personal staff was

4  an issue.  You know, I have a hard time believing that he

5  wasn't aware of personal staff.  I mean, all over I believe it

6  was Lynn Nelson's deposition, he's questioning her about the

7  personal staff.  I mean, I have a very hard time accepting

8  that plaintiff -- that this came out of the blue for the

9  plaintiff.

10         THE COURT:  Right.  The plaintiff's counsel used the

11  term "personal staff" in questioning.  But I don't think

12  anybody said personal staff exemption, personal staff

13  exclusion.  And definitely in her -- in the questioning, both

14  you and plaintiff's lawyer, plaintiff's counsel, in

15  questioning her used, you know, "executive staff", which, you

16  know, is arguably interchangeable.  So, yeah, I mean,

17  everybody knew -- I mean, that was obviously terms everybody

18  was you using.  But it doesn't look to me like you at least

19  knew that it was the key to your case.

20         Now, just looking at your brief, it is -- I think it

21  should be, because I think there's a fact issue that get it to

22  a trial on the termination claims.

23         I guess I just -- it just seems unfair to try to say

24  he was on notice when you weren't.  I guess you could say

25  like, well, the plaintiff maybe knew or maybe Paul Howard
                  United States District Court

1  knew.  I mean, this is really about the lawyers and what

2  questions you're asking and what discovery you're propounding,

3  you know, how are you able to represent your clients -- maybe

4  plaintiff's counsel picked up on it and they lay in wait and

5  plan to make this argument, which I think maybe is their

6  prerogative.

7           MR. BILLIPS:  I promise you I didn't, Your Honor.

8           MR. GREEN:  The case law is very clear.  I mean, it's

9  prejudice that we're looking at here.  And you brought that

10 up -- how was plaintiff prejudiced?  And in their response

11 brief, I mean, they couldn't point to any prejudice.

12          I mean, virtually all the evidence on the personal

13 staff exemption comes from plaintiff's testimony.  And so to

14 be prejudiced by their own client's testimony, I don't know

15 the argument that we would have had her testify differently,

16 say something different.  I mean, I think in this case you can

17 literally throw away all the evidence but her testimony, and

18 that's enough to get there.

19          And so the prejudice, it just does not exist in this

20 case.  This is just not an issue where prejudice or any kind

21 of -- I mean, additional discovery would be an effort to rebut

22 their own client's testimony essentially.  I mean, she

23 testifies --

24          THE COURT:  What about this Fulton County deposition

25 to get them to say that they had the power to hire her?  I

United States District Court

1  think that's the point of it.  Right?

2          MR. GREEN:  The evidence in the record shows that's

3  clearly not true.  They never denied -- I mean, this is

4  misrepresented in this hearing.  What happened is, Paul Howard

5  wanted to hire Ms. Younge.  And she was going to be paid

6  $120,000, which, you know, that's only $5,000 less than the DA

7  makes.  And to do that -- and he didn't know at the time he

8  had to do all of this -- he had to get special permission for

9  personal staff members for a salary that high.

10          So it wasn't Fulton County saying no, you can't

11  have -- you know, you can't hire her for this job.  It was

12  Fulton County saying, in order to pay her such a large amount

13  of money, you have to go -- because she's on your personal

14  staff, you have to sign this oath that she's on your personal

15  staff, that she's going to -- and I don't remember the exact

16  language of the oath.  It's in the record.  But it's an oath

17  that he -- that she's on his personal staff, is only

18  accountable to him.

19          And, you know, her testimony was crystal clear.  I

20  don't know if she could have presented any more vivid

21  testimony of how important she was in that office and how

22  closely she worked with Paul Howard.

23          MR. BILLIPS:  Your Honor --

24          THE COURT:  Yes.

25          MR. BILLIPS:  -- I have just one issue about this

1  question of prejudice or no prejudice.  The cases that

2  defendant has cited on raising affirmative defenses out of

3  time do not address a critical issue in this case.  This case

4  had a scheduling order.  And the scheduling order provided a

5  deadline by which pleadings were to be amended.  Under **Sosa v**

6  **AirTran Services**, the Eleventh Circuit has said that if there

7  is a scheduling order that provides a deadline to amend the

8  pleadings, you can only do so by showing good cause.

9          In order for the defendant to raise this defense now,

10  they would have to file a motion to amend the answer, show

11  good cause for failing to amend it previously, which we don't

12  think they can do.  They had all the facts.  They had all the

13  information present.  There's no basis for saying that there

14  would be good cause now to amend the answer.

15          And so -- and that is -- that has to be answered

16  before we even get to the question of prejudice.  Would there

17  be good cause to raise this defense this late in the game

18  after discovery, after the deadline has passed probably by a

19  year, when it was never raised before?  And I don't know of

20  any reason why they didn't raise a defense.  I know why we

21  didn't anticipate it, because it wasn't in the answer.

22          THE COURT:  All right.  Mr. Green, you can continue.

23          MR. GREEN:  Okay.  Yeah, I mean, I think to answer

24  that, the cases that were cited, I think when I searched the

25  particular language about prejudice, over a thousand cases

1  came up from the Eleventh Circuit.  And they're all very clear
2  that an affirmative defense -- you know, I'm a little, I
3  guess, confused about whether the plaintiff even thinks it's
4  an affirmative defense, seeing as he's been calling it a
5  condition precedent.  Maybe it's jurisdictional.  And there's
6  disagreement in courts about that.

7          THE COURT:  Yeah.  If we go that way, this isn't an
8  issue.  If this is something the plaintiff has to prove, they
9  can -- you know, you can wait until the jury is impaneled and
10 raise it then.  That is something that we'll have to decide.
11 It seems to me there's a circuit split on that.

12         MR. GREEN:  Right, there is.  I don't know that the
13 circuit courts have all -- or very many have even looked at
14 the issue.  But if it's jurisdictional, it would be
15 plaintiff's burden.  I still think summary judgment would be
16 appropriate because the exemption applies in either case.
17 There's thousands of cases from the Eleventh Circuit where
18 affirmative defenses weren't raised until summary judgment.
19 And the question is always prejudice.  That is the question
20 the Court must decide.

21         And because this case relies almost entirely on
22 plaintiff's own testimony, there's just no prejudice here to
23 the plaintiff.

24         You know, there was -- I think I asked the plaintiff
25 about her job and job duties for two or three hours in
                    United States District Court

1   testimony.  Plaintiff asked Paul Howard about plaintiff's job

2   duties for two or three hours in his deposition.  I mean,

3   there was extensive discovery done on what plaintiff's job

4   was.  And that's the issue here.

5          These arguments that there was prejudice and deposing

6   Fulton County, I think it's pretty contrived because, you

7   know, the issue is pretty straightforward just on her

8   testimony alone.  And I think summary judgment is appropriate

9   in this case.

10         I also just wanted to mention, I mean, he's attacked

11  a couple prongs.  I don't think he's sufficiently attacked the

12  prongs.  But this is a balancing test.  This isn't an all or

13  nothing test.  So the Court could find that one prong wasn't

14  met, two prongs weren't met, but still find the overall weight

15  of the test favors the personal staff exemption.

16         Whether Mr. Howard had sole authority, he's testified

17  he had sole authority.  Plaintiff testified that Paul Howard

18  hired her, that he made a decision to hire her.

19         Paul Howard and Lynn Nelson testified that it was

20  Paul Howard's decision to terminate her.  Paul Howard was in

21  control of that office and he was doubly in control of his

22  personal staff.  No question about that.

23         And I think if you look at the -- whether she

24  represented the office in the eyes of the community, certain

25  cases talk about it different ways.  I mean, she testified how

1  she met with dignitaries, met with members of the community

2  all the time, you know, that she was the face of the

3  organization.

4       And other cases talk about how when you have such a

5  high ranking member in the District Attorney's Office that's

6  making decisions about policies and procedures that the voters

7  are going to judge that elected official based on that

8  employee's decisions.  And that certainly applies here.  I

9  mean, she testified in great detail about all the

10 responsibilities she had, that she was overseeing 15 or 20

11 different programs, seven divisions, over 30 employees within

12 the DA's office.

13      So I think without a doubt at election time

14 Mr. Howard was going to be judged on her policies, how she

15 implemented the policies, how she oversaw the DA's office.  So

16 I think that prong does weigh firmly in favor of the personal

17 staff exemption.

18           MR. BILLIPS:  Your Honor --

19           THE COURT:  Let me just ask you, Mr. Green, another

20 thing.  A couple places in your motion you describe the

21 plaintiff's declaration as a sham.  But I -- you didn't move

22 to strike it and you didn't provide any specific examples.  I

23 feel like "sham" is a -- it's a term of art that if something

24 is a sham, it should be stricken and not considered.

25           And I'll just tell you, I've looked at her

1  declaration and compared it to her deposition testimony.  It

2  looks to me like she's explaining some of her answers but that

3  it's not directly contradictory.  But if you have examples of

4  where it's directly contradictory, I'd like to hear them so I

5  can consider that.

6          MR. GREEN:  I believe off the top of my head -- I'd

7  have to look back at the motion and her declaration.  Off the

8  top of my head, I think she talked about in the declaration

9  that there was an open door policy and anyone could go in and

10 see Paul Howard at anytime, when in her deposition she was

11 very clear that she was a favored member of his personal

12 staff, that there was only a couple people, two or three

13 people, that could go in and see Paul Howard without an

14 appointment at anytime.  I think that would qualify as a sham.

15 I can't think of any other examples off the top of my head.

16 But --

17         THE COURT:  Okay.

18         MR. GREEN:    -- declaration certainly doesn't rescue

19 her case, that the testimony was very clear and extensive on

20 her role and her position at the DA's office.

21         THE COURT:  So you also make the argument that she

22 falls within the policy maker appointee exclusion or

23 exemption.  I don't feel like that term was used in discovery

24 in the same way that personal staff was.  Would you agree with

25 that?  You haven't pointed me to any time that you used any

                    United States District Court

1   sort of words that should have setoff alarm bells or provided

2   notice to the plaintiff that you were intending to raise that

3   exclusion.

4           MR. GREEN:  I think that's mostly true, Your Honor.

5   I spent very little time on that in my brief.  I think -- she

6   was the director of policy.  I think that maybe in itself is

7   enough to put everyone on notice.

8           I think looking at prejudice again, you know, it

9   comes down to the same testimony.  I mean, this is --

10  plaintiff's testimony is the crux of this defense.  I mean,

11  she testifies extensively on every prong.  But I --

12          THE COURT:  I don't think you even included the test.

13  Did you include the test in your brief?  I might have missed

14  it.

15          MR. GREEN:  I believe I did.

16          THE COURT:  I felt like you just talked about one

17  test and then kind of clumped them together.  So I wasn't

18  really sure about that.  But I can look back at that.

19          MR. GREEN:  I certainly think the personal staff

20  exemption is the far stronger of the defenses, Your Honor.

21          THE COURT:  Okay.  Well, those are my main questions.

22  If there is anything else, I'll give you -- Mr. Billips, you

23  want to -- give you a few minutes.

24          MR. BILLIPS:  Yes, Your Honor.

25          I just want to correct a couple of things.  I want to

1  correct the assertions that Ms. Younge was hired as director

2  of policy.  She was hired as deputy chief of staff.  The

3  deputy chief of staff by definition reports to the chief of

4  staff.

5           THE COURT:  So is it your position that anytime you

6  have a deputy chief of staff they would fall outside of the

7  personal staff exclusion in Title VII?

8           MR. BILLIPS:  I certainly think that it would be a

9  factor for the Court to consider.

10          THE COURT:  Even if the testimony is that

11 notwithstanding her name she reported directly to the elected

12 official?  I think that's the testimony, that notwithstanding

13 her name --

14          MR. BILLIPS:  She also reported to the chief of

15 staff.  I think everybody in the DA's office reported to Paul

16 Howard in one way or another.  But she also testified that she

17 reported to the chief of staff.

18          THE COURT:  Is there evidence that line DA's reported

19 to Paul Howard?  There's no evidence of that in the record

20 that I have seen.

21          MR. GREEN:  There's Not, Your Honor.  And she did not

22 testify that she reported to the chief of staff.  That was not

23 in her testimony.

24          MR. BILLIPS:  Your Honor, it's in her declaration

25 and --

                    United States District Court

1      MR. GREEN:  Chief of staff did testify that

2   Ms. Younge did not report to her.

3      MR. BILLIPS:  Yes, the chief of staff testified to

4   that.

5      THE COURT:  Okay.  So was she not the policy -- what

6   was the job?

7      MR. BILLIPS:  No, she was not.  She was the

8   director -- excuse me.  She was the deputy chief of staff.

9      THE COURT:  I thought she had two job titles.

10     MR. BILLIPS:  No, Your Honor.  They tried to appoint

11  her in the director position and the County rejected it.

12  That's my understanding of what happened.

13     THE COURT:  Can y'all just direct me to the testimony

14  and I'll figure it out?

15     MR. GREEN:  Your Honor, I would say look at her

16  testimony.  She is extremely clear about what her job title

17  was.  She was the director of policies.  And there is -- her

18  job description is in evidence.

19     MR. BILLIPS:  Your Honor, if I might, Paul Howard

20  wrote a letter to Ms. Younge on April 23rd, 2019 -- it's

21  Exhibit 3 to his affidavit -- appointing her -- formally

22  offering her a position as deputy chief of staff in the Fulton

23  County District Attorney's Office.  She was not hired as

24  policy -- the director of policy position.

25     MR. GREEN:  That's just not true.  There's a ton of

United States District Court

1  evidence that --

2          MR. BILLIPS:  I'm looking at the letter, Your Honor.

3          MR. GREEN:  Yeah, that's right, he had to do that.

4  That's how he was able to get the funding.  He was hiring a

5  director of policy.  He had to -- because she was on his

6  personal staff, he had to get funding through the County, and

7  so he had to create another job title.  She had two job

8  titles.  She testified at length about that.  So did

9  Mr. Howard.  There's evidence in the record showing that.

10         THE COURT:  All right.  Well, we'll look at that,

11 whether she had one job title or two.

12         MR. BILLIPS:  And, Your Honor, I did want to raise --

13 there's a case interpreting *Sosa* and applying it to amending

14 the answer to asserting affirmative defense.  It's **Saewitz v**

15 **Lexington Insurance**, 133 F. App'x 695, 2005, U.S. App. Lexis

16 10470.  And that case -- unlike the cases cited by defendant,

17 in that case, the Court cited to *Sosa* and said that the motion

18 to amend to have the affirmative defense was not timely and

19 affirmed the denial of the motion to amend because there

20 was -- they didn't establish good cause to modify the

21 scheduling order.

22         Now, the great weight of authority says that the

23 personal staff exemption is an affirmative defense.  I was not

24 arguing that the personal staff exemption is in some way an

25 exhaustion issue.  What I was referring to is the amendment

1 | and the way that personal staff is no longer a complete bar.
2 | But it is still an affirmative defense in all of the cases
3 | that I've seen in this court and throughout.  So the failure
4 | to amend to assert the affirmative defense is fatal; just as
5 | if we had missed a statute of limitations and they properly
6 | raised statute of limitations, it would be fatal.

7 | We couldn't -- they didn't raise it and they didn't
8 | raise it on time.  And there's no good cause for that because
9 | all of the facts were in their possession.  It's exactly what
10 | the Eleventh Circuit said in a similar context in the case I
11 | just cited to Your Honor.

12 | MR. GREEN:  I don't want to repeat myself, Your
13 | Honor.  I think we've been over this.  The Eleventh Circuit is
14 | very clear.  I found over a thousand cases, if I remember
15 | correctly, where they allowed an affirmative defense to be
16 | raised on summary judgment and the question is prejudice.  And
17 | I don't think anything has changed here today.  There was no
18 | prejudice.

19 | MR. BILLIPS:  Your Honor, again, the question was
20 | not -- I haven't seen it discussed in any of those cases
21 | whether there was a scheduling order that would have provided
22 | a deadline for amendment.

23 | THE COURT:  Okay.  Well, we'll definitely look at
24 | that and work our way through this.  You guys have been very
25 | helpful.  And we will endeavor to get our R and R out in the

United States District Court

1  next couple of weeks, hopefully before the end of the year.

2          Is there anything else anybody wants to say before we

3  go?  You don't have to.  But if there's something else, you've

4  got me.

5          MR. GREEN:  Just merry Christmas, Your Honor.

6          MR. BILLIPS:  Likewise, Your Honor.

7          THE COURT:  Ah, what a perfect thing to say.  Thank

8  you, Noah.  Happy Holidays.

9          All right.  You guys have a good day.  And I'll see

10 you later.  Bye.

11         MR. BILLIPS:  Thank you, Your Honor.

12             **(The proceedings concluded at 3:24 p.m.)**

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3

4

5                          Reporter's Certification

6   I certify that the foregoing is a correct transcript from the

7   Zoom recording of proceedings in the above-entitled matter.

8
                                    /S/Geraldine S. Glover, RPR
9                                   Official Court Reporter
                                    United States District Court
10                                  Northern District of Georgia

11  Date:   May 28,2023

12

13

14

15

16

17

18

19

20

21

22

23

24

25

                          United States District Court